No. 24-2066

---

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

BRIANNA DULWORTH and CRAIG DULWORTH,

*Plaintiffs – Appellants,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC. and
EQUIFAX INFORMATION SERVICES, LLC,

*Defendants – Appellees.*

---

Appeal From The United Stated District Court
For The Southern District Of Indiana
Case No. 1:22-cv-00469
The Honorable Judge Jane Magnus-Stinson

---

**BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFFS-APPELLANTS BRIANNA & CRAIG DULWORTH**

---

Michael H. Rapp
**CONSUMER ATTORNEYS**
1600 Genessee, Suite 435
Kansas City, Missouri 64102
T: 816-633-3463
E: mrapp@consumerattorneys.com

*Attorneys for Plaintiff-Appellants
Craig Dulworth and Brianna Dulworth*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. iv

DISCLOSURE STATEMENT ............................................................................................... vi

JURISDICTIONAL STATEMENT ...................................................................................... 1

STATEMENT OF THE ISSUES PRESENTED .................................................................. 2

INTRODUCTION .................................................................................................................. 3

STATEMENT OF THE CASE .............................................................................................. 5

    **I.**    Factual Background .................................................................................................. 5

    **II.**    Plaintiffs' Claims Against the CRA Defendants ...................................................... 10

    **III.**    The CRA Defendants' Motion for Summary Judgment ..........................................11

    **IV.**    The District Court's Decision ................................................................................... 13

SUMMARY OF ARGUMENT ............................................................................................. 18

ARGUMENT ......................................................................................................................... 20

    **Standard of Review** ............................................................................................................ 20

**I.**    **FCRA plaintiffs have standing to sue a CRA when they can show that they suffered any of the kinds of injuries that courts have traditionally recognized, including reputational injuries from the publication of inaccurate information, direct economic losses, or emotional distress. Plaintiffs had substantial evidence of both reputational and emotional distress injuries, and the district court erred in its conclusions about the nature and scope of Plaintiffs' injuries and of the damages that flowed from them.** ....... 20

    A.    *Cognizable Injuries and Recoverable Damages under the FCRA* ............................... 21

    B.    *A plaintiff suffers a cognizable reputational injury whenever inaccurate information is published to a third party. The district court erred in concluding that Plaintiff did not suffer any reputational injuries from Experian's reporting because undisputed facts showed that Experian's inaccurate reports were published to third parties.* ........................................... 23

    C.    *For the purposes of the FCRA, actual damages include losses related to reputational injuries, and the district court erred when it held that Plaintiff had not suffered any actual damages because it failed to consider all of Plaintiffs' evidence of actual damages.* .......... 24

    D.    *A plaintiff presents sufficient evidence of emotional distress damages when his or her testimony describes the circumstances giving rise to such distress and the nature of that distress. The district court erred by failing to recognize that Plaintiffs' deposition testimony met this standard.* ............................................................................................................. 26

    E.    *Plaintiffs did not waive the right to argue that they suffered actual damages.* .............. 28

**II.**    **For the purpose of both § 1681e(b) and § 1681i, a credit report is inaccurate if it includes errors or omissions about any matter of objectively verifiable fact. With respect to the Ally Loan, Plaintiffs' payment history and the status of the reaffirmation**

agreement were both matters of objectively verifiable fact that did not implicate any questions of legal duty. The district court erred when it concluded that Plaintiffs' allegations of inaccuracy pertained only to questions of legal duty. ................................. 29

**III.     For the purposes of both § 1681e(b) and § 1681i, the reasonableness of a CRA's procedures is generally a question of fact for the jury. Plaintiffs' evidence and the undisputed facts created a factual question about the reasonableness of the CRA Defendants' procedures for reporting and investigating the Ally Loan, and the district court erred by failing to recognize those questions.** ............................................. 35

A.     *The reasonableness of a CRA's procedures is generally a question for the jury* .......... 35

B.     *There was evidence to permit a reasonable jury to find that the CRA Defendants' initial reporting procedures were unreasonable* ............................................................. 36

C.     *There was evidence to permit a reasonable jury to find that the CRA Defendants followed unreasonable procedures when investigating Plaintiffs' disputes.* ........................ 36

**IV.     A plaintiff can prove that a CRA willfully violated the FCRA by showing that it acted recklessly, knowingly, or deliberately when it violated the statute. Because Plaintiffs had evidence that would, at the very least, support a finding of recklessness by the CRA Defendants, the district court erred in concluding that Plaintiff could not prove a willful violation.** ............................................................................... 39

**CONCLUSION AND RELIEF REQUESTED** ....................................................... 41

**CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)** ................................ 42

**CERTIFICATE OF SERVICE** ............................................................................. 43

**CIRCUIT RULE 30(d) STATEMENT** .................................................................. 44

**ATTACHED REQUIRED SHORT APPENDIX** .................................................... 45

# TABLE OF AUTHORITIES

**Cases**

*American Civil Lib. U. v. City of St. Charles*,
794 F.2d 265 (7th Cir. 1986) ............................................................... 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................ 20

*Aregood v. Givaudan Flavors Corp.*,
904 F.3d 475 (7th Cir. 2018) ............................................................... 20

*Biggs v. Village of Dupo*,
892 F.2d 1298 (7th Cir. 1990) ............................................................. 27

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ............................................................... 30

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................. 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ............................... 20

*Chaib v. Indiana*,
744 F.3d 974 (7th Cir. 2014) ............................................................... 20

*Chaitoff v. Experian Info. Sols.*,
79 F.4th 800 (7th Cir. 2023) ........................................................ passim

*Chuluunbat v. Experian Info. Sols., Inc.*,
4 F.4th 562 (7th Cir. 2021) ............................................................ 30, 31

*Crabill v. Trans Union*,
259 F.3d 662 (7th Cir. 2001) ............................................................... 35

*Crabtree v. Experian Info. Sols., Inc.*,
948 F.3d 872 (7th Cir. 2020) ............................................................... 21

*Denan v. Trans Union, LLC*,
959 F.3d 290 (7th Cir. 2020) ............................................................... 16

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) ............................................................... 27

*Erickson v. First Advantage Background Servs. Corp.*,
981 F.3d 1246 (11th Cir. 2020) ........................................................... 30

*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th1359 (11th Cir. 2024) ............................................................. 30

*Koropoulos v. Credit Bureau, Inc.*,
734 F.2d 37 (D.C. Cir. 1984) ............................................................... 30

*Losch v. Nationstar Mortg., LLC*,
995 F.3d 937 (11th Cir. 2021) ............................................................. 38

*Lujan v. Defenders of Wildlife*,
504 U. S. 555 (1992) ........................................................................... 22

*Mader v. Experian Info. Sols., Inc.*,
56 F.4th 264 (2d Cir. 2023) ................................................................ 31

*Nekolny v. Painter*,
653 F.2d 1164 (7th Cir. 1981) ............................................................. 26

*Pedro v. Equifax, Inc.*,
   868 F.3d 1275 (11th Cir. 2017) ........................................................... 22

*Persinger v. Southwest Credit Sys.*,
   20 F.4th 1184 (7th Cir. 2021) ........................................................ 25, 26

*Pittman v. Experian Info. Sols.*,
   901 F.3d 619 (6th Cir. 2018) ............................................................... 32

*Property & Cas. Ins. Ltd. v. Century Nat'l Ins. Co. of Omaha*,
   936 F.2d 319 (7th Cir. 1991) ............................................................... 29

*Ruffin-Thompkins v. Experian Info. Sols., Inc.*,
   422 F.3d 603 (7th Cir. 2005) ........................................................ 20, 22

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ...................................................................... 29, 39

*Sarver v. Experian Info. Sols.*,
   390 F.3d 969 (7th Cir. 2004) ........................................................ 27, 35

*Seamans v. Temple Univ.*,
   744 F.3d 853 (3d Cir. 2014) ........................................................ 30, 40

*Sessa v. Trans Union, LLC*,
   74 F.4th 38 (2d Cir. 2023) .................................................................. 30

*Spierer v. Rossman*,
   798 F.3d 502 (7th Cir. 2015) .............................................................. 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................... 22

*Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.*,
   Case Nos. 23-1879 & 23-2977 (8th Cir., Aug. 28, 2024) .................... 6, 37

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................. 21, 22

*United States v. Balistrieri*,
   981 F.2d 916 (7th Cir. 1992) .............................................................. 26

*White v. Experian Information Solutions, Inc.*,
   No. 8:05-cv-01070, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) ............ 12, 13, 39

**Statutes**

15 U.S.C. § 1681 .................................................................................... 1
15 U.S.C. § 1681n ................................................................... 15, 22, 39
15 U.S.C. § 1681o ......................................................................... 15, 22
15 U.S.C. § 1681p .................................................................................. 1
28 U.S.C. § 1331 ................................................................................... 1

**Rules**

28 U.S.C. § 1291 ................................................................................... 1
Fed. R. App. P. 4 .................................................................................. 1
Fed. R. Bankr. P. 4008 .......................................................................... 5
Fed. R. Civ. P. 56 ........................................................................... 1, 20

<u>**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**</u>

**Appellate Court No**: 24-2066
**Short Caption**: Craig Dulworth, et al. v. Experian Information Solutions, Inc., et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

**(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):**

Plaintiff-Appellants Brianna Dulworth and Craig Dulworth

**(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:**

Michael Rapp, Consumer Attorneys, Rapp Law Firm

The following attorneys appeared for Plaintiff's in the underlying district court case:
Craig Marchiando, Consumer Litigation Associates
John Steinkamp, John Steinkamp & Associates
Leonard Bennett, Consumer Litigation Associated
Matthew Robertson, Stecklein Robertson Law, Chartered
Samuel E. Miller, Stecklein & Rapp, Chartered

**(3) If the party, amicus or intervenor is a corporation:**

i)   Identify all its parent corporations, if any; and
     N/A

ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
N/A

**(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:**
N/A

**(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:**
N/A

Dated: October 10, 2024                    */s/ Michael H. Rapp*
Michael H. Rapp
CONSUMER ATTORNEYS
1600 Genessee, Suite 435
Kansas City, Missouri 64102
(816) 633-3463
E: mrapp@consumerattorneys.com

*Attorneys for Plaintiffs-Appellants*
*Brianna and Craig Dulworth*

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants Brianna and Craig Dulworth ("Plaintiffs") initially filed this action in the Superior Court, Civil Division 4, for Johnson County, Indiana, asserting causes of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") against Defendant-Appellee Experian Information Solutions, Inc. ("Experian"), Defendant-Appellee Equifax Information Services, LLC ("Equifax"), and Defendant Ally Financial, Inc. ("Ally"). Experian removed the case to the district court, alleging federal jurisdiction. App. 38. The district court had jurisdiction of Plaintiffs' action under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

Pursuant to a settlement agreement, Plaintiffs stipulated to the dismissal of all of their claims against Ally, and a dismissal order to that effect was entered on April 27, 2023. App. 72.

Experian and Equifax (collectively, "the CRA Defendants") filed a motion under Fed. R. Civ. P. 56, seeking summary judgment on all of Plaintiffs' claims against them. In an order entered on May 22, 2024, the district court dismissed Plaintiffs' claims against Experian without prejudice for lack of jurisdiction and granted summary judgment to Equifax on all of Plaintiffs' claims against it. App. 1. Also on May 22, 2024, the district court entered a final judgment in favor of all Defendants pursuant to Fed. R. Civ. P. 58. App. 37.

Plaintiffs filed their Notice of Appeal in the district court on June 20, 2024, making it timely under Fed. R. App. P. 4(a)(1)(A). App. 374. Because Plaintiffs timely appealed from a final order of the district court, this Court has jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

### I.

FCRA plaintiffs have standing to sue a CRA when they can show that they suffered any of the kinds of injuries that courts have traditionally recognized, including reputational injuries from the publication of inaccurate information, direct economic losses, or emotional distress. Plaintiffs had substantial evidence of both reputational and emotional distress injuries. Did the district court err in its conclusions about the nature and scope of Plaintiffs' injuries and of the damages that flowed from them?

### II.

For the purpose of both § 1681e(b) and § 1681i, a credit report is inaccurate if it includes errors or omissions about any matter of objectively verifiable fact. With respect to the Ally Loan, Plaintiffs' payment history and the status of the reaffirmation agreement were both matters of objectively verifiable fact that did not implicate any questions of legal duty. Did the district court err when it concluded that Plaintiffs' allegations of inaccuracy pertained only to questions of legal duty?

### III.

For the purposes of both § 1681e(b) and § 1681i, the reasonableness of a CRA's procedures is generally a question of fact for the jury. Plaintiffs' evidence and the undisputed facts created a factual question about the reasonableness of the CRA Defendants' procedures for reporting and investigating the Ally Loan. Did the district court err by failing to recognize those questions?

### IV.

A plaintiff can prove that a CRA willfully violated the FCRA by showing that it acted recklessly, knowingly, or deliberately when it violated the statute. Because Plaintiffs had evidence that would, at the very least, support a finding of recklessness by the CRA Defendants, did the district court err in concluding that Plaintiff could not prove a willful violation?

## **INTRODUCTION**

Plaintiffs declared Chapter 7 bankruptcy, and, in the course of their bankruptcy proceedings, reaffirmed their obligations on an auto loan from Ally. Once their bankruptcy was completed, they made timely monthly payments on the loan, and Ally accepted them. Even so, Ally informed credit reporting agencies ("CRAs") that the loan had been included in the bankruptcy and discharged. Two CRAs, Experian and Equifax, parroted Ally's reporting, despite the fact that Plaintiffs' reaffirmation agreement was entered on the bankruptcy court's docket, and despite the fact that Experian and Equifax have ready access to such docket information. When Plaintiffs disputed this reporting, providing evidence that the loan was reaffirmed and noting that their positive payment history was omitted from the CRA Defendants' reporting, Experian and Equifax largely ignored them. Experian did not conduct any reinvestigation in response to Plaintiffs' repeated disputes, believing that it was not required to investigate a consumer dispute that was mailed by the consumer's lawyer, and Equifax conducted a reinvestigation of some, but not all, of them. Plaintiffs sued Ally and the CRA Defendants, alleging violations of the FCRA.

After Plaintiffs settled with Ally, the district court erroneously granted summary judgment to Experian and Equifax, making several errors of law and ignoring crucial record evidence in the process. The district court made two principal errors: misunderstanding the kinds of injuries and damages that are cognizable under the FCRA; confusing the kinds of matters that are regulated by the FCRA's standard of accuracy in credit reporting. These errors led to other errors in applying the FCRA's requirements as they apply to CRAs' reporting of consumer information and their reinvestigation of that reporting when consumers dispute its accuracy.

Because the district court's analysis is undermined by so many errors of law and reflects a disregard of record evidence, Plaintiffs ask this Court to reverse the district court's grant of summary judgment and to remand this case to the district court.

### STATEMENT OF THE CASE

## I.     Factual Background

Plaintiffs are Indiana citizens who, on or about October 12, 2018, filed a joint petition for bankruptcy in the Southern District of Indiana, seeking a discharge under Chapter 7 of the bankruptcy code. *See* App. 87-202 (Plaintiffs' Bankruptcy Petition). Plaintiffs received a bankruptcy discharge on or about January 15, 2019. App. 213 (Discharge Order). On or about December 20, 2018, as part of the bankruptcy proceedings, Plaintiffs reaffirmed an obligation to former Ally: an automobile loan that Ally issued to fund Plaintiffs' purchase of a 2016 Kia Sedona ("the Ally Loan"). App. 203 (Reaffirmation Agreement). The Reaffirmation Agreement was executed by Plaintiffs and by a representative of Ally, and it was timely filed pursuant to Fed. R. Bankr. P. 4008(a). *See id*.

After the execution and entry of the Reaffirmation Agreement, Plaintiffs maintained current payments on the Ally Loan. App. 395 (Deposition of Samantha Hays) at pp. 69:17–70:7 (noting that the Ally Loan was current and "paid in full"). Because they reaffirmed their obligation on the Ally Loan, and because they had an entirely positive payment history, Plaintiffs expected that credit reporting about the Ally Loan would contribute to the reestablishment of their creditworthiness. App. 224 (Deposition of Brianna Dulworth) at p. 132:12-20.

Approximately a year after their bankruptcy, Ms. Dulworth reviewed her credit reports because she and Mr. Dulworth were interested in buying a house. App. 219 (Brianna Dulworth Deposition) at p. 30:4–23. During this time, Ms. Dulworth discovered that Equifax and Experian were reporting the reaffirmed Ally Loan in the derogatory section with the notation "included in bankruptcy." *Id*. at pp. 120:23–121:12. Equifax's and Experian's reporting also omitted Plaintiffs' positive, post-bankruptcy payment history for the Ally Loan. *See* App. 291-303 (Craig Dulworth

Sept. 2021 Dispute); see also App. 234-246, App. 259-273, App. 317-331, (Plaintiffs' Disputes to Equifax); App. 247-258, App. 274-290, App. 304-316, App. 332-349 (Plaintiffs' Disputes to Experian). This reporting was inaccurate because the Ally Loan was expressly excluded from the bankruptcy discharge.

Equifax's and Experian's credit reports made it clear that their inaccurate reporting of the Ally Loan had been published to third parties. Those reports included a list of the entities who had submitted inquiries about Plaintiffs, and those lists showed that both Equifax and Experian issued credit reports about Plaintiffs to multiple third parties. *See* App. 291-303 (Craig Dulworth Sept. 2021 Dispute); *see also* App. 234-236, App. 259-273, App. 317-331, (Plaintiffs' Disputes to Equifax); App. 247-258, App. 274-290, App. 304-316, App. 332-349 (Plaintiffs' Disputes to Experian).

Plaintiffs disputed this inaccurate reporting. First, they repeatedly contacted Ally, requesting that it correct the misreported loan information. App. 221-222 (Brianna Dulworth Deposition) at pp. 121:13–122:16. After they concluded that Ally would not respond, Plaintiffs each submitted multiple disputes to the CRA Defendants between September 7 and November 1, 2021. In total, Plaintiffs submitted four disputes to Equifax and four disputes to Experian. See App. 291-303 (Craig Dulworth Sept. 2021 Dispute); see also App. 234-236, App. 259-273, App. 317-331, (Plaintiffs' Disputes to Equifax); App. 247-258, App. 274-290, App. 304-316, App. 332-349 (Plaintiffs' Disputes to Experian).

To assist them with the dispute process, Plaintiffs retained the Kansas City-based law firm of Stecklein & Rapp Chartered. Ms. Dulworth testified that, at her direction, Plaintiffs' counsel drafted dispute letters and that she reviewed the letters for accuracy before signing them. App. 225 (Brianna Dulworth Deposition) at pp. 192:19–25, 110:3–13, 118:19–25. All of Plaintiffs' dispute

letters included a detailed description of why the CRA Defendants' reporting was inaccurate, specifically noting that Plaintiffs had a positive payment history on the Ally Loan after reaffirmation and that this payment history should be included in any reporting about the Ally Loan. Plaintiffs' disputes also included a copy of the disputant's driver's license and a copy of the Reaffirmation Agreement. *See* App. 291-303 (Craig Dulworth Sept. 2021 Dispute); *see also* App. 234-236, App. 259-273, App. 317-331, (Plaintiffs' Disputes to Equifax); App. 247-258, App. 274-290, App. 304-316, App. 332-349 (Plaintiffs' Disputes to Experian).

Experian admits that it never investigated any of the disputes that Plaintiffs submitted to it, and Experian did not transmit any of these disputes to Ally, even though 15 U.S.C. § 1681i expressly requires that CRAs transmit consumer disputes to the entities that furnished the disputed information. App. 380-381 (Declaration of Christina Hamilton) at ¶¶ 21–22. Experian asserts that it has no record of receiving any of Plaintiffs' four dispute letters. App. 417 (Christina Hamilton Deposition) at pp. 42:16–43:17 (Q. "Experian has no record of receiving communication from the plaintiffs, either plaintiff regarding the Ally account?" A. "Correct, yes."). But Experian does not deny that one of its employees, James Swanson, signed the certified mail receipts that accompanied Plaintiffs' dispute letters. *See id.* at p. 52:1–13; *see also* App. 364-365 (Experian's Responses to Plaintiffs' Requests for Admission) ("Experian admits that James Swanson was an employee of Experian Information Solutions, Inc. between August 1, 2021 and December 1, 2021").

Equifax admits that it received three (3) of the four (4) dispute letters that Plaintiffs sent to it, one for Mr. Dulworth and two for Ms. Dulworth. App. 352 (Equifax's Responses to Plaintiffs' First Interrogatories) at 2. But Equifax only conducted reinvestigations in response to two (2) of the three (3) letters it admitted to receiving. See App. 406-408 (Pamela Smith Deposition) at pp. 32:25–34:6. When it received the first of the three dispute letters, Ms. Dulworth's letter of

September 2021, Equifax admits that it did nothing to reinvestigate, explaining that its agent who reviewed the letter somehow "misinterpreted" it. *Id.* at p. 33:7–16.

Equifax's two reinvestigations followed its standard procedure. Equifax sent an automated communication to Ally, requesting verification of the disputed information. App. 406-408 (Pamela Smith Deposition) at pp. 32:25–34:6. This communication, known as an "Automated Consumer Dispute Verification" ("ACDV"), conforms to an industry standard adopted by CRAs and furnishers and involves the transmission of computerized code from the CRA to the furnisher, in this case, Ally. The furnisher's computers transmit an automated response back to the CRA, also using the same system of computerized code. *See id.* at pp. 23:4-24:11.

Through the ACDV process for Mr. Dulworth's September 2021 dispute, Ally confirmed its own reporting, maintaining that the Ally Loan should be reported as "included in bankruptcy." App. 410 (Pamela Smith Deposition) at p. 43:6–13; *see also* App. 382-386 (October 11 ACDV). But Ally's response to the ACDV also included other information that was inconsistent with the assertion that the Ally Loan had been included in Plaintiffs' bankruptcy discharge order. Ally's ACDV response also informed Equifax that there was (1) a balance on the Ally Loan, (2) that the balance was not past due, and (3) that the Ally Loan was a "current account," meaning that it was not in a delinquent (derogatory) status. App. 382-386 (October 11 ACDV) at 1. Without taking any other investigatory steps, Equifax informed Mr. Dulworth that it would continue to report that the Ally Loan was included in the bankruptcy discharge. App. 409, App. 411 (Pamela Smith Deposition) at pp. 39:10–16; 52:1–7.

Equifax's reinvestigation of Ms. Dulworth's November 2021 dispute went the same way. Equifax sent an ACDV to Ally which responded that the account should continue to report as

included in bankruptcy. App. 387-391 (December 11 ACDV). Equifax informed Plaintiff Brianna Dulworth of that result. App. 413 (Pamela Smith Deposition) at p. 72:14–19.

Equifax's standard procedures did not call for it to do anything else to investigate the accuracy of Ally's reporting, even when, as here, it receives conflicting or inconsistent information from the furnisher in response to the ACDV. Equifax did not review the bankruptcy court's docket to see whether the reaffirmation agreement had been entered, even though Equifax has a contract with LexisNexis for the provision of general information about bankruptcy cases. App. 405 (Pamela Smith Deposition) at p. 25:6–20. Similarly, Equifax did not check PACER for the bankruptcy docket, which would have confirmed that Plaintiffs' reaffirmation agreement was timely filed and valid. *Id*. at pp. 24:21–25:5. Equifax did not even check back with Ally to resolve a patent inconsistency. Equifax's standard procedures, which it followed in its reinvestigation of Plaintiffs' disputes, only call for Equifax to submit an ACDV to the furnisher. *See id*. at pp. 32:25–34:6.

Equifax's and Experian's publication of inaccurate information about the Ally Loan had adverse consequences for Plaintiffs. Plaintiffs were denied credit on multiple occasions after creditors had received credit reports that omitted Plaintiffs' positive payment history on the Ally Loan and that falsely described that loan as having been discharged in bankruptcy; Plaintiffs were also offered credit on less favorable terms. *See, generally*, App. 73-86 (Credit Denial Letters). In addition, these published inaccuracies caused Plaintiffs to suffer significant emotional distress. Ms. Dulworth testified that the process of disputing the inaccurate reporting was "exhausting" and that she found it frustrating. App. 223 (Brianna Dulworth Deposition) at p. 127:4–15. She also testified that her frustration and exhaustion had led her to consult a physician about the "overwhelming stress" in her life and that her stress was associated with "high blood pressure and anxiety," as well

as "sadness and depression." *Id*. at pp. 240:22–242:15. Mr. Dulworth testified that his distress stems from "us trying to fix things, it never happened, so it's very frustrating." App. 231 (Craig Dulworth Deposition) at pp. 135:23–136:9. He testified to feeling helpless that "no one" would help with correcting the misreporting. *Id*.

## II.     Plaintiffs' Claims Against the CRA Defendants

Plaintiffs sued Ally, Equifax, and Experian in the Johnson County, Indiana, Superior Court on February 1, 2022. App. 42-58. Experian removed Plaintiffs' case to the district court on March 10, 2022. App. 38. After removal, Plaintiffs settled their claims against Ally, and those claims were dismissed. App. 70, App. 72.

Plaintiffs' claims against Equifax and Experian involved two causes of action under the FCRA. First, Plaintiffs alleged that the CRA Defendants violated § 1681e(b) by issuing inaccurate reports about the Ally Loan. App. 64 at ¶¶ 41. Second, they alleged that the CRA defendants violated § 1681i by not correcting their erroneous reporting in response to Plaintiffs' disputes. *Id*. at ¶ 45.

Plaintiffs alleged that, as a result of the CRA Defendants' violations of the FCRA, they suffered a variety of actual damages, including reputational injuries, and emotional distress. According to Plaintiffs' Second Amended Complaint, the CRA Defendants' inaccurate reporting caused a credit union to deny their application for an automobile loan on two occasions. App. 65 at ¶ 46. Plaintiffs also specifically alleged that the inaccurate reporting damaged their reputation for financial responsibility. *Id*. at ¶ 47 ("The inaccurate information negatively reflects upon the Plaintiffs, Plaintiffs' credit repayment history, and Plaintiffs' financial responsibility as debtors and Plaintiffs' credit worthiness.").

### III.    The CRA Defendants' Motion for Summary Judgment

After discovery, the CRA Defendants moved for summary judgment. ECF 180, 186. Their primary argument arose from the principle that the FCRA's accuracy standard only applies to factual matters, not legal ones. *See* ECF 186 at pp. 16-19. According to the CRA Defendants, their reporting of the Ally Loan pertained to a legal matter – the validity of the reaffirmation agreement – and therefore was not subject to the FCRA's requirement of "maximum possible accuracy." *See id*. (discussing 15 U.S.C. § 1681e(b)). Plaintiffs responded to this argument by pointing out that, among other things, the CRA Defendants' reporting of the Ally Loan was inaccurate because it omitted their positive, post-bankruptcy payment history, which is purely a matter of fact. In support of this position, Plaintiffs emphasized the importance of this Court's decision in *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800 (7th Cir. 2023), which held that a CRA's reporting was inaccurate because it omitted the plaintiff's history of payments under a foreclosure-avoidance agreement. ECF 196 at pp. 16-17.

With respect to the requirements of § 1681e(b), the CRA Defendants also argued that they followed reasonable procedures to assure maximum possible accuracy because they followed safeguards to assess the overall accuracy of furnishers' reporting and that they had no reason to doubt the general reliability of Ally's information about the status of credit obligations that were implicated in bankruptcy proceedings. ECF 186 at pp. 23-24. In response, Plaintiffs argued that it was not reasonable for the CRA Defendants to reflexively rely on Ally's reporting that the Ally Loan was covered by Plaintiffs' bankruptcy discharge, especially not when the most cursory inspection of the bankruptcy docket would have cast doubts on that reporting. ECF 196 at pp. 20-21.

The CRA Defendants offered an alternative basis for granting summary judgment on Plaintiffs' claim under § 1681e(b): that "there is no evidence that Defendants' reporting of the Ally debt caused any of Plaintiffs' alleged damages. ECF 186 at p. 19. To prove this argument, the CRA Defendants focused on only one of the types of damages that Plaintiffs alleged, insisting that Plaintiffs had not suffered actual damages of any kind because there was no evidence to show that any of their credit denials were directly traceable to their reporting of the Ally Loan. *Id*. at pp. 19-22. They did not, however, address any of the reputational injuries that Plaintiffs had alleged. *See id*. The CRA Defendants also argued that Plaintiffs lacked sufficiently specific evidence to prove that they had suffered any emotional distress damages. *Id*. at pp. 22-23. In their opposition brief, Plaintiffs pointed to evidence that would permit a jury to find that they had suffered emotional distress damages, focusing on their extensive testimony about the emotional distress that they suffered as a result of the CRA Defendants' violations of the statute. ECF 196 at pp. 23-25.

With respect to Plaintiffs' allegations under § 1681i, the CRA Defendants argued that Plaintiffs could not prove that they violated the requirement of conducting a reasonable reinvestigation, either willfully or negligently. With respect to the reinvestigations that they did conduct, they contended their ACDV process is reasonable as a matter of law. ECF 186 at pp. 25-26. They also argued that neither Experian nor Equifax could be liable for a violation of § 1681i when they failed to conduct any reinvestigation at all in response to several of Plaintiffs' disputes because those disputes had been transmitted by a third party – Plaintiffs' counsel – and because CRAs are not required to reinvestigate any dispute that does not come directly from a consumer. *Id*. at pp. 27-28. Finally, they argued that none of their conduct could constitute a willful violation of the FCRA because it was consistent with the reporting and reinvestigation procedures prescribed by a federal court injunction in *White v. Experian Information Solutions, Inc*., No. 8:05-cv-01070,

2008 WL 11518799 (C.D. Cal. Aug. 19, 2008). ECF 186 at 29. Plaintiffs responded by pointing out that the *White* Injunction had no relevance to this case because it pertained to the reporting of debts that had been discharged in bankruptcy and had nothing to do with a CRA's ability to report a post-bankruptcy payment history for a loan that was reaffirmed in bankruptcy. ECF 196 at 35.

Finally, the CRA Defendants argued that, even if they could be liable for some violation of the FCRA, it was impossible for Plaintiffs to prove that any such violation was willful. ECF 186 at pp. 29-33. Here again, the CRA Defendants focused on their compliance with the *White* Injunction, maintaining that, in light of such compliance, it was impossible to prove that they deliberately, knowingly, or recklessly disregarded their duties under the FCRA. See *id*. And here again, Plaintiffs pointed out that the *White* Injunction did not relate directly to the conduct that Plaintiffs had identified as violative of the FCRA. ECF 196 at 35.

## IV.    The District Court's Decision

In ruling on the CRA Defendants' motion, the district court began its opinion by addressing questions of standing *sua sponte*. App. 18-24. It acknowledged that "[t]he parties do not explicitly address whether the Dulworths have standing," but it determined that the CRA's arguments about the causation of Plaintiffs' credit denials implicitly raised the question of standing. To determine whether Plaintiffs had suffered any cognizable injuries, the district court considered only two questions: whether Plaintiffs could prove any actual damages from the CRA Defendants' reporting and whether Plaintiffs could prove that they suffered any reputational injuries because the CRA Defendants' credit reports were published to third parties. *See id*.

The district court assumed that Plaintiffs had only two forms of possible actual damages: credit denials and emotional distress. With respect to the credit denials, the district court concluded that Plaintiffs could not prove that any of the injuries associated with their credit denials were

13

directly caused by the CRA Defendants' reporting of the Ally Loan because none of the denial letters from creditors made specific reference to that loan. App. 21. As it explained:

> The Court agrees that the Dulworths ignore the CRAs' arguments regarding a lack of actual damages from their reporting of the Ally Loan – both that the Dulworths have not presented any evidence that the credit denials based on information from Equifax were due to Equifax's reporting of the Ally Loan and that none of the credit denials the Dulworths produced were based on information from Experian.

*Id*. Reasoning that because Plaintiffs did not present any evidence of a direct connection between their credit denials and the reporting by either of the CRA Defendants, the district court asserted that "the Dulworths have waived any argument in opposition." *Id*.

The district court also concluded that Plaintiffs could not prove that they suffered any emotional distress injuries from the CRA Defendants' reporting because Plaintiffs had not submitted sufficiently specific evidence of such injuries. App. 21. In particular, the district court concluded that Plaintiffs' evidence of emotional distress was insufficient because Plaintiffs' testimony about their emotional distress was too vague and conclusory to meet the legal standard for proof of emotional distress. *Id*. Because it concluded that Plaintiffs had not suffered any actual damages, it concluded that they could not prevail on any claims for negligent violations of the FCRA by either Equifax or Experian. *Id*. at p. 22, 24.

The district court also considered whether Plaintiffs suffered any reputational injuries as a result of the CRA Defendants' reporting. In this connection, the district court concluded that Plaintiffs had no evidence that Experian's reports had ever been published to any third parties because the credit denial letters never referenced any reports that were issued by Experian. App. 23. In reaching this conclusion, the district court did not consider the Experian credit reports, which showed that Experian had issued reports to numerous third parties. Those reports were included in the dispute communications that Plaintiffs sent to Experian and that were attached to and cited by

Plaintiffs' summary judgment brief. *See* App. 247-258, App. 274-290, App. 304-316, App. 332-349 (Plaintiffs' Disputes to Experian). Because it concluded that Plaintiffs had no evidence of actual or reputational injuries resulting from Experian's reporting, it held that Plaintiffs had no standing to sue Experian. App. 23. The district court did conclude that there was evidence that Equifax's reports had been issued to third parties, so it concluded that Plaintiffs did have standing to assert claims against Equifax. *Id*. at p. 24.

The district court's analysis of Plaintiffs' injuries and damages led it to restrict the scope of Plaintiffs' claims against Equifax. The district court concluded that Plaintiffs could not assert any claims for negligent violations of the FCRA, under § 1681o, because they could not prove that they suffered any actual damages. App. 22. It also concluded that Plaintiffs still could assert a claim for willful violations of the FCRA under § 1681n because their alleged reputational injuries could warrant an award of statutory damages. *Id*.

The district court next considered whether Plaintiffs could prove that Equifax was liable for a willful violation of § 1681e(b). In this connection, the district court accepted the CRA Defendants' argument that Plaintiffs' allegations of inaccurate reporting could not be the basis for a viable FCRA claim because they involved legal matters, not factual ones. App. 28-29. As the district court understood them, Plaintiffs' allegations of inaccuracy turned on the question whether the reaffirmation agreement was legally valid and it noted that CRAs do not have a statutory duty to assess the legal validity of a debt: "While cases refusing to impose a duty on CRAs to determine the legality of a debt generally involve questions of the validity of the debt, the Court finds the situation here – determining the validity of the Reaffirmation Agreement – to be analogous." *Id*. at p. 28. The district court also concluded that determining the validity of the reaffirmation agreement "would require Equifax to delve into applicable bankruptcy rules and contract law" and that "[t]his

is a legal determination that would require the CRAs to apply law to the facts, that 'exceeds the competencies' of the CRAs, and that is one which the CRAs are not required to make under the FCRA. *Id*. at 29 (quoting *Denan v. Trans Union, LLC*, 959 F.3d 290, 295 (7th Cir. 2020)).

In addressing Plaintiffs' § 1681e(b) claim, the district court also considered whether Plaintiffs could prove that the CRA Defendants had failed to follow reasonable procedures to assure maximum possible accuracy, even after deciding that the reporting about the Ally Loan was factually accurate. App. 29-31.  The district court concluded that, as a matter of law, it was reasonable for the CRA Defendants to take Ally's reporting at face value because a survey showed that Ally was generally reliable in its reporting of other bankruptcy matters. *Id*. More specifically, the district court concluded that concluded that "[t]he Dulworths still have not shown that there was an issue with Ally's reporting of accounts – reaffirmation agreement-related or otherwise – that should have alerted Equifax to an issue." *Id*. at p. 31.

Finally, the district court concluded that Plaintiffs could not prove their cause of action against Equifax under § 1681i because Plaintiffs could not show that any reinvestigation of Ally's reporting by either of the CRA Defendants would have required any changes to how they reported about the Ally Loan. On this point, the district court opined that:

> Although Equifax had a copy of the Reaffirmation Agreement, the mere existence of the Agreement did not necessarily mean that it was valid. Its validity turned on whether it was validly signed, whether the Dulworths had continued with timely payments, and whether the Dulworths had repudiated the Agreement (as they were permitted to do pursuant to bankruptcy laws). As discussed above, these are legal determinations that Equifax was not obligated to make under the FCRA, rather than factual determinations that were readily made from looking at the bankruptcy docket."

App. 33. The district court also rejected Plaintiffs' argument that Equifax was unreasonable in reflexively relying on the ACDV process to determine the accuracy of Ally's reporting. As the

district court put it, ""[w]hile the ACDV process is not per se reasonable in every circumstance, the circumstances here did not require Equifax to do more." *Id* at p. 34.

On the basis of this reasoning the district court dismissed Plaintiffs' claims against Experian for lack of standing, and it granted the motion for summary judgment with respect to all of Plaintiffs' claims against Equifax. App. 35.

## SUMMARY OF ARGUMENT

The district court's first error was to rule that Plaintiffs lacked standing to sue Experian because there was no evidence that Experian's reports about Plaintiff were published to any third parties, because Plaintiffs could not prove that they had been denied credit on the basis of any Experian report, and because Plaintiffs' proof of emotional distress injuries was insufficient. This ruling depended upon fundamental errors about what kinds of injuries and damages are cognizable under the FCRA and about the kind of evidence required to prove emotional distress injuries; it also ignored record evidence – Experian's own credit reports – showing that Experian had repeatedly published reports to third parties.

The district court next erred by ruling that Plaintiffs had not alleged the kind of inaccuracy that can give rise to an FCRA claim because any reporting about their payment history on the Ally Loan implicated purely legal questions about the validity of the reaffirmation, which CRAs are never required to resolve. This ruling was contrary to well-established precedent, including this Court's recent decision in *Chaitoff v. Experian Info. Sols, Inc*., 79 F.4th 800 (7th Cir. 2023), all of which holds that CRAs must be accurate about any objectively verifiable matter. Plaintiffs' payment history and the fact of reaffirmation are both objectively verifiable, and therefore do not represent the kinds of legal matters that fall outside the scope of the FCRA.

The district court also erred in its ruling that the CRA Defendants' procedures – for both its initial reporting and its reinvestigation – were reasonable as a matter of law. This error was principally a product of the district court's prior error about whether Plaintiffs' alleged inaccuracy involved factual or legal matters; the district court decided that, because alleged inaccuracy pertained to a legal matter, the CRA Defendants' procedures were necessarily reasonable. This conclusion about reasonableness fails because its premise is incorrect and because there was

substantial evidence that could permit a jury to find that the CRA Defendants' procedures were unreasonable with respect to both § 1681e(b) and § 1681i.

Finally, the district court erred in ruling that Plaintiffs could not prove a willful violation of the FCRA. Here again, the district court's reasoning was premised on its erroneous conclusion that Plaintiffs were disputing a legal matter and that the CRA Defendants had no statutory duty to do anything except parrot Ally's reporting. But there was evidence that they were, at the very least, reckless in observing their duties under the FCRA, especially through their complete failure to make any response to several of Plaintiffs' disputes.

# ARGUMENT

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that a court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that no genuine issues of material fact exist in light of the pleadings, evidence produced in discovery, and affidavits submitted by the parties. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

An issue is "material" if its resolution could affect the outcome of the action. *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must [first] discharge its burden of showing that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) (citing *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014)). Once the moving party has done so, the burden shifts to "[t]he nonmovant […] [to] demonstrate that such a genuine issue of material fact exists." *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018).

I.   **FCRA plaintiffs have standing to sue a CRA when they can show that they suffered any of the kinds of injuries that courts have traditionally recognized, including reputational injuries from the publication of inaccurate information, direct economic losses, or emotional distress. Plaintiffs had substantial evidence of both reputational and emotional distress injuries, and the district court erred in its conclusions about the nature and scope of Plaintiffs' injuries and of the damages that flowed from them.**

The district court's decision to grant summary judgment was undermined by its fundamental misunderstanding of the injuries and damages that are cognizable under the FCRA

and from its disregard of important evidence about those injuries and damages. This misunderstanding and disregard led to several related errors. First, the district court ruled that Plaintiff lacked standing to sue Experian because there was no evidence that Experian's inaccurate reports were published to third parties, but this ruling was erroneous because Experian's reports about Plaintiff, which were attached to Plaintiffs' summary judgment brief, clearly showed that Experian's reports were published to numerous third parties. The district court's misunderstanding of cognizable injuries and damages also led to another error: its ruling that Plaintiffs could not assert any claims for a negligent violation of the FCRA because they had not suffered any actual damages. The district court reached this conclusion because it determined that Plaintiffs could not prove that the credit denials were traceable to the CRA Defendants' reporting and because it determined that Plaintiffs lacked sufficient proof of their emotional distress. But this conclusion about Plaintiffs' proof of actual damages reflected two additional errors: a failure to recognize that Plaintiffs made allegations and submitted evidence about several different forms of actual damages, including reputational injuries, as well as lost time and expense; and a misapplication of the standard for proving emotional distress damages.

A.    *Cognizable Injuries and Recoverable Damages under the FCRA*

An FCRA plaintiff has standing if he or she can allege the type of injury traditionally cognizable at common law. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This requirement stems from Article III of the United States Constitution, which establishes that a plaintiff has standing only if she suffers "a concrete and particularized injury caused by the defendant and redressable by the court." *Ramirez*, 141 S. Ct. at 2203; *see also Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 876-77 (7th Cir. 2020). To establish that he or she has suffered such an injury, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest'

that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A 'particularized' injury is one that 'affect[s] the plaintiff in a personal and individual way.'" *Crabtree* 948 F.3d at 877 (quoting *Lujan*, 504 U.S. at 560 n.1).

A variety of "concrete and particularized" injuries are cognizable in the context of the FCRA. An FCRA plaintiff suffers a cognizable injury when a violation of the FCRA's requirements leads to an adverse action, such as the denial of credit or employment, or the imposition of less favorable terms for a credit transaction. See 15 U.S.C. § 1681a(k) (defining "adverse action"). Similarly, a plaintiff suffers a cognizable injury when he or she expends time or money in an effort to correct an inaccurate credit report. *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017); *see also American Civil Lib. U. v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986) (holding that a plaintiff can suffer a cognizable injury for Article III purposes when he lost time and incurred additional expense by altering his daily commute to avoid a municipality's unwelcome religious display). FCRA plaintiffs can claim reputational injuries akin to common-law defamation, which arise when inaccurate information is published to a third party. *Ramirez*, 141 S. Ct. at 2208 ("Under longstanding American law, a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party.") (internal quotation marks and citation omitted). A plaintiff is also entitled to relief under the FCRA for emotional distress injuries. *See Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005).

Just as it recognizes a range of actionable injuries, the FCRA also provides for different forms of damages. The FCRA identifies two categories of violations, negligent and willful, and it identifies the types of damages available for each. See 15 U.S.C. § 1681n(a) (defining the damages available for willful violations); 15 U.S.C. § 1681o(a) (defining the damages available for

negligent violations). An FCRA plaintiff can recover actual damages for both types of violations. 15 U.S.C. § 1681n(a)(1)(A); 15 U.S.C. § 1681o(a)(1). In addition, an FCRA plaintiff can recover attorneys' fees and costs when prevailing in an action for either a negligent or willful violation. 15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1681o(b). When a defendant's violation of the statute is willful, § 1681n(a)(1)(A) permits a plaintiff to recover statutory damages in an amount between $100 and $1000, and § 1681n(a)(2) permits the recovery of punitive damages.

B.    *A plaintiff suffers a cognizable reputational injury whenever inaccurate information is published to a third party. The district court erred in concluding that Plaintiff did not suffer any reputational injuries from Experian's reporting because undisputed facts showed that Experian's inaccurate reports were published to third parties.*

The district court erred in dismissing Plaintiffs' claims against Experian for lack of standing because it simply ignored evidence that was attached to Plaintiffs' summary judgment brief. When it raised the issue of standing *sua sponte*, the district court correctly noted that a plaintiff would have standing if he or she could show that a CRA's inaccurate credit reports were published to third parties. App. 23; 2418. And it correctly ruled that "because Equifax disseminated the Dulworths' allegedly inaccurate credit reports to third parties, they have standing to assert their FCRA claims against Equifax." *Id*. But the district court overlooked crucial evidence when it answered its own question about whether Plaintiffs had standing to sue Experian. In determining whether there was no evidence to show that Experian's reports had been published to any third parties, the district court looked only at the credit denial letters sent to Plaintiffs, which were attached to the CRA Defendants' summary judgment brief, and it overlooked the Experian credit reports which were attached to Plaintiffs' opposition brief. *Id*. According to the district court:

> There is no record evidence, however, showing that Experian disseminated the Dulworths' credit reports to third parties when it was reporting the Ally Loan as discharged through bankruptcy instead of reaffirmed. None of the Credit Denial Letters reference Experian, [Filing No. 183-5], and the Dulworths do not set forth

any additional evidence showing – nor do they even argue in their response brief – that third parties received their Experian credit report during this time.

*Id*.

Contrary to the district court's assertions, Plaintiffs did provide the district court with evidence of publication by Experian. Such evidence was found in copies of Experian's credit reports, which were included in Plaintiffs' disputes to Experian, which were attached as exhibits to Plaintiffs' opposition brief. App. 247-258, App. 274-290, App. 304-316, App. 332-349 (Plaintiffs' Disputes to Experian). Plaintiffs did not point to this evidence or make arguments about standing in their brief because, as the district court recognized, the CRA Defendants did not raise the issue of standing at all. *See id*. at p. 19; 2413 ("The parties do not explicitly address whether the Dulworths have standing"). Standing was an issue that the district court raised entirely on its own. Because there was unrefuted evidence that Experian published reports about Plaintiffs to third parties, Plaintiffs' had standing to sue both of the CRA Defendants, not just Equifax. The district court's ruling regarding Plaintiffs' standing to sue Experian was error and should be reversed.

C.  *For the purposes of the FCRA, actual damages include losses related to reputational injuries, and the district court erred when it held that Plaintiff had not suffered any actual damages because it failed to consider all of Plaintiffs' evidence of actual damages.*

Just as it overlooked evidence of Plaintiffs' injuries, the district court also overlooked Plaintiffs' evidence of their actual damages because it apparently concluded that actual damages could only arise from credit denials or emotional distress injuries. This oversight led the district court to the erroneous conclusion that Plaintiff had no evidence of actual damages and could therefore not assert a claim against either of the CRA Defendants for a negligent violation of either

24

§ 1681e(b) or § 1681i. In fact, Plaintiffs' summary judgment brief demonstrated that there was ample evidence of numerous different forms of actual damages.

This Court has recognized several different types of damages that can be included within the meaning of "actual damages." *See Persinger v. Southwest Credit Sys*., 20 F.4th 1184, 1194 (7th Cir. 2021). A plaintiff may claim actual damages for both pecuniary and nonpecuniary harms. *Id*. Pecuniary harms include, but are not limited to, lost income, lost time and expense, the loss of credit opportunities, or increased credit costs, such has higher interest rates. *Id*. (citing cases). "Nonpecuniary harms, including reputational damage and emotional distress, may also follow an FCRA violation" and are classified as actual damages. *Id*. (citing cases).

The district court erred in concluding that Plaintiff could not prove any actual damages arising from the CRA Defendants' inaccurate reporting. The district court made this error because it ignored several types of damages that were alleged in Plaintiffs' Second Amended Complaint and that were discussed in their summary judgment brief and supported by record evidence. Plaintiffs specifically alleged that they suffered pecuniary losses in the form of lost time and expenses as a result of Defendants' inaccurate reporting, and they discussed their loss of time and related expenses in their summary judgment brief. App. 65 at ¶¶ 46-47; *see also* ECF 196 at pp. 10-11 (describing Plaintiffs' repeated efforts to dispute the inaccuracies in the CRAs' reporting). The credit denial letters, which the district court discussed extensively, show that Plaintiffs also received less favorable credit offers in connection with the CRA Defendants' inaccurate reporting. *See* App. 74 (rejecting Ms. Dulworth's application for a particular loan amount and offering a lesser loan amount on less favorable terms). And, as noted above, Plaintiffs alleged that they suffered reputational injuries from the CRA Defendants' inaccurate reporting, and the credit denial letters make it clear that Plaintiffs suffered injuries to their reputation for making timely payments.

*See* App. 65 at ¶¶ 46-47; *see also* App. 74. The nonpecuniary harms associated with reputational injuries can be a basis for awarding actual damages. *Persinger*, 20 F.4th at 1194.

Because there were allegations and record evidence to support all of these forms of actual damages, a reasonable jury could find that Plaintiffs suffered actual damages, regardless of whether any of their credit denials could be directly traced to the CRA Defendants' reporting of the Ally Loan or of whether they suffered emotional distress damages. Consequently, it was error for the district court to conclude that Plaintiff could not assert a claim for a negligent violation of either § 1681e(b) or § 1681i because they lacked evidence of actual damages.

> D.     *A plaintiff presents sufficient evidence of emotional distress damages when his or her testimony describes the circumstances giving rise to such distress and the nature of that distress. The district court erred by failing to recognize that Plaintiffs' deposition testimony met this standard.*

The district court also erred in concluding that Plaintiff had not provided legally sufficient proof of their emotional distress damages. Relying on the rule that FCRA plaintiffs may not prove damages through conclusory assertions of emotional distress, the district court ruled that Plaintiffs' testimony of emotional distress damages was too "vague" to satisfy the requirements of the rule. But the district court erred in its determination because it misunderstood or misapplied what this Court has determined constitutes a conclusory assertion of emotional distress.

As a general rule, this Court has held that "in determining whether the evidence of emotional distress is sufficient to support an award of damages, we must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused that distress." *United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992) (citing *Nekolny v. Painter*, 653 F.2d 1164, 1172-73 (7th Cir. 1981)). When the evidence of emotional distress comes solely from the plaintiff's testimony, the evidence is insufficient if it consists of "'mere conclusory statements.'" *Balistrieri*, 981 F.2d at 931-32. Examples of such insufficient, conclusory statements are a

plaintiff's statement that he was "affected emotionally" or "depressed" or "a little despondent." *Id*. at 931 (discussing *Nekolny* and *Biggs v. Village of Dupo*, 892 F.2d 1298 (7th Cir. 1990)). When relying only on his own testimony, the plaintiff must do more than reference his feelings by resorting to such "mere conclusory statements;" he must "sufficiently explain the circumstances of his injury." *Biggs*, 892 F.2d at 1304.

This Court has applied this general rule to claims of emotional distress damages under the FCRA. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). The *Sarver* Court precisely followed the standard for proving emotional distress damages that was followed in *Balistrieri*, *Nekolny*, and *Biggs*, holding that "[w]e have required that when 'the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements.'" *Sarver*, 390 F.3d at 971 (quoting *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)).

The district court failed to apply this standard, apparently concluding that a plaintiffs' testimonial evidence of emotional distress damages had no value whatsoever if it included any conclusory statements about the plaintiff's feelings. Thus, the district court concluded that Ms. Dulworth's testimony was insufficient because it depended upon her "vague reference to feeling frustrated." App. 21. But this conclusion depends upon a distorted view of Plaintiffs' evidence.

As Plaintiffs pointed out in their summary judgment brief, Plaintiffs' testimony offered far more than conclusory statements about their feelings; it included specific descriptions of the circumstances in which their emotional distress occurred. *See* ECF 196 at pp. 24-25. Ms. Dulworth testified that she felt frustrated throughout the process of submitting disputes to Ally and the CRA Defendants because they were repeatedly unresponsive to her efforts to correct their inaccurate reporting. App. 226 (Deposition of Brianna Dulworth) at pp. 240:22-242:15. She also noted that

she suffers from high blood pressure and discussed with her physician how this physical condition might be connected to all of the emotional stress she experienced, including the feelings of frustration arising from the inaccurate reporting of the Ally Loan. *Id*. Similarly, Mr. Dulworth testified about his own feelings of stress and frustration that arose from Plaintiffs' unsuccessful attempts to correct the inaccurate reporting of the Ally Loan. App. 231 (Deposition of Craig Dulworth) at pp. 135:23-136:9. As Plaintiffs argued below, this testimony was enough to describe Plaintiffs' feelings and how those feelings were connected to the factual circumstances of their FCRA claims. This evidence was enough to meet the standard for proving emotional distress damages, and the district court erred by failing to properly apply that standard to the record evidence.

E.     *Plaintiffs did not waive the right to argue that they suffered actual damages.*

The district court seemed to excuse its own overly narrow focus on two forms of actual damages by concluding that Plaintiffs had not done enough to identify the specific forms of their actual damages, thereby waiving the right to make arguments about actual damages. App. 21. But this conclusion about Plaintiffs' waiver was error because it disregarded the effect of the district court's own *sua sponte* decision to undertake its own analysis of injuries and damages.

When moving for summary judgment, the CRA Defendants did not argue that Plaintiffs lacked standing to assert an FCRA claim. *See* App. 21 ("The parties do not explicitly address whether the Dulworths have standing"). Instead, they argued that Plaintiffs did not have proof of actual damages arising from their reporting about the Ally Loan because Plaintiffs' credit denials could be attributed to their bankruptcy alone and because their proof of emotional distress damages was too conclusory. ECF 186 at pp. 19-23. In response, Plaintiffs explained why their evidence of emotional distress was sufficient to permit a jury to find that they had suffered emotional distress

damages. ECF 196 at pp. 23-25. As the district court recognized, neither party addressed the full range of injuries identified in Plaintiffs' Second Amended Complaint or Plaintiffs' entitlement to any other form of damages; they focused on only two of the available forms of actual damages.

It was the district court that *sua sponte* raised questions about standing, the full range of Plaintiffs' injuries and damages, and Plaintiffs' right to assert a claim for a negligent violation of the FCRA, and it presented those questions solely in the course of its ruling. The district court concluded that Plaintiffs had waived the right to argue about certain kinds of evidence because they did not anticipate the full range of questions that the district court had, many of which were not addressed in the CRA Defendants' motion. This Court has concluded that a party does not waive the right to make an argument about an issue if the district court raises the issue on its own and if that party does not have a meaningful chance to address that issue until the appeal. *Property & Cas. Ins. Ltd. v. Century Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 323 n.7 (7th Cir. 1991). This conclusion applies here. Plaintiffs did not waive their right to argue about the full range of their injuries and damages because they did not anticipate that the district court would go beyond the issues briefed by the parties when it decided the CRA Defendants' motion for summary judgment.

**II.     For the purpose of both § 1681e(b) and § 1681i, a credit report is inaccurate if it includes errors or omissions about any matter of objectively verifiable fact. With respect to the Ally Loan, Plaintiffs' payment history and the status of the reaffirmation agreement were both matters of objectively verifiable fact that did not implicate any questions of legal duty. The district court erred when it concluded that Plaintiffs' allegations of inaccuracy pertained only to questions of legal duty.**

Congress enacted the FCRA "'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Chaitoff v. Experian Info. Sols.*, 79 F.4th 800, 809 (7th Cir. 2023) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Because accuracy is a central concept in the FCRA, when a plaintiff alleges a violation of either § 1681e(b) or § 1681i, the threshold question is whether a consumer report is inaccurate. *See*

*Chaitoff*, 79 F.4th at 811; see also *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) ("A threshold requirement for claims under both sections is that there must be an inaccuracy in the consumer's credit report.").

The FCRA's standard for accuracy is high. According to one of its cornerstone provisions, the FCRA requires "'maximum possible accuracy'" of information in a consumer report. *Chaitoff*, 79 F.4th at 809 (quoting 15 U.S.C. § 1681e). Although "accuracy" is not specifically defined in the statutory text, "it has long been understood that 'accuracy' encompasses both truth and completeness—a report that is misleading or materially incomplete is inaccurate. *Chaitoff*, 79 F.4th at 809 (citing *Koropoulos v. Credit Bureau, Inc*., 734 F.2d 37, 39-42 (D.C. Cir. 1984); *Seamans v. Temple Univ*., 744 F.3d 853, 865 (3d Cir. 2014)). Accordingly, "the omission of material information can render technically accurate information misleading and, thus, actionable under the FCRA." *Chaitoff*, 79 F.4th at 812; *see also Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020) ("to reach 'maximum possible accuracy,' information must be factually true and also unlikely to lead to a misunderstanding.").

The FCRA's high standard for accuracy applies only to factual matters. *See Chuluunbat*, 4 F.4th at 567-68. This Court has explained that factual matters include things that can be objectively verified, such as "the amount a consumer owes, and what day a consumer opened an account or incurred a payment." *Id*. at 568 (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010)). This analysis is entirely consistent with the rulings of other circuits. *See, e.g., Holden v. Holiday Inn Club Vacations Inc*., 98 F.4th1359, 1369 (11th Cir. 2024) (holding that, when determining "whether a claimed inaccuracy is potentially actionable under [the FCRA], a court must determine [. . .] whether the information in dispute is objectively and readily verifiable"); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023). By contrast, the FCRA's

accuracy standard does not apply to unresolved legal matters, such as unadjudicated questions about the respective rights and duties of a consumer and a creditor. *Chuluunbat*, 4 F.4th at 568 ("Consumer reporting agencies are competent to make factual determinations, but they do not reach legal conclusions like courts and other tribunals do.")

There is no bright line between factual and legal matters for the purposes of the FCRA. This Court has held that CRAs have a duty of accuracy with respect to legal matters that have been resolved by a conclusive judicial ruling: "[a] legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter." *Chuluunbat*, 4 F.4th at 568; *see also Holden*, 98 F.4th at 1368 ("if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports."); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 271 (2d Cir. 2023).

This Court recently applied this principle for identifying actionable inaccuracies in *Chaitoff.* There, the plaintiff entered into a foreclosure-avoidance plan with his mortgage lender, which was known as a Trial Period Plan, or TPP. *Chaitoff*, 79 F.4th at 808. The plaintiff's credit reports, however, did not reflect the payments made pursuant to the agreement—they stated his account was delinquent. *Id*. The plaintiff submitted a dispute to Experian, and when it did not correct the reporting, he asserted causes of action under the FCRA, specifically under § 1681e(b) and § 1681i. *Id*. at 810–11.

Experian moved for summary judgment and argued, as it did in the district court here, that the plaintiff had not identified an actionable inaccuracy because "the existence and effect of Chaitoff's TPP were both legal questions beyond its competency to resolve." *Chaitoff*, 79 F.4th at 811. In addition, Experian argued that, even if its reporting was inaccurate, its procedures for

reporting and investigating disputes were reasonable as a matter of law. *Id*. The district court granted the motion, ruling that the plaintiff's allegations of inaccuracy pertained to a legal matter. *Id*. at 811. The district court alternatively agreed that the reporting and dispute procedures were reasonable regardless of the accuracy of the reporting. *Id*.

This Court reversed the grant of summary judgment, concluding that Experian's failure to mention the TPP in the plaintiff's credit reports was a material omission, which made Experian's reporting inaccurate for the purposes of the FCRA. *Chaitoff*, 79 F.4th at 813–14. This Court concluded that the omission of the information about the plaintiff's timely payments under the TPP created a misleading impression about the plaintiff's creditworthiness. As this Court explained: "[t]he debtor without the TPP has no evidence that she can make timely and complete payments, but the debtor who completed the TPP does." *Id*. the *Chaitoff* Court also pointed out that "[r]eporting that a consumer 'was delinquent on his loan payments without reporting the TPP implies a much greater degree of financial irresponsibility.'" *Id*. (quoting *Pittman v. Experian Info. Sols*., 901 F.3d 619, 639 (6th Cir. 2018)).

In reaching this conclusion, this Court rejected the legal/factual distinction that the CRA Defendants urged here and that the district court adopted:

> Whether Chaitoff's TPP existed is a factual question because Experian was not asked to apply law to facts. Nothing in Chaitoff's complaint can be read to collaterally attack his Ocwen mortgage. Rather, Chaitoff asked that his credit report reflect his TPP, something well within Experian's capabilities. It is, after all, a credit reporting agency. Nothing about Chaitoff's alleged inaccuracy required Experian to investigate beyond the face of the documents it was provided. *Henson [v. CSC Credit Servs*., 29 F.3d 280 (7th Cir. 1994)] held that CRAs act reasonably when they rely on legal documents of unquestioned authenticity. *Chuluunbat [v. Experian Info. Sols*., 4 F.4th 562 (7th Cir. 2021)] recognized the flip side of the rule: a CRA might be liable if it ignores or overlooks documents of unquestioned authenticity, even if they relate to a legal dispute. Such is the case here. The existence of Chaitoff's TPP was a factual—not legal—dispute, and the district court was wrong to conclude otherwise.

*Chaitoff*, 79 F.4th at 815.

The district court erred in concluding that Plaintiffs' allegations of inaccuracy pertained to purely legal matters because it failed to properly apply the legal standard followed in *Chaitoff*, *Chuluunbat,* and numerous other cases across the federal courts. Instead of assessing whether Plaintiffs' alleged inaccuracies turned on matters of objectively verifiable fact, the district court concluded that any and all questions about the Ally Loan required "a legal determination" that "would require Equifax to delve into applicable bankruptcy rules and contract law." App. 29. Contrary to this conclusion, Plaintiffs' challenge to the CRA Defendants' reporting could have been resolved entirely on matters of objectively verifiable fact. Specifically, the question whether Plaintiffs and Ally were performing the reaffirmation agreement and questions about Plaintiffs' post-bankruptcy payment history could both have been resolved in terms of matters of objectively verifiable fact and did not require any assessment of the legal validity of the reaffirmation agreement.

There can be no dispute that Plaintiffs' post-bankruptcy payment history was a matter of objectively verifiable fact. Plaintiffs made payments to Ally according to a schedule, and Ally's own reporting to the CRA Defendants, including its ACDV responses, showed that Plaintiffs' payments were "current." App. 382-386 (October 11 ACDV); App. 387-391 (December 11 ACDV). Plaintiffs followed a payment schedule after their bankruptcy concluded, and no-one suggests that their payments were ever late or in an insufficient amount. The CRA Defendants could have reported the fact of Plaintiffs' payment history without making any determinations about whether the reaffirmation was legally valid in terms of either bankruptcy law or contract law. Moreover, Plaintiffs' ability to adhere to a payment schedule after their bankruptcy was material to any creditors' assessment of their ability to fulfill their credit obligations, and the

omission of that payment history from the CRA Defendants' reporting created a materially misleading impression about their creditworthiness.

This Court made precisely the same analysis and drew the same conclusion in *Chaitoff*. There, as here, a consumer and a creditor performed an agreement that was supplementary to a prior credit agreement. This Court ruled that it was inaccurate for a CRA to omit reporting about this performance and the consumer's payment history because such an omission reflected negatively – and inaccurately – on the consumer's ability to make timely payments. *See Chaitoff*, 79 F.4th at 815. And, in *Chaitoff*, as here, the CRA could have reported that payment history without ever asking any questions about the legal validity or effect of the TPP agreement – whether it would have any relationship or effect on the rights and duties created by the prior mortgage agreement. *See id*. This Court held that, when a consumer makes payments to a creditor according to a schedule, and when the creditor accepts those payments, a CRA cannot omit reporting those payments just because the CRA may not understand all of the legal implications that those payments might have.

The district court here erred by failing to apply the rule from *Chaitoff*. The district court failing to recognize that Plaintiffs' post-bankruptcy payment history of the Ally Loan was a matter of material fact, which could be reported without any consideration of any legal questions. Simply put, Plaintiffs' payment history was the kind of factual matter that CRAs must report accurately, and, at the very least, Plaintiffs' allegations and evidence raised a factual question about accuracy that, in itself, precluded any grant of summary judgment to the CRA Defendants.

**III.** **For the purposes of both § 1681e(b) and § 1681i, the reasonableness of a CRA's procedures is generally a question of fact for the jury. Plaintiffs' evidence and the undisputed facts created a factual question about the reasonableness of the CRA Defendants' procedures for reporting and investigating the Ally Loan, and the district court erred by failing to recognize those questions.**

The district court also erred in ruling that Plaintiffs could not prove that the CRA Defendants' procedures were unreasonable, either with respect to their initial reporting or with respect to their investigation of Plaintiffs' disputes. This error is ultimately traceable to the district court's sweepingly erroneous conclusion that any questions about Plaintiffs' post-bankruptcy payment history were legal ones. Because it concluded that the CRA Defendants had not duty to report Plaintiffs' post-bankruptcy payment history, it concluded that it would be impossible for Plaintiffs to prove that the CRA Defendants' procedures for reporting or investigating were unreasonable. Here again, the district court reached the wrong conclusion because it disregarded the law and misunderstood the evidence.

A.    *The reasonableness of a CRA's procedures is generally a question for the jury*

This Court has long held that, under the FCRA, any questions about the reasonableness of a defendant's procedures must generally be resolved by a jury:

> The determination of the "reasonableness" of the defendant's procedures, like other questions concerning the application of a legal standard to given facts (notably negligence, a failure to exercise reasonable care), is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question . . . .

*Crabill v. Trans Union*, 259 F.3d 662, 664 (7th Cir. 2001). Thus, if there is evidence to create a jury question about the accuracy of a CRA's reporting, a jury must generally resolve questions about the reasonableness of the CRA's procedures for initial reporting or for investigating consumer disputes. *Sarver v. Experian Info. Sols., Inc.*, 390 F.3d 969, 971 (7th Cir. 2004).

B.    *There was evidence to permit a reasonable jury to find that the CRA Defendants'*
*initial reporting procedures were unreasonable.*

The district court concluded that Plaintiffs could not prove that the CRA Defendants initial reporting procedures were unreasonable because a 300-case sample of Ally's reporting showed that Ally was generally reliable in its reporting of bankruptcy-related matters. App. 29-31. This evidence was not, however, sufficient to disprove Plaintiffs' § 1681e(b) claim as a matter of law because there was other evidence to show that the CRA Defendants were unreasonable in reflexively taking Ally's reporting about the Ally Loan at face value. First, and most importantly, Ally's reporting did not simply show that the Ally Loan had been discharged in bankruptcy; it showed that Plaintiffs' payments on the loan were current. *See* App. 382-386 (October 11 ACDV); App. 387-391 (December 11 ACDV).  The inconsistency between the reporting of a discharge and the reporting of current payments was enough to make it reasonable for the CRA Defendants to look behind Ally's reporting. Moreover, even though the CRA Defendants had access to the bankruptcy docket, which would have given at least some indication of whether the Ally Loan had been reaffirmed, the CRA Defendants did not even bother to look. See App. 31. In light of the factual inaccuracy of the reporting by Ally and the CRA Defendants and given the conflicting evidence about the CRA Defendants' initial reporting procedures, the district court erred by concluding that Ally's history of general reliability eliminated any and all questions about the reasonableness of the CRA Defendants' initial reporting procedures.

C.    *There was evidence to permit a reasonable jury to find that the CRA Defendants*
*followed unreasonable procedures when investigating Plaintiffs' disputes.*

The district court erred even more egregiously in its conclusion that the CRA Defendants' reinvestigation procedures were reasonable as a matter of law. In this connection, the district court's conclusion about reasonableness primarily depended upon its erroneous presumption that

the CRA Defendants could not have reported any differently about the Ally Loan, before or after any reinvestigation. But this conclusion disregards evidence that the CRA Defendants did essentially nothing to look behind Ally's reporting.

There is no dispute that both CRA Defendants – especially Experian – simply ignored several of Plaintiffs' disputes. Experian admits that it did not conduct any reinvestigation of any of Plaintiffs' disputes because they were mailed by Plaintiffs' counsel and not directly from Plaintiffs, even though the face of the disputes made it clear that they were signed by Plaintiffs themselves. App. 380-381 (Declaration of Christina Hamilton) at ¶¶ 21–22. And Equifax does not deny that it received but did not investigate one of Plaintiffs' disputes. See App. 406-408 (Pamela Smith Deposition) at pp. 32:25–34:6. The FCRA establishes a duty to reinvestigate all consumer disputes, not just some of them. Thus, there is evidence that both CRA Defendants simply failed to undertake any reinvestigation at all in response to several of Plaintiffs' disputes. Moreover, as the Eighth Circuit has recently held, a CRA may not ignore a consumer dispute simply because the dispute was sent by the consumer's attorney. *See Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.*, Case Nos. 23-1879 & 23-2977 (8th Cir., Aug. 28, 2024) (slip op.). As the Eighth Circuit held, "contrary to Experian's argument, nothing suggests that by using the word "consumer," Congress intended to do away with the attorney-client relationship by requiring consumers to personally handle their own credit disputes even after hiring someone else to represent them. Under basic agency law, a letter from a lawyer is good enough." *Id*. at pp. 6-7. In itself, the CRA Defendants' failure to respond to several of Plaintiffs' disputes would be enough to create a jury question about the reasonableness of their reinvestigation procedures.

There is also no dispute that, even when it conducted a reinvestigation, Equifax did nothing more than submit ACDVs to Ally and reflexively accept Ally's reiteration of its initial reporting.

App. 409, App. 411 (Pamela Smith Deposition) at pp. 39:10–16; 52:1–7. In following this procedure, Equifax ignored the core of Plaintiffs' disputes, which made it clear that the Ally Loan was reaffirmed and that Ally's initial reporting omitted a positive payment history. Plaintiffs' information about the existence of that payment history should have put Equifax on notice that Ally's reporting was missing something, and a jury could find that a reasonable procedure would have involved examining the bankruptcy docket to determine whether there was any indication of reaffirmation or specifically asking Ally whether there was a payment history for the Ally Loan.

As Plaintiffs noted in the district court, a decision from the Eleventh Circuit demonstrates why it is insufficient for a CRA to simply issue an ACDV and regurgitate the furnisher's response. In *Losch v. Nationstar Mortg., LLC*, 995 F.3d 937 (11th Cir. 2021), the consumer claimed that, in the course of his bankruptcy proceedings, he initially reaffirmed a debt but later withdrew his reaffirmation. Despite the withdrawal, Experian reported the debt as past due, and the plaintiff submitted a dispute, explaining that he had "rescinded the reaffirmation in 2018 and the court approved that so [he] no longer own this debt." *Id*. Experian would not correct the inaccuracy, relying entirely on the furnisher's responses to ACDVs. *Id*. The plaintiff then sued Experian under § 1681e(b) and § 1681i. *Id*. The district court granted summary judgment to Experian, holding that the ACDV process counted as a reasonable investigation as a matter of law and that any further inquiry was unnecessary because the FCRA did not give CRAs a duty to review and determine the legal effect of court orders and documents. *Id*. at 941–42.

The Eleventh Circuit reversed, finding that Experian's reliance on just the answer of its furnisher, without "conduct[ing] any independent investigation" was not reasonable as a matter of law. *Id*. at 946–47 (emphasis in original). It held that there was a jury question about whether a reasonable procedure would, at least, involve a review of the bankruptcy docket to confirm whether

38

the consumer had indeed withdrawn the reaffirmation agreement – especially when the consumer's dispute gave the CRA an idea of what to look for. *Id.*

The CRA Defendants cannot establish reasonableness as a matter of law by invoking the injunction issued in *White v. Experian Info. Sols., Inc.*, No. 8:05-cv-01070, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) because the *White* Injunction does not bear on the reasonableness of the procedures at issue here. The White Injunction requires Defendants to do several things relating to post-bankruptcy debts, including "assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies" even if neither the consumers nor the creditors report the debt as discharged. *White*, 2008 WL 11518799, at *13. As Defendants conceded below, the White Injunction "provides only a default rule: when a furnisher reports that a consumer has discharged a debt in bankruptcy, the information supplied by the furnisher controls." ECF 186 at 30–31. Such a default rule has no application here because Ally was already reporting Plaintiffs' account as included in their Chapter 7 bankruptcy. Thus, the *White* Injunction has no effect on determining whether it was reasonable for the CRA Defendants to take Ally's reporting at face value, either in Ally's initial reports or after Plaintiffs' disputes.

**IV.     A plaintiff can prove that a CRA willfully violated the FCRA by showing that it acted recklessly, knowingly, or deliberately when it violated the statute. Because Plaintiffs had evidence that would, at the very least, support a finding of recklessness by the CRA Defendants, the district court erred in concluding that Plaintiff could not prove a willful violation.**

Under 15 U.S.C. § 1681n(a)(1)(A), a consumer may be entitled to statutory and punitive damages when a defendant "willfully" violates the requirements of the FCRA. A willful violation occurs when a defendant knowingly violates those requirements or when it recklessly disregards them. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-58, 71 (2007). A violation is reckless if it involves "an unjustifiably high risk of harm that is either known or so obvious that it should be

known." *Id.* at 68. A willful violation can also arise when the defendant's conduct is premised upon an interpretation of the FCRA that is not objectively reasonable. *Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014) ("[O]bjectively unreasonable actions with respect to a particular consumer's account can support a finding of willfulness.").

Undisputed facts could permit a jury to find multiple willful violations here, especially with regard to the CRA Defendants' failure to make any response or reinvestigation of several of Plaintiffs' disputes. The CRA Defendants know that they are required to conduct reinvestigations for each and every consumer dispute, and their repeated failure to do so here certainly could support a finding that they willfully violated § 1681i. In addition, with respect to Plaintiffs' claims under both § 1681e(b) and § 1681i, a jury could find that it was reckless for the CRA Defendants to disregard the conflicting information about the current status of the Ally Loan, which was apparent from the face of Ally's reporting and, even more clearly, from Plaintiffs' disputes, which unequivocally assert that there was a post-bankruptcy payment history on the Ally Loan. Given Ally's reporting of the loan as "current" and given Plaintiffs' specific allegations of inaccuracy in their dispute, a jury could find that the CRA Defendants recklessly disregarded their duties under the FCRA when they failed to even look at the bankruptcy docket or make a specific inquiry to Ally about the payment history at any point.

Here again, the *White* Injunction is beside the point. Just as the *White* Injunction has no bearing on whether the CRA Defendants' procedures were reasonable, it also has no bearing on whether those procedures involved a reckless, knowing, or deliberate disregard of their duties to make accurate initial reports and to reinvestigate disputes. As noted above, the *White* Injunction created a default rule for scrubbing discharged accounts from reporting; it has nothing to do with how a CRA should deal with information about a loan that was reaffirmed.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

The district court's decision to dismiss Plaintiffs' claims against Experian and to grant summary judgment to Equifax was erroneous because the district court misunderstood and misapplied the FCRA about such fundamental matters as: what counts as an injury; what kinds of damages are included in the category of "actual damages;" how to identify a factual matter that is subject to the FCRA's standard of "maximum possible accuracy;" when a CRA's procedures for reporting or reinvestigation can be deemed unreasonable; and when a violation of the FCRA can be classified as "willful." In addition to these legal errors, the district court also overlooked or misinterpreted crucial record evidence. All of these error warrant reversal. Plaintiffs respectfully ask this Court to reverse the district court's judgment and to remand this case to the district court.

Dated: October 10, 2024

*/s/ Michael H. Rapp*
Michael H. Rapp
CONSUMER ATTORNEYS
1600 Genessee, Suite 435
Kansas City, Missouri 64102
(816) 633-3463
E: mrapp@consumerattorneys.com
*Attorneys for Appellants*
*Brianna and Craig Dulworth*

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. APP. P. 32(a)(7); FED. R. APP. P. 32(g) and CR 32(c)

The undersigned, counsel of record for the Plaintiffs-Appellants Brianna and Craig Dulworth furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 12,425 words.

Dated: October 10, 2024                    **CONSUMER ATTORNEYS**

*/s/ Michael H. Rapp*
Michael H. Rapp
CONSUMER ATTORNEYS
1600 Genessee, Suite 435
Kansas City, Missouri 64102
(816) 633-3463
E: mrapp@consumerattorneys.com
*Attorneys for Plaintiffs-Appellants*
*Brianna and Craig Dulworth*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, counsel for the Plaintiffs-Appellants Brianna and Craig Dulworth, hereby certify that on October 10, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 10, 2024          */s/ Michael H. Rapp*
                                 Michael H. Rapp
                                 CONSUMER ATTORNEYS
                                 1600 Genessee, Suite 435
                                 Kansas City, Missouri 64102
                                 (816) 633-3463
                                 E: mrapp@consumerattorneys.com
                                 *Attorneys for Plaintiffs-Appellants*
                                 *Brianna and Craig Dulworth*

## <u>CIRCUIT RULE 30(d) STATEMENT</u>

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required pursuant to Rule

30(a) and Rule 30(b) are included in the appendix.

Dated: October 10, 2024                    */s/ Michael H. Rapp*
                                            Michael H. Rapp
                                            CONSUMER ATTORNEYS
                                            1600 Genessee, Suite 435
                                            Kansas City, Missouri 64102
                                            T: (816) 633-3463
                                            E: mrapp@consumerattorneys.com

                                            *Attorneys for Plaintiffs-Appellants*
                                            *Brianna and Craig Dulworth*

## TABLE OF CONTENTS OF REQUIRED SHORT APPENDIX

Items Included Pursuant to CR 30(a)

Order from the Court dated May 22, 2024 (ECF 205)  ....................................................App. 1

Final Judgment dated May 22, 2024 (ECF 206)................................................................App. 37

Items Included Pursuant to CR 30(b)

Notice of Removal dated March 10, 2022 (ECF 1)  ........................................................App. 38

State Court Record (ECF 1-1)..........................................................................................App. 42

Second Amended Complaint dated August 19, 2022 (ECF 72)........................................App. 59

Order Regarding Ally Financial, Inc. Settlement dated April 7, 2023 (ECF 134).............App. 70

Order Dismissing Ally Financial, Inc. dated April 27, 2023 (ECF 154) ...........................App. 72

Appellants Credit Denial Letters (ECF 183-5) ................................................................App. 73

Appellants' Bankruptcy Petition (ECF 194-1)..................................................................App. 87

Appellants' Reaffirmation Agreement (ECF 194-2)..........................................................App. 203

Appellants' Bankruptcy Discharge Order (ECF 194-3)....................................................App. 213

Brianna Dulworth Deposition Transcript Excerpts (ECF 194-4) .....................................App. 216

Craig Dulworth Deposition Transcript Excerpts (ECF 194-5) .........................................App. 229

Brianna Dulworth Dispute Letter to Equifax (ECF 194-6) ..............................................App. 234

Brianna Dulworth Dispute Letter to Experian (ECF 194-7)..............................................App. 247

Brianna Dulworth Dispute Letter to Equifax (ECF 194-8) ..............................................App. 259

Brianna Dulworth Dispute Letter to Experian (ECF 194-9)..............................................App. 274

Craig Dulworth Dispute Letter to Equifax (ECF 194-10) .................................................App. 291

Craig Dulworth Dispute Letter to Experian (ECF 194-11)................................................App. 304

Craig Dulworth Dispute Letter to Equifax (ECF 194-12) .................................................App. 317

Craig Dulworth Dispute Letter to Experian (ECF 194-13) .................................................App. 332

Equifax's Responses to Interrogatories (ECF 194-16) ......................................................App. 350

Experian's Responses to Requests for Admissions (ECF 194-17) ....................................App. 358

Notice of Appeal (ECF 209) .............................................................................................App. 374

<u>Confidential Items Proposed to be Filed Under Seal</u>

Declaration of Christina Hamilton (ECF 183-3) ...............................................................App. 376

Equifax ACDV dated October 2021 (ECF 195-1) .............................................................App. 382

Equifax AVDV dated December 2021 (ECF 195-2)...........................................................App. 387

Ally Representative Deposition Transcript Excerpts (ECF 195-3)......................................App. 392

Equifax Representative Deposition Transcript Excerpts (ECF 195-4) ...............................App. 397

Experian Representative Deposition Transcript Excerpts (ECF 195-5) .............................App. 414

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CRAIG DULWORTH and BRIANNA DULWORTH,      )
                                          )
            *Plaintiffs*,                  )
                                          )      1:22-cv-00469-JMS-MJD
      *vs.*                                 )
                                          )
EXPERIAN INFORMATION SOLUTIONS INC. and   )
EQUIFAX INFORMATION SERVICES, LLC,        )
                                          )
            *Defendants*.                  )

## <u>ORDER</u>

Plaintiffs Craig and Brianna Dulworth filed for bankruptcy protection in October 2018, received a bankruptcy discharge, and reaffirmed an automobile loan from Ally Financial/Ally Bank ("<u>Ally</u>") (the "<u>Ally Loan</u>") as part of the bankruptcy proceeding.  Subsequently, they accessed their credit reports from Defendants Experian Information Solutions Inc. ("<u>Experian</u>") and Equifax Information Services, LLC ("<u>Equifax</u>") (collectively, "<u>the CRAs</u>"), and discovered that the Ally Loan was being reported as being included in their bankruptcy and that no payment history was reflected.  The Dulworths then initiated this litigation, alleging that the way in which the CRAs reported the Ally Loan violated various provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("<u>FCRA</u>").  The CRAs have filed a Joint Motion for Summary Judgment, [Filing No. 180], and the Dulworths have filed a Motion to Exclude the Declaration of Karen Cobb, [Filing No. 198], both of which are ripe for the Court's consideration.

## I.

### THE DULWORTHS' MOTION TO EXCLUDE THE DECLARATION OF KAREN COBB

In support of their Joint Motion for Summary Judgment, the CRAs submitted a Declaration from Karen Cobb, Litigation Support Lead for Equifax.  [Filing No. 183-2.]  Because resolution

of the Dulworths' Motion to Exclude will determine whether the Court considers Ms. Cobb's Declaration in connection with the Joint Motion for Summary Judgment, the Court turns first to the Motion to Exclude.

### A.     Standard of Review

Federal Rule of Civil Procedure 26(a)(1)(A) requires, among other things, that "a party must, without awaiting a discovery request, provide to the other parties…the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Under Rule 26(e)(1), a party who has made a disclosure under Rule 26(a) must "supplement or correct its disclosure or response…in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

The consequences of failing to comply with the disclosure requirements of Rule 26 are set forth in Federal Rule of Civil Procedure 37, which provides that "[i]f a party fails to…identify a witness as required by Rule 26(a)…, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Where failing to identify the witness is not substantially justified or harmless, exclusion is "automatic and mandatory."  *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).  "The party who fails timely to disclose witnesses has the burden to show the failure was harmless or substantially justified; it is not the burden of the moving party to demonstrate prejudice."  *Equal Emp. Opp. Comm'n v. Vill. of Hamilton Pointe LLC*, 2020 WL 1663130, at *2 (S.D. Ind. Jan. 16, 2020).

- 2 -

App. 2

### B.      Relevant Background

Equifax served its Rule 26 Initial Disclosures on April 28, 2022, identifying the Dulworths, Equifax employee Celestina Gobin "or other designated representative of Equifax, who may be contacted only through Defendant's counsel," and other general categories of individuals such as "[a]ny entity with which [the Dulworths] allege to have applied for credit, employment or insurance." [Filing No. 198-1.]  When asked in an Interrogatory to identify any employees that Equifax "used to process, investigate, or respond to [the Dulworths'] disputes of the accuracy of the Account," Equifax did not identify Ms. Cobb in its August 4, 2022 Objections and Responses to Plaintiffs' First Set of Interrogatories.  [Filing No. 198-2 at 6.]

Equifax also did not list Ms. Cobb in its Witness Lists filed on May 13, 2022, but did list Ms. Gobin "or other designated representative of Equifax" and stated: "An Equifax representative is likely to have information regarding the policies, practices and procedures of Equifax for maintaining credit files and reinvestigating consumer disputes, Plaintiffs' disputes, Equifax's reinvestigations of Plaintiffs' disputes, the contents of Plaintiffs' credit files, and, after reviewing relevant documents, the facts at issue in this case." [Filing No. 30 at 1.]  In its Final Witness List, filed on February 13, 2023, Equifax identified Ms. Gobin and two other Equifax employees – Shetonjela Barber and Pamela Smith – but did not generally designate "[another] designated representative of Equifax." [*See* Filing No. 115.]  Equifax has not moved to amend its Final Witness List.

Discovery closed in this case on August 11, 2023, [Filing No. 132 at 2], and Plaintiffs did not depose Ms. Cobb.  The CRAs then submitted Ms. Cobb's Declaration in support of their Joint Motion for Summary Judgment on October 6, 2023.  [Filing No. 183-2.]  In her Declaration, Ms. Cobb discusses "the procedures that Equifax uses to assure maximum possible accuracy in

- 3 -

gathering, assembling, and storing consumer credit information and to correct errors that are brought to its attention." [Filing No. 183-2 at 3.]  She also discusses Equifax's handling of the Dulworths' dispute regarding the reporting of the Ally Loan.  [Filing No. 183-2 at 9-11.]

### C.   Discussion

In support of their Motion to Exclude, the Dulworths argue that "there can be no meaningful argument that [they] were not surprised by Equifax's untimely disclosure" of Ms. Cobb as a witness and that they were not able to take any discovery from her during the discovery period. [Filing No. 198 at 4-5.]  They assert that Ms. Cobb's Declaration "contains 62 factual statements, and Equifax cites that Declaration more than 40 times, for factual assertions relating to Equifax's data storage and compilation, its relationship with furnishers like Ally, reporting processes that relate to accuracy, Equifax's knowledge of tradeline information like that at issue in this case, reporting of bankruptcy information and supposed industry standards for doing that, [and] Equifax's supposed ability to rely on furnishers like Ally for information." [Filing No. 198 at 5.] The Dulworths contend that their "ability to prepare for a trial opposite a Party who does not comply with the Court's Orders and Rules for disclosing witnesses is categorically prejudiced." [Filing No. 198 at 6.]  They argue that the prejudice they have suffered by the late disclosure of Ms. Cobb as a witness cannot be cured and that they "have strategically chosen not to move for summary judgment, based on the state of discovery at the time it closed, only to have Equifax blindside them with wholly new evidence after [they] made that decision and could not reverse it." [Filing No. 198 at 7.]  They note that if additional discovery were now allowed, they "would have to completely retool their summary-judgment positions and re-brief the Motion." [Filing No. 198 at 7.]  They also argue that although Equifax's untimely disclosure of Ms. Cobb does not affect the trial date, it does "meaningfully impact[ ] summary judgment." [Filing No. 198 at 8.]  The

Dulworths assert that Equifax's failure to disclose Ms. Cobb was willful and that the circumstances justify a departure from Local Rule 56-1(i), which discourages collateral motions in the summary judgment process. [Filing No. 198 at 8-9.]

In its response, Equifax argues that the Dulworths are not prejudiced by the use of Ms. Cobb's Declaration because Equifax identified two other Equifax representatives – Ms. Gobin and Ms. Barber – and the Dulworths did not depose either of those individuals. [Filing No. 200 at 2.] Equifax argues that its policies and procedures are undisputed and that "[i]f Plaintiffs truly believed that different witnesses would provide differing testimony regarding Equifax's policies and reinvestigation procedures, then they would have certainly deposed every witness identified by Equifax." [Filing No. 200 at 3.] Equifax argues that its policies and procedures do not change based on which specific Equifax representative testifies, and states that it is "amenable to exchanging Ms. Cobb's declaration with one signed by Ms. Gobin, an individual specifically named by Equifax in its witness list." [Filing No. 200 at 3.] Equifax argues that it sufficiently identified its witness as "other designated representative of Equifax," and "there is no possible tactical advantage Equifax can have over Plaintiffs because Equifax's policies and reinvestigations remain unchanged." [Filing No. 200 at 3-4.] Equifax contends that the timing of its disclosure of Ms. Cobb was not willful and that it did not gain any tactical advantage. [Filing No. 200 at 5.]

In their reply, the Dulworths argue that Rule 26(a)(1) requires the disclosure of actual individuals and not categories of individuals. [Filing No. 201 at 1-2.] They assert that Equifax's description of Ms. Gobin's testimony in its disclosures indicates that she was the only person at Equifax who could testify regarding Equifax's policies, practices, and procedures. [Filing No. 201 at 3.] They argue further that Equifax seeks to use a Rule 30(b)(6) witness for a declaration, but that "Rule 30(b)(6) only applies to depositions, so by definition it does not apply to declarations

- 5 -

or affidavits." [Filing No. 201 at 4.]  They assert that "while Ms. Cobb claims her Declaration is based on her personal knowledge, Equifax destroys that claim by submitting a declaration from Ms. Gobin that is word-for-word identical." [Filing No. 201 at 5.]  The Dulworths argue that Equifax has not carried its burden of showing a lack of harm to them and that they are not required "to turn over every stone and depose every witness an opponent does disclose so that [they] can preserve harm arguments that have not yet materialized." [Filing No. 201 at 6.]  They assert that Ms. Cobb testifies about more than Equifax's policies and procedures, and that although Equifax maintains that its belated disclosure of Ms. Cobb was not willful, it has not provided any explanation for why it was untimely. [Filing No. 201 at 9.]

There is no dispute that Equifax did not specifically disclose Ms. Cobb as a witness. Instead, it disclosed Ms. Gobin "or other designated representative of Equifax" to testify regarding "the policies, practices and procedures of Equifax for maintaining credit files and reinvestigating consumer disputes, Plaintiffs' disputes, Equifax's reinvestigations of Plaintiffs' disputes, the contents of Plaintiffs' credit file, and, after reviewing relevant documents, the facts at issue in this case." [Filing No. 198-1 at 3.]  It also disclosed "Celestine Gobin or other designated representative of Equifax" on its witness list and provided a similar description of the testimony that person would provide as it had included in its Rule 26 disclosures. [Filing No. 30 at 1 ("An Equifax representative is likely to have information regarding the policies, practices and procedures of Equifax for maintaining credit files and reinvestigating consumer disputes, Plaintiffs' disputes, Equifax's reinvestigations of Plaintiffs' disputes, the contents of Plaintiffs' credit files, and, after reviewing relevant documents, the facts at issue in this case.").]

But this failure to specifically disclose Ms. Cobb only warrants exclusion of her Declaration if it harmed the Dulworths.  Most telling is the fact that Equifax did disclose Ms.

Gobin, but the Dulworths did not depose her.  Equifax has submitted a Declaration from Ms. Gobin that is identical to Ms. Cobb's Declaration in all material respects.  [Filing No. 200-1.]  While the Dulworths argue that this indicates that Ms. Cobb's Declaration could not have been based on her personal knowledge if Ms. Gobin can aver to the same facts, the Court disagrees.  It is possible – and, in the Court's view, probable – that more than one employee would have personal knowledge of the inner workings of their employer.  Ms. Gobin's Declaration demonstrates that this is the case with Equifax, and that Equifax's failure to specifically name Ms. Cobb as a witness, in light of the Dulworths' failure to depose Ms. Gobin, was harmless.[1]  Accordingly, the Court **DENIES** the Dulworths' Motion to Exclude the Declaration of Karen Cobb.  [Filing No. 198.]

## II.
### THE CRAs' JOINT MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "'Summary judgment is not a time to be coy.'"  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

---

[1] The Dulworths' failure to depose Ms. Gobin also discredits their argument that they may have decided to move for summary judgment had they known that Equifax would rely on Ms. Cobb as a witness.  It is unclear to the Court how the Dulworths would move for summary judgment without testimony regarding Equifax's internal policies and procedures – information they decided not to pursue when they determined not to depose Ms. Gobin.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is still appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th

Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

    **B.**    **Statement of Facts**

    The following Statement of Facts is set forth pursuant to the standard detailed above.  The

facts stated are not necessarily objectively true, but as the summary judgment standard requires,

the undisputed facts and the disputed evidence are presented in the light most favorable to "the

party against whom the motion under consideration is made."  *Premcor USA, Inc. v. Am. Home*

*Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

    *1.*    *The CRAs' Procedures Related to Reporting Bankruptcies*

    When a consumer files for bankruptcy, the CRAs receive high level information from

public vendors including the consumer's name, the type of bankruptcy filed (*i.e.*, Chapter 7 or

Chapter 13), the date the consumer filed for bankruptcy, and the court in which the consumer filed

for bankruptcy.  [Filing No. 183-2 at 4; Filing No. 183-3 at 3-4.]  The public vendors will also

inform the CRAs when a bankruptcy has been discharged or dismissed.  [Filing No. 183-2 at 4;

Filing No. 183-3 at 3-4.]  Public vendors do not provide the CRAs with information regarding

particular tradelines.  [Filing No. 183-3 at 3-4.]  The CRAs generally rely on consumers (the debt

holder) and data furnishers (*i.e.*, the entity that is owed the debt) to inform them regarding whether

an account was discharged in bankruptcy.  [Filing No. 183-1 at 7-8; Filing No. 183-2 at 4; Filing

No. 183-2 at 7; Filing No. 183-3 at 3; Filing No. 183-4 at 11-12.]

    In addition to relying on data furnishers and consumers to provide bankruptcy discharge

information, the CRAs have developed and implemented an automated procedure to update

accounts to report as discharged following entry of a Chapter 7 bankruptcy discharge order.  [Filing

No. 183-2 at 9; Filing No. 183-3 at 4-5.]  This procedure – called the bankruptcy "scrub" – was

developed pursuant to an injunction entered in *White v. Experian Info. Sol., Inc.*, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) (the "White Injunction").  [Filing No. 183-2 at 9; Filing No. 183-3 at 4.]  Pursuant to the White Injunction, if a furnisher is already reporting to a CRA that an account was included in bankruptcy, the CRA will either retain that reporting during the pendency of the bankruptcy and update the reporting to "discharged in bankruptcy" once the discharge order is entered or simply retain the "included in bankruptcy" status after the discharge.  [Filing No. 183-2 at 9; Filing No. 183-3 at 5.]

> a.    Bankruptcy Information From Data Furnishers

Before accepting consumer data from a particular data furnisher, the furnisher goes through a vetting process and the CRAs "will provide consumer reports and accept consumer credit data only from those data furnishers [the CRAs] have determined are reasonably reliable based upon the [CRAs'] own investigation, the data furnisher's reputation in the community, and/or [the CRAs'] longstanding business relationships with them."  [Filing No. 183-2 at 5; *see also* Filing No. 183-3 at 3.]  Each data furnisher signs an agreement certifying that it will comply with all requirements of the FCRA.  [Filing No. 183-2 at 5-6; Filing No. 183-3 at 3.]  The CRAs do not report information from data furnishers that they believe to be unreliable and if at any point the CRAs learn that a data furnisher is not providing accurate information, they would take immediate steps to remediate up to and including terminating the data furnisher as a source of information.  [Filing No. 183-2 at 6; Filing No. 183-3 at 3.]

Data furnishers report information to the CRAs pursuant to an industry-wide manual called the Credit Reporting Resource Guide ("CRRG").  [Filing No. 183-2 at 4; Filing No. 183-3 at 3.]  The CRRG explains that data furnishers are to report accounts that are reaffirmed, included in

bankruptcy, or discharged in bankruptcy through the use of Consumer Information Indicators

("CII").  [Filing No. 183-2 at 5; Filing No. 183-3 at 3.]  For example:

- A CII of "A" indicates that an account was included in a consumer's Chapter 7 bankruptcy petition;

- a CII of "E" indicates that a debt has been discharged in bankruptcy, and the CRAs will not display a recent balance, past-due amount, or current payment amount, and will suppress any post-petition payment information the data furnisher has reported; and

- a CII of "R" indicates that an account was reaffirmed in bankruptcy, and the CRAs will continue to display the balance and payment information for that tradeline, or will update the account to reflect that information if it was previously being reported as "A" or "E."

[Filing No. 183-2 at 5; Filing No. 183-3 at 4.]

b.    Bankruptcy Information from Consumers

The CRAs also rely on consumers to inform them if the consumer believes the information

on their credit report is inaccurate.  [Filing No. 183-2 at 6; Filing No. 183-3 at 4.]  If a consumer

contacts the CRAs and provides either inadequate documentation or no documentation at all to

support their claim that an account should be reported as reaffirmed in bankruptcy, the CRAs will

thoroughly review the dispute and any supporting documentation and then contact the data

furnisher to verify the accuracy of its reporting through the Automated Consumer Dispute

Verification ("ACDV") process.  [Filing No. 183-1 at 12; Filing No. 183-2 at 6; Filing No. 183-3

at 5; Filing No. 183-4 at 18.]  If the data furnisher then informs the CRAs that the account should

report as reaffirmed, the consumer's credit report will be updated accordingly.  [Filing No. 183-1

at 12; Filing No. 183-2 at 6; Filing No. 183-3 at 5.]

2.    The Dulworths' Ally Loan and Chapter 7 Bankruptcy

On July 27, 2018 the Dulworths took out the Ally Loan, which was secured by a 2016 Kia

Sedona.  [Filing No. 181-1 at 39-40; Filing No. 181-1 at 106-07.]  Three months later, on October

12, 2018, the Dulworths filed a joint Voluntary Petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana.   [Dkt. 1 in *In re: Craig Scott Dulworth and Brianna Lashell Dulworth*, No. 18-07856-JMC-7 (Bankr. S.D. Ind.) (the "Bankruptcy Petition"); Filing No. 181-2; Filing No. 181-3.]

The Bankruptcy Petition listed two creditors holding secured claims – Ally (secured by the 2016 Kia Sedona) and One Main (secured by a 2006 Chevy Silverado).  [Filing No. 181-3 at 20.] The Dulworths wanted to reaffirm the Ally Loan so that Brianna Dulworth could use the 2016 Kia Sedona to get to and from work.  [Filing No. 181-1 at 42-43.]  On December 20, 2018, Ally filed in the Bankruptcy Court a Reaffirmation Agreement that it had entered into with the Dulworths which required the Dulworths to make regular payments of $449.90 per month over the course of 74 months beginning on November 25, 2018.  [Filing No. 181-1 at 50; Filing No. 181-4 at 2.]  The Reaffirmation Agreement outlined various obligations for the Dulworths and stated that if those obligations were not satisfied, "the reaffirmation agreement is not effective, even though you have signed it."  [Filing No. 181-4 at 8.]  It also stated that the Dulworths could "rescind (cancel)" the Reaffirmation Agreement by providing notice to Ally "at any time before the bankruptcy court enters [the] discharge, or during the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later."  [Filing No. 181-4 at 8.]  The Dulworths' attorney signed the Reaffirmation Agreement on November 16, 2018, the Dulworths signed it on December 4, 2018, and an Ally representative signed it on December 11, 2018.  [Filing No. 181-1 at 7.]

On January 15, 2019, the Bankruptcy Court entered an Order discharging the Dulworths' Chapter 7 bankruptcy.  [Filing No. 181-5 at 6-7.]  The Discharge Order stated that "[m]ost…but not all" debts are covered by the discharge, but the Discharge Order did not include a list of the

Dulworths' discharged and reaffirmed debts.  [Filing No. 181-5 at 6.]  The Discharge Order further stated that creditors could not "make any attempt to collect a discharged debt" and explained that the bankruptcy discharge "does not prevent the debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement."  [Filing No. 181-5 at 6.]  The Discharge Order stated that it was "only a general summary of the bankruptcy discharge," and that because "some exceptions exist" and "the law is complicated," "you should consult an attorney to determine the exact effect of the discharge in this case."  [Filing No. 181-5 at 7 (emphasis omitted).]

### 3.    *The CRAs' Reporting of the Ally Loan*

The Dulworths maintained current payments on the Ally Loan.  [Filing No. 195-3 at 5.] Approximately two and a half years after the Bankruptcy Court issued the Discharge Order, the Dulworths obtained copies of their credit reports from the CRAs and discovered that Equifax was reporting the Ally Loan as included in bankruptcy with no payment history and Experian was reporting the Ally Loan as discharged through bankruptcy and never late. [*See* Filing No. 72 at 2-3; Filing No. 183-2 at 9; Filing No. 183-3 at 4.]  The CRAs were not reporting a monthly payment amount of any balance on the Ally Loan because Ally reported to the CRAs that the Ally Loan was included in the Dulworths' Chapter 7 bankruptcy and the CRAs relied on that reporting.  [*See* Filing No. 183-2 at 5; Filing No. 183-2 at 9; Filing No. 183-3 at 4-5.]  Additionally, the tradeline was not scrubbed pursuant to the White Injunction.  [*See* Filing No. 183-2 at 9; Filing No. 183-3 at 5.]  The CRAs were also reporting the Dulworths' discharged Chapter 7 bankruptcy public record.  [Filing No. 183-2 at 7; Filing No. 183-3 at 3.]

4.    *The Dulworths' Disputes to Equifax and Equifax's Reinvestigation*

The Dulworths reached out to Ally "[u]p to seven [times]" in an effort to have Ally change its reporting of the Ally Loan and, once they realized Ally would not change its reporting, they hired counsel to assist them with sending disputes to the CRAs.  [Filing No. 181-1 at 84-85; Filing No. 181-1 at 89-90.]  The Dulworths hired Stecklein and Rapp Chartered to represent them, and in September 2021, the Dulworths (on their own and not through their attorney) each submitted identical dispute letters to Equifax (the "September 2021 Disputes").  [Filing No. 183-2 at 9-10; Filing No. 181-11; Filing No. 181-12.]  In the September 2021 Disputes, the Dulworths stated that Equifax was incorrectly reporting the Ally Loan as included in bankruptcy with no payment history because the account was reaffirmed in bankruptcy.  [Filing No. 183-2 at 9-10; Filing No. 181-10; Filing No. 181-11.]   The September 2021 Disputes included a copy of the Reaffirmation Agreement that was filed with the Bankruptcy Court.  [Filing No. 181-10 at 8-13; Filing No. 181-11 at 8-13.]  After receiving the September 2021 Disputes and after locating the Dulworths' credit files, Equifax opened a case for each of the Dulworths to track the reinvestigation.  [Filing No. 183-2 at 9-10.]

The Equifax agent who reviewed Brianna Dulworth's September 2021 Dispute did not contact Ally via ACDV as required by Equifax's policies and procedures and it appears from Equifax's records that the agent misinterpreted Brianna Dulworth's dispute.  [Filing No. 183-1 at 22; Filing No. 183-2 at 9-10.]  In any event, the agent addressed the Ally Loan and confirmed that it was reporting as included in bankruptcy.  [Filing No. 182-1; Filing No. 183-1 at 22-23; Filing No. 183-2 at 10.]

The Equifax agent who reviewed Craig Dulworth's September 2021 Dispute notified Ally via the ACDV process and requested that Ally investigate the account and verify whether the Ally

Loan was reaffirmed in the bankruptcy.  [Filing No. 183-2 at 10.]  After investigating, Ally advised

Equifax that the Ally Loan was accurately reporting as included in bankruptcy.  [Filing No. 183-2

at 10.]  On October 12, 2021, Equifax informed Craig Dulworth of the results of its investigation

and verified that the account was correctly reporting as included in bankruptcy.  [Filing No. 183-

2 at 10.]

Equifax received a second dispute from Brianna Dulworth in December 2021 (the

"December 2021 Dispute").  [Filing No. 183-2 at 10-11.]  In the December 2021 Dispute, Brianna

Dulworth stated that the Ally Loan continued to report inaccurately and re-submitted the

Reaffirmation Agreement that was filed with the Bankruptcy Court.  [Filing No. 181-12; Filing

No. 183-2 at 11.]  The Equifax agent who reviewed the December 2021 Dispute notified Ally via

the ACDV process and requested that Ally investigate the account and verify whether the account

was reaffirmed in bankruptcy.  [Filing No. 183-2 at 11.]  Ally returned its investigation results and

advised that the account was accurately reporting as included in bankruptcy and Equifax advised

Brianna Dulworth of the results of the investigation and verified that the account was correctly

reporting as included in bankruptcy.  [Filing No. 183-2 at 11.]  Equifax did not take any additional

actions to investigate the status of the Ally Loan.  [Filing No. 195-4 at 24-25.]

> 5.    *The Dulworths' Disputes to Experian and Experian's Reinvestigation*

The Dulworths claim that they sent letters to Experian dated September 7, 2021 and

November 1, 2021 disputing Experian's reporting of the Ally Loan.  [Filing No. 183-3 at 5-6.]  But

as Experian investigated the matter, it discovered that the disputes were identified by Experian as

not originating from the Dulworths, so they were not processed pursuant to Experian's mail

processing procedures.  [Filing No. 183-3 at 6.]  Specifically, Experian's Global Security Policy

was implemented to evaluate mail it receives and to differentiate between disputes actually sent

from a consumer or their attorney versus those sent by third parties, including credit clinics.  [Filing No. 183-3 at 6.]  Under the Global Security Policy, Experian employees evaluate outside envelopes and compare them to other mail received because third parties tend to send their mail in bulk, with similar features apparent from the outside.  [Filing No. 183-3 at 6.]  Letters identified as likely sent by a third party or credit clinic are then opened and reviewed to determine if they appear to have been sent directly by a consumer.  [Filing No. 183-3 at 6.]  If they are sent by a consumer or an attorney representing a consumer, Experian processes that mail according to the requirements of the FCRA.  [Filing No. 183-3 at 6.]  If they are sent by a third party or credit clinic, Experian does not process those letters as disputes.  [Filing No. 183-3 at 6.]  The dispute letters the Dulworths claim to have sent to Experian were identified by Experian as third-party mail and, consequently, Experian did not conduct a further reinvestigation.  [Filing No. 183-3 at 6.]

Approximately one month after the Dulworths initiated this litigation (which originated in Johnson Superior Court and was removed to this Court, [Filing No. 1]), and before Ally was named as a Defendant, Experian notified Ally of the Dulworths' disputes via the ACDV process and requested that Ally investigate the Ally Loan and verify whether the account was reaffirmed in bankruptcy.  [Filing No. 183-3 at 5.]  Ally returned its reinvestigation results and advised Experian that the Ally Loan was accurately reported by Experian as discharged in bankruptcy.  [Filing No. 183-3 at 5.]

### 6.    *The Dulworths' Claimed Damages*

The Dulworths acknowledge that following the discharge of their Chapter 7 bankruptcy, the bankruptcy filing had harmed their credit and they were not surprised when several applications for new credit cards and loans were denied or came with unfavorable interest rates.  [Filing No. 181-1 at 8-10; Filing No. 181-1 at 57; Filing No. 181-1 at 69.]  Specifically, after the discharge of

their Chapter 7 bankruptcy, the Dulworths attempted to obtain an automobile loan through a car dealership and, during the application process, received two sets of denials dated July 17, 2021 and July 24, 2021 from Teachers Credit Union that were based on their Equifax credit file. [Filing No. 181-1 at 97-98; Filing No. 183-5 at 2-3; Filing No. 183-5 at 7-8.] The denials dated July 17, 2021 were not straight denials and only stated that the lender was unable to offer the Dulworths credit on the terms requested due to an "[i]nsufficient credit file after Bankruptcy." [Filing No. 183-5 at 2-3.] The July 17, 2021 denials offered the Dulworths a loan with alternative terms, which they did not accept. [Filing No. 181-1 at 121; Filing No. 183-5 at 2-3.] The denials dated July 24, 2021, however, did not provide alternative terms but stated that the principal reasons for credit denials were "[b]ankruptcy" and "[i]nsufficient credit file after Bankruptcy." [Filing No. 183-5 at 7-8.] The denial letters did not reference the reporting of any specific account as discharged in the Dulworths' bankruptcy or the Ally Loan at issue. [Filing No. 183-5.] Despite these letters, the Dulworths still obtained an automobile loan through Capital One Finance in July 2021. [Filing No. 181-1 at 99.]

The Dulworths claim that they have suffered emotional and mental anguish, frustration, and annoyance. [Filing No. 182-6 at 9-10; Filing No. 182-7 at 8-9.] Brianna Dulworth experienced sadness and embarrassment associated with filing for bankruptcy, and frustration with the repeated attempts to convince Ally that the Ally Loan was reaffirmed and that it should be reported to the CRAs as reaffirmed. [Filing No. 181-1 at 30-32; Filing No. 181-1 at 83-85.] Brianna Dulworth discussed her stress related to her attempts to convince Ally to report the Ally Loan as reaffirmed with her family doctor, but neither she nor Craig Dulworth sought medical treatment as a result of the CRAs' reporting of the Ally Loan, nor is there any evidence that they spoke to a mental health professional. [Filing No. 181-1 at 135-36; Filing No. 182-7 at 9.]

7.     *The Lawsuit*

The Dulworths originally filed suit in Johnson Superior Court, and Experian removed the case to this Court on the basis of federal question jurisdiction.  [Filing No. 1.]  In their operative Second Amended Complaint, the Dulworths assert claims against the CRAs for willfully and negligently: (1) violating § 1681e(b) of the FCRA by not following reasonable procedures to assure maximum possible accuracy of their reporting; and (2) violating § 1681i of the FCRA by failing to conduct a reasonable reinvestigation of the Dulworths' disputes.  [Filing No. 72 at 5-8.] Specifically, the Dulworths allege that the CRAs erroneously reported the Ally Loan as "'INCLUDED IN BANKRUPTCY' with no payment history" or "Discharged through Bankruptcy Chapter 7/Never late" when the account was actually reaffirmed and they were making payments toward the balance of the loan after the bankruptcy discharge.  [Filing No. 72 at 2-3.]  The Dulworths allege that they submitted disputes to the CRAs regarding the erroneous reporting, but that the CRAs continued to report the Ally Loan as included in bankruptcy and discharged through bankruptcy.  [Filing No. 72 at 3-4.]  The Dulworths seek actual damages, statutory damages, punitive damages, costs, and attorneys' fees.  [Filing No. 72 at 7.]

C.     **Discussion**

1.     *Standing*

Before the Court considers the substance of the Dulworths' claims, it must determine whether they have standing to sue, which is a jurisdictional requirement.  *Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184, 1189 (7th Cir. 2021) (courts "have independent obligation to inspect, and remain within, jurisdictional boundaries") (quotation and citation omitted).  Standing is a threshold issue, and the Court must discuss it at the outset.  *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).  To have standing to sue in federal court under Article III,

a plaintiff must establish: "(i) that he [or she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"Because standing is an essential ingredient of subject-matter jurisdiction, it must be secured at each stage of the litigation." *Bazile*, 983 F.3d at 278. Although at the pleading stage "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, "[o]nce the allegations supporting standing are questioned as a factual matter – either by a party or by the court – the plaintiff must support each controverted element of standing with 'competent proof,'" *Bazile*, 983 F.3d at 278 (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). "Competent proof" means "a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).

The parties do not explicitly address whether the Dulworths have standing, but the CRAs argue in their Joint Motion for Summary Judgment that the Dulworths have not presented evidence that the CRAs' reporting of the Ally Loan as discharged, rather than the Dulworths' poor credit history and bankruptcy discharge, caused them any injury in fact. [Filing No. 186 at 19-23.] The CRAs note the Dulworths' testimony that they knew filing for bankruptcy would damage their credit for years and make it difficult to obtain credit. [Filing No. 186 at 19-20 (citing Filing No. 181-1 at 7; Filing No. 181-1 at 25-26; Filing No. 182-9 at 7).] They assert that although the Dulworths received eleven denial letters in total (the "Credit Denial Letters"), they have not presented any evidence that the denials were connected to the CRAs' reporting of the Ally Loan. [Filing No. 186 at 21.] They argue that seven of the Credit Denial Letters relied on information

from Trans Union, another credit reporting agency that is not a party in this lawsuit, and that although four of the letters refer to receiving information from Equifax, none reference the Dulworths' outstanding debts or the Ally Loan as a reason for the denial. [Filing No. 186 at 21.] The CRAs note that the four letters referencing Equifax provide the following reasons for denial: "Bankruptcy" and "[i]nsufficient credit file after Bankruptcy." [Filing No. 186 at 21 (citing Filing No. 183-5 at 2-3; Filing No. 183-5 at 7-8).] The CRAs argue that, in any event, the Dulworths were able to obtain an automobile loan "almost immediately" after the Credit Denial Letters. [Filing No. 186 at 21.] They also assert that the Dulworths have not provided any credit denial letters linked to information reported by Experian. [Filing No. 186 at 21.] As for emotional distress damages, the CRAs argue that any distress the Dulworths suffered was due to the filing of their bankruptcy and their efforts to get Ally to change its reporting of the Ally Loan to the CRAs, and not due to any actions of the CRAs. [Filing No. 186 at 21-22.] They also argue that "the garden-variety stresses that [the Dulworths] claim to have experienced are exactly the sort that courts in the Seventh Circuit reject as failing to meet the Seventh Circuit's strict standard for a finding of emotional damage because they are so easy to manufacture." [Filing No. 186 at 22 (quotation and citation omitted).]

In their response,[2] the Dulworths focus on the emotional distress damages they claim they have suffered, including Brianna Dulworth's high blood pressure and anxiety, sadness and depression, overwhelming stress, and frustration with the dispute process and the CRAs; and Craig

_____

[2] The CRAs note that the Dulworths' response, after subtracting pages used for the table of contents and table of authorities, exceeds the 35-page limit for response briefs by 6 pages, and request that the Court not consider arguments "after the 39-page mark." [Filing No. 199 at 3.] The Court acknowledges that the Dulworths' response brief does not comply with the 35-page limit set forth in Local Rule 7-1(e), but will consider the Dulworths' arguments made outside of the page limit since the arguments made in the last 6 pages are not outcome-determinative. The Court cautions counsel, however, that it must comply with all Local Rules going forward.

- 20 -

App. 20

Dulworth feeling frustrated and helpless that no one would assist them with correcting the misreporting.  [Filing No. 196 at 23-25.]

The CRAs argue in their reply that the Dulworths do not dispute that the CRAs' reporting of the Ally Loan did not cause them any credit harm.  [Filing No. 199 at 10.]  They reiterate their argument that any emotional distress the Dulworths suffered was attributable to their bankruptcy proceeding and Ally's actions.  [Filing No. 199 at 10-11.]

The Court agrees that the Dulworths ignore the CRAs' arguments regarding a lack of actual damages from their reporting of the Ally Loan – both that the Dulworths have not presented any evidence that the credit denials based on information from Equifax were due to Equifax's reporting of the Ally Loan and that none of the credit denials the Dulworths produced were based on information from Experian.  Consequently, the Dulworths have waived any argument in opposition. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.").

Additionally, the evidence the Dulworths point to in support of their claim that they suffered emotional distress damages relates to the filing of their bankruptcy or their failed efforts to get Ally to change how it was reporting the Ally Loan to the CRAs – and not to the actions of the CRAs.  [*See, e.g.*, Filing No. 194-4 at 17-18 (Brianna Dulworth testifying regarding emotional distress "from Ally's reporting"); Filing No. 194-5 at 4 (Craig Dulworth testifying that he was aggravated due to not being able to get credit and was "trying to fix the problem" by applying for credit).]  The only evidence the Dulworths point to regarding the CRAs' actions is testimony from Brianna Dulworth that she did not follow through with the CRAs regarding her dispute of the reporting of the Ally Loan because she "was frustrated."  [Filing No. 194-4 at 11.]  The Court finds that Brianna Dulworth's vague reference to feeling frustrated is not sufficient to show that the

- 21 -

Dulworths suffered emotional distress as a result of the CRAs' actions. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (The Seventh Circuit imposes a "strict standard for a finding of emotional damage because [accounts of emotional distress] are so easy to manufacture.") (quotation and citation omitted); *see also Laura v. Experian Info. Sols., Inc.*, 2022 WL 823853, at *3 (N.D. Ill. Mar. 18, 2022) (plaintiff's conclusory assertion that she experienced frustration, despair, and hopelessness after CRA's inaccurate reporting was not sufficient to support emotional distress damages).

Even though the Dulworths have not presented any evidence that they suffered actual damages for purposes of recovering for a negligent violation of the FCRA under §1681o, they can still seek statutory and punitive damages under § 1681n for a willful violation of the FCRA. *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 725 (7th Cir. 2016) ("Each willful violation entitles consumers to recover either 'any actual damages sustained…as a result' of the violation or statutory damages of between $100 and $1,000.") (quoting 15 U.S.C. § 1681n(a)(1)(A)). The Dulworths still must show, however, that they suffered an injury-in-fact in order to seek redress for a willful violation. *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 93 n.2 (1st Cir. 2022) ("Even without a showing of actual damages, a plaintiff who seeks to press a willful noncompliance claim [under the FCRA] must show an injury in fact sufficient to support standing.") (citing *Trans Union LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021)).

In *Spokeo, Inc. v. Robins*, the Supreme Court held that a "bare procedural violation [of the FCRA] divorced from any concrete harm" does not satisfy the injury-in-fact requirement of Article III." 578 U.S. 330, 341 (2016). The Supreme Court also found, however, that "the risk of real harm" can satisfy the requirement of concreteness where the violation of the FCRA is of a right granted by the statute and the plaintiff "need not allege any additional harm beyond the one

Congress has identified." *Id.* at 342 (emphasis omitted).  Subsequently, the Supreme Court held that a plaintiff has standing to sue for an FCRA violation where a misleading credit report was provided to a third party, because this dissemination constituted "concrete reputational harm." *Ramirez*, 141 S. Ct. at 2200; *see also Chuluunbat v. Experian Info. Solutions, Inc.*, 4 F.4th 562, 566 n.3 (7th Cir. 2021) (plaintiffs had standing to assert FCRA claims where they had all alleged that their credit reports were accessed by third parties).

The record evidence in this case, which consists of the Credit Denial Letters, shows that Equifax disseminated the Dulworths' credit reports to third parties during the time that the Ally Loan was being reported as included in bankruptcy instead of reaffirmed.  [*See* Filing No. 183-5 at 2-3 (letters to the Dulworths denying auto loan based on information received from Equifax).] Under *Spokeo* and *Ramirez*, the Court finds that, because Equifax disseminated the Dulworths' allegedly inaccurate credit reports to third parties, they have standing to assert their FCRA claims against Equifax.

There is no record evidence, however, showing that Experian disseminated the Dulworths' credit reports to third parties when it was reporting the Ally Loan as discharged through bankruptcy instead of reaffirmed.  None of the Credit Denial Letters reference Experian, [Filing No. 183-5], and the Dulworths do not set forth any additional evidence showing – nor do they even argue in their response brief – that third parties received their Experian credit report during this time. Accordingly, under *Spokeo* and *Ramirez*, the Dulworths do not have standing to assert their FCRA claims against Experian and those claims are **DISMISSED WITHOUT PREJUDICE**.[3]  The

---

[3] A dismissal for lack of jurisdiction is without prejudice.  *See Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 661 (7th Cir. 2011).

Court also **DENIES AS MOOT** the CRAs' Joint Motion for Summary Judgment, [Filing No. 180], as to the Dulworths' claims against Experian.

The Court goes on to consider the parties' arguments regarding the claims against Equifax.

> 2.      *Whether Equifax Violated § 1681e(b)*

The Dulworths claim that Equifax negligently and willfully violated the FCRA.  For a negligent violation, the Dulworths must show that they suffered actual damages in order to recover. 15 U.S.C. § 1681o.  As discussed above, they have not made such a showing and their claim for a negligent violation of § 1681e(b) fails as a matter of law.

As to a willful violation, the Dulworths must show that Equifax acted "with actual knowledge or reckless disregard for the FCRA's requirements." *Persinger v. Sw. Credit Sys., L.P.,* 20 F.4th 1184, 1195 (7th Cir. 2021) (citing *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 (2007)). This "raises a sequencing issue," where "[c]ourts may pass over the antecedent question of whether a violation occurred, moving directly to whether the defendant negligently or willfully violated the statute," which "is akin to the sequencing dilemma courts face in qualified immunity cases." *Persinger,* 20 F.4th at 1195.  The Court will follow the Supreme Court's approach in *Safeco* and the Seventh Circuit's approach in *Persinger,* however, and first consider whether Equifax has violated the FCRA.

15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  In order for the Dulworths to succeed on their FCRA claim, they must show that Equifax's consumer report contained inaccurate information.  *See Walton v. BMO Harris Bank N.A.,* 761 Fed. App'x 589, 591 (7th Cir. 2019) (holding that a CRA "cannot be held liable as a threshold matter [under § 1681e(b)] if it did

not report inaccurate information").  Additionally, the FCRA "is not a strict liability statute," *id.* at 592, and "does not require unfailing accuracy from consumer reporting agencies," *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020).  If a CRA followed "reasonable procedures to assure maximum possible accuracy" of a consumer's information, but reported inaccurate information anyway, it is not liable under the FCRA.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).  Additionally, "[n]either the FCRA nor its implementing regulations impose a…duty [upon CRAs] to determine the legality of a disputed debt."  *Denan*, 959 F.3d at 295.

Equifax argues that it did not violate § 1681e(b) for two reasons: (1) determining whether the Ally Loan was successfully reaffirmed and, consequently, inaccurately reported, would require the type of legal analysis that it is not obligated to undertake; and (2) it was entitled to rely on information furnished by Ally.  The Court considers each reason in turn.

a.      Whether Reporting the Reaffirmation Required a Legal
        Determination That Equifax Was Not Obligated to Undertake

In support of its Joint Motion for Summary Judgment, Equifax argues that the Dulworths' claims "present legal issues related to the validity of their reaffirmation agreement with Ally that are not suitable for resolution by [the CRAs]."  [Filing No. 186 at 18.]  It notes that the only parties to the Reaffirmation Agreement are the Dulworths and Ally, "and the record evidence shows that they disagreed as to whether the debt was discharged" – with the Dulworths claiming that the Ally Loan was not discharged and Ally claiming that the Ally Loan was accurately reported as included in the bankruptcy with no payment history.  [Filing No. 186 at 18.]  Equifax asserts that determining whether the Reaffirmation Agreement was "an enforceable contract between a furnisher and a consumer turns on complex questions of bankruptcy law that far exceed the competencies of consumer reporting agencies."  [Filing No. 186 at 18 (quotations and brackets omitted).]  It argues that determining whether the Reaffirmation Agreement was valid would

require it to "consider the facts surrounding the [Reaffirmation Agreement] in light of applicable

bankruptcy law." [Filing No. 186 at 18.]   It contends that the Dulworths could have gone to the

Bankruptcy Court and obtained an order that resolved their dispute with Ally and that, if they had,

the enforceability of the Reaffirmation Agreement would have become a question of fact instead

of a question of law.  [Filing No. 186 at 18-19.]

       In their response, the Dulworths argue that the CRAs "make and report legal conclusions

constantly when it suits them, but when they are sued…and want to avoid liability [they] retreat to

the legal/factual distinction that has some traction in courts, but no basis whatsoever in the statute."

[Filing No. 196 at 15.]  They assert that the CRAs could have included a notation on their credit

reports that the Dulworths were making payments pursuant to an agreement even if the CRAs had

doubts about the agreement's validity, noting that the CRAs possessed the Reaffirmation

Agreement.  [Filing No. 196 at 15.]  They contend that they are claiming that they owe a debt and

that fact is being reported inaccurately, and that they are not collaterally attacking anything.  [Filing

No. 196 at 17.]   The Dulworths note that the CRAs do not need to determine the validity of the

Reaffirmation Agreement, and only need to know whether it existed and that when they learned it

existed, "the FCRA obligated them to do something about what they were reporting so that it was

maximally accurate." [Filing No. 196 at 18.] The Dulworths argue that the CRAs "want the Court

to conclude that relying on the furnisher was reasonable as a matter of law when [the CRAs] knew

they had conflicting information about the Ally Loan and might have resolved the confusion by

checking the bankruptcy docket."  [Filing No. 196 at 20.]  They assert that the CRAs "are

statutorily obligated to get things right," and that "[p]erhaps if [bankruptcy] is so complex and

difficult, [the CRAs] should stop including it in the reports they make so much money selling."

[Filing No. 196 at 22-23.]

In its reply, Equifax reiterates its argument that it received information from Ally regarding the Ally Loan and that "any further investigation beyond confirming what Ally had already reported would have required [it] to determine whether the [R]eaffirmation [A]greement was legally valid." [Filing No. 199 at 4.] It notes that "legal disputes must be adjudicated and, as a result, are beyond the scope of [the CRAs'] abilities." [Filing No. 199 at 4.] Equifax contends that the cases the Dulworths rely upon all involved "binding and verifiable filings that were placed on the bankruptcy docket," whereas in this case the issue is whether the Reaffirmation Agreement was valid. [Filing No. 199 at 4-5.]

In *Denan v. Trans Union LLC*, the Seventh Circuit Court of Appeals considered whether a CRA had violated § 1681e(b) when it reported a debt that the consumer argued was illegally issued, but that the creditor had verified. 959 F.3d 290 (7th Cir. 2020). In finding that the CRA had not violated § 1681e(b), the Seventh Circuit explained the role of furnishers and CRAs as follows:

> The FCRA imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market. Furnishers – such as banks, credit lenders, and collection agencies – provide consumer data to consumer reporting agencies. In turn, those agencies compile the furnished data into a comprehensible format, allowing others to evaluate the creditworthiness of a given consumer. Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee. What results is a credit reporting system, producing a vast flow and store of consumer information. For example, according to the Consumer Financial Protection Bureau, each of the nationwide consumer reporting agencies receive information from furnishers on over 1.3 billion consumer credit accounts or trade lines on a monthly basis.

*Id.* at 294. The Seventh Circuit went on to note that requiring a CRA to "verify [a consumer's] debt liability" would "attempt to graft responsibilities of data furnishers and tribunals onto a consumer reporting agency. Only furnishers are tasked with accurately reporting liability. And it makes sense that furnishers shoulder this burden: they assumed the risk and bear the loss of unpaid

- 27 -

debt, so they are in a better position to determine the legal validity of a debt…. [CRAs] collect consumer information supplied by furnishers, compile it into consumer reports, and provide those reports to authorized users." *Id.* at 295 (citations omitted). It concluded that determining the validity of the plaintiff's debt involved three legal issues – whether the choice-of-law provision in the loan agreements was enforceable, whether the loans were void under applicable state laws, and whether tribal sovereign immunity shielded various parties from the application of those states' laws – and that "[t]he power to resolve these legal issues exceeds the competencies of consumer reporting agencies." *Id.*

While cases refusing to impose a duty on CRAs to determine the legality of a debt generally involve questions of the validity of the debt, the Court finds the situation here – determining the validity of the Reaffirmation Agreement – to be analogous. As the Seventh Circuit has explained, factual issues for which CRAs are responsible to accurately report include, for example, "the amount a consumer owes, and what day a consumer opened an account or incurred a payment." *Chuluunbat*, 4 F.4th at 569. In contrast, a legal issue requires a CRA to "make [a] legal determination[ ] about the facts or legal judgments." *Id.* Here, it is true that the filing of the Reaffirmation Agreement is a factual issue, ascertainable from a quick review of the Dulworths' bankruptcy docket. But the mere filing of the Reaffirmation Agreement does not necessarily mean that it was valid. Indeed, Ally told the CRAs that the Ally Loan had not been reaffirmed and was accurately reporting as included in bankruptcy. And the Reaffirmation Agreement provided that it would cease to be effective if the Dulworths did not follow various instructions contained therein. It also stated that the Dulworths could rescind the Reaffirmation Agreement by providing notice to Ally before the Bankruptcy Court entered the discharge or during the 60-day period beginning on the date the Reaffirmation Agreement was filed with the Bankruptcy Court, whichever occurred

later.  [Filing No. 181-4 at 8.]  Any further determination regarding the Reaffirmation Agreement's validity would require Equifax to delve into applicable bankruptcy rules and contract law to answer that question – including whether either of those scenarios had occurred after the Reaffirmation Agreement was filed in the Bankruptcy Court.  This is a legal determination that would require the CRAs to apply law to the facts, that "exceeds the competencies" of the CRAs, and that is one which the CRAs are not required to make under the FCRA.  *Denan*, 959 F.3d at 295.  Accordingly, the Court finds that Equifax did not violate § 1681e(b) by reporting the Ally Loan as discharged instead of reaffirmed.

    b. <u>Whether Equifax Was Entitled to Rely Upon Information From Ally</u>

   Equifax argues in support of its Joint Motion for Summary Judgment that CRAs "comply with § 1681e(b) as a matter of law by reporting information provided to them by furnishers following safeguards that are in place to ensure maximum possible accuracy of reporting consumer information."  [Filing No. 186 at 23.]  It notes that "[t]his is especially true when the issue is whether a consumer is liable to repay a debt, because only furnishers are tasked with accurately reporting liability under the FCRA."  [Filing No. 186 at 23 (quotations, citations, and brackets omitted).]  Equifax asserts that it had no reason to believe that Ally was an unreliable furnisher and that "[o]n the contrary, Ally has a strong track record of providing the CRAs with accurate information about the status of its debts following a Chapter 7 bankruptcy."  [Filing No. 186 at 24.]  Equifax relies upon a sample of 300 consumers' bankruptcy files that were reviewed in connection with *Myers v. Equifax Info. Servs., LLC*, Case No. 1:20-cv-00392-JMS-DLP (S.D. Ind.), in which there was only one reporting error from Ally.  [Filing No. 186 at 24.]  It contends that "[the Dulworths'] suggestion that [the CRAs] should independently review all information provided by furnishers would be untenable and at odds with Congress's goal of creating a credit-

reporting system suitable for meeting the needs of commerce." [Filing No. 186 at 24 (quotation and citation omitted).]

In response, the Dulworths argue that the FCRA does not allow Equifax to "shirk [its] investigation responsibilities in favor of simply regurgitating what a furnisher tells the CRA about an account," and that Equifax took Ally's word over theirs, which was improper. [Filing No. 196 at 29.] They assert that just sending ACDVs to Ally was not reasonable and that Equifax was on notice that Ally was not a reliable furnisher through the Dulworths' "multiple, detailed disputes," and through the litigation in *Myers*, which they claim showed that "Ally did not know what it was doing when consumers entered into reaffirmation agreements with it." [Filing No. 196 at 30-31.] They argue further that the Court should consider whether Equifax knew Ally might be an unreliable source and what the cost to Equifax of verifying the accuracy of the information was, and note that "there is no discussion of whether any of [the] accounts [in the 300-account sample from *Myers*] involved reaffirmation agreements," and that Equifax "offer[s] nothing solid about [what] it would take to verify with Ally whether [the Dulworths'] agreements were valid." [Filing No. 196 at 32-33.]

In its reply, Equifax reiterates its argument that the Dulworths have not "provided any authority or evidence to show that Ally is an unreliable furnisher." [Filing No. 199 at 9.]

It is well-settled that a CRA can rely on information from a furnisher in order to reasonably assure maximum possible accuracy of its reporting of a consumer's information when the CRA has no reason to believe that the furnisher is unreliable. *Sarver*, 390 F.3d at 972 ("In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily.").

- 30 -

The Dulworths rely only on their own disputes and the dispute of the plaintiff in the *Myers* case for their argument that Ally was an unreliable furnisher. But issues with the Dulworths' Ally Loan, a potential inaccuracy with the plaintiff's loan in *Myers*, and one discrepancy out of 300 consumers in the *Myers* sample do not rise to the level of putting Experian on notice of a problem. Further, even if the 300-account sample in *Myers* did not include many, or any, scenarios where the consumer had entered into a reaffirmation agreement, the Court does not find this significant. The Dulworths still have not shown that there was an issue with Ally's reporting of accounts – reaffirmation agreement-related or otherwise – that should have alerted Equifax to an issue.

Further, the Dulworths do not suggest what more Equifax could have done. Even if it had examined the Bankruptcy Court docket upon receiving reinvestigation information from Ally, the docket would not have reflected whether the Reaffirmation Agreement was properly signed by the Dulworths and Ally, whether the Dulworths complied with the terms of the Reaffirmation Agreement up to that point such that it continued to be effective, or whether the Dulworths had rescinded the Reaffirmation Agreement after it was filed.

In sum, no reasonable jury could conclude that Equifax failed to follow reasonable procedures to assure maximum possible accuracy of its reporting of the Ally Loan. Accordingly, the Court **GRANTS** the CRAs' Joint Motion for Summary Judgment, [Filing No. 180], on the Dulworths' claims that Equifax negligently and willfully violated § 1681e(b).

### 3. *Whether Equifax Violated § 1681i*

In support of its Joint Motion for Summary Judgment, Equifax argues that it did not violate § 1681i because the Dulworths' disputes involved a legal issue and "no amount of investigation by Equifax would have uncovered an inaccuracy in their credit reports." [Filing No. 186 at 25.] It asserts that after receiving the Dulworths' disputes – which included a copy of the Reaffirmation

Agreement – it did not know "whether the reaffirmation contract was enforceable, what happened between 2018 and 2021, and how the account should report as of September 2021 as neither the documents nor the bankruptcy docket would have provided [it] with a current status, history, and payment information," so it reinvestigated the disputes with Ally.  [Filing No. 186 at 25-26.]

The Dulworths argue in their response that Equifax simply took Ally's word over theirs regarding the validity of the Reaffirmation Agreement, and that a fact issue exists regarding the reasonableness of that conduct.  [Filing No. 196 at 29.]  They contend that courts have not found that the ACDV process is reasonable as a matter of law and that Equifax was on notice that Ally was an unreliable furnisher.  [Filing No. 196 at 30.]  The Dulworths assert that Equifax engaged in "parroting" by simply sending an ACDV to Ally and waiting for its response.  [Filing No. 196 at 33.]  They argue further that "Equifax has not moved for summary judgment on the willfulness element of [their] Section 1681i claim."  [Filing No. 196 at 44.]

In its reply, Equifax argues that "courts have held that the use of the ACDV process is sufficient when a plaintiff cannot show what a more robust reinvestigation would result in," and that "no amount of reinvestigation by Equifax would have allowed it to determine whether the reaffirmation agreement was legally valid or not because Equifax is not equipped to determine the validity of a debt and neither is it required to do so under the FCRA."  [Filing No. 199 at 8.]  Equifax argues that it did move for summary judgment on the Dulworths' claim that it willfully violated § 1681i, pointing to "an entire section dedicated to [the Dulworths'] failure to establish that Equifax violated Section 1681i of the FCRA."  [Filing No. 199 (citing Filing No. 186 at 15; Filing No. 186 at 25-26; Filing No. 185 at 29-33).]

As the Seventh Circuit has explained, "[w]hen a consumer contends that his [or her] credit report is inaccurate or incomplete, he [or she] can dispute his [or her] report with the CRA that

prepared it.  The CRA is then obligated to conduct a 'reasonable reinvestigation to determine whether the disputed information is inaccurate,' considering '[a]ll relevant information submitted by the consumer.'"  *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023) (citations omitted, quoting 15 U.S.C. § 1681i).  The CRA  must then transmit to the furnisher "all relevant information regarding the dispute" that it receives from the consumer.  15 U.S.C. § 1681i(a)(2)(A).  Negligent violations of § 1681i are actionable under § 1681o and willful violations are actionable under § 1681n.  *Chaitoff*, 79 F.4th at 809.   "[R]easonable procedures under § 1681e(b) are not proof of a reasonable reinvestigation under § 1681i(b)."  *Id.* at 817.

Here, Equifax received disputes from the Dulworths in which they stated that the Ally Loan should not be reporting as closed or included in bankruptcy, but rather that it was an open account that was reaffirmed in bankruptcy and had a positive payment history.  [*See* Filing No. 181-10; Filing No. 181-11; Filing No. 181-12; Filing No. 182-2.]  Equifax then sent ACDVs to Ally to reinvestigate the status of the Ally Loan.[4]  [*See* Filing No. 182-4.]  Further, and tellingly, the Dulworths do not suggest what more Equifax could have done.  Although Equifax had a copy of the Reaffirmation Agreement, the mere existence of the Agreement did not necessarily mean that it was valid.  Its validity turned on whether it was validly signed, whether the Dulworths had continued with timely payments, and whether the Dulworths had repudiated the Agreement (as they were permitted to do pursuant to bankruptcy laws).  As discussed above, these are legal determinations that Equifax was not obligated to make under the FCRA, rather than factual determinations that were readily made from looking at the bankruptcy docket.  *Chaitoff*, 79 F.4th

---

[4] The Court acknowledges that Equifax did not contact Ally via ACDV in connection with Brianna Dulworth's September 2021 Dispute, but an Equifax agent did address the Ally Loan and confirmed that it was reporting as included in bankruptcy.  [Filing No. 183-1 at 22-23.]  And the Dulworths do not discuss in their response brief Equifax's failure to use the ACDV process in connection with Brianna Dulworth's September 2021 Dispute in any event.

at 814 ("CRAs are not well suited to adjudicate legal defenses to a debt, so they are not liable for reporting information that may be legally inaccurate."). Additionally, and also as discussed above, the Dulworths have not presented competent evidence from which a reasonable jury could conclude that Equifax should have known that Ally was an unreliable furnisher.

Further, while a CRA's duty to reinvestigate also depends on "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer," *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994), the appropriate answer was not – as the Dulworths suggest – for Equifax to simply delete the Ally Loan tradeline because doing so would not cost anything, [Filing No. 196 at 33]. Equifax reinvestigated the tradeline by submitting an ACDV to Ally and considering Ally's response. While the ACDV process is not *per se* reasonable in every circumstance, the circumstances here did not require Equifax to do more. The Dulworths premise their argument on the notion that Equifax had a duty to "figure out whether the reaffirmation agreement [was] valid," [Filing No. 196 at 21], but Equifax has no such duty under the FCRA when "figuring it out" would entail making legal determinations, as it would have here. *See Denan*, 959 F.3d at 295.

Finally, the Court rejects the Dulworths' argument that Equifax did not move for summary judgment on their claim that Equifax willfully violated § 1681i. Although Equifax focuses its motion on arguments that it did not violate § 1681i at all, [*see, e.g.*, Filing No. 186 at 25-26], it also states that it "move[s] for summary judgment on Plaintiffs' claims that [it] allegedly violated § 1681e(b) *and willfully violated § 1681e(b) and § 1681i* of the FCRA." [Filing No. 186 at 15 (emphasis added).] And, in any event, the Court has found that no reasonable jury could conclude that Equifax violated § 1681i in the first instance, so it would be impossible to find that Equifax

violated that provision willfully.  *See Safeco*, 551 U.S. at 60 (whether FCRA was violated in the first instance was "antecedent question" to whether violation was reckless).

In sum, no reasonable jury could conclude that Equifax failed to reasonably reinvestigate the Dulworths' disputes in violation of § 1681i.  Accordingly, the Court **GRANTS** the CRAs' Joint Motion for Summary Judgment as to the Dulworths' claims against Equifax for both negligent and willful violations of § 1681i.

### III.
#### CONCLUSION

"In a nation of 330 million people, billions of pieces of credit information are generated each year.  Mistakes in compiling and reporting that information are inevitable." *Chaitoff*, 79 F.4th at 808.  Moreover, the FCRA is not a strict liability statute.  *Walton*, 761 Fed. App'x at 592.  The Dulworths have not presented evidence from which a reasonable jury could conclude that Experian provided a credit report containing the inaccurate reporting of the Ally Loan to a third party, that the Dulworths suffered actual damages at the hands of Equifax, or that Equifax failed to satisfy its obligations to follow reasonable procedures to assure maximum possible accuracy of its reporting of the Ally Loan or to reasonably reinvestigate the Dulworths' disputes regarding the reporting of the Ally Loan.  For the foregoing reasons, the Court:

- **DENIES** the Dulworths' Motion to Exclude the Declaration of Karen Cobb, [198];

- **DISMISSES** the Dulworths' claims against Experian **WITHOUT PREJUDICE** for lack of jurisdiction;

- **DENIES AS MOOT** the CRAs' Joint Motion for Summary Judgment, [180], as to the Dulworths' claims against Experian; and

- **GRANTS** the CRAs' Joint Motion for Summary Judgment, [180], as to the Dulworths' claims against Equifax.

Final judgment shall enter accordingly.

- 35 -

Date: 5/22/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CRAIG DULWORTH and BRIANNA DULWORTH, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) 1:22-cv-00469-JMS-MJD |
| *vs.* | ) |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS INC. and | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | ) |
| | ) |
| *Defendants.* | ) |

## FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 58

For the reasons set forth in the Court's Order entered this day, the Court now enters **FINAL JUDGMENT** against Plaintiffs and in favor of Defendants. Plaintiffs shall take nothing by way of their Second Amended Complaint against Defendant Equifax Information Services, LLC and their claims against Experian Information Solutions Inc. are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

Date: 5/22/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk

BY: _____

Deputy Clerk, U.S. District Court

**Distribution via ECF only to all counsel of record**