No. 24-2066

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

―――――――――――

BRIANNA DULWORTH and CRAIG DULWORTH

*Plaintiffs-Appellants,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC. and

EQUIFAX INFORMATION SERVICES, LLC,

*Defendants-Appellants.*

―――――――――――

**Appeal from the United States District Court for the Southern District of Indiana, No. 1:22-cv-00469 The Honorable Jane Magnus-Stinson**

―――――――――――

## APPELLEE EQUIFAX INFORMATION SERVICES, LLC'S RESPONSE BRIEF

―――――――――――

SEYFARTH SHAW LLP
Eric F. Barton
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Email: ebarton@seyfarth.com

*Counsel for Defendant*
*Equifax Information Services LLC*

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2066

Short Caption: Craig Dulworth, et al. v. Experian Information Solutions, Inc., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  Equifax Information Services LLC ("EIS")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  Seyfarth Shaw LLP

(3)    If the party, amicus or intervenor is a corporation:

  i)    Identify all its parent corporations, if any; and

     Equifax Inc.

  ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     Equifax Inc. is a publicly traded company on the NYSE. No other entity owns 10% or more of EIS stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Eric F. Barton          Date: July 12, 2024

Attorney's Printed Name: Eric F. Barton

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ✔  No ☐

Address: 1075 Peachtree St. NE, Ste. 2500

    Atlanta, GA 30309

Phone Number: (404) 885-6772          Fax Number: (404) 724-1772

E-Mail Address: ebarton@seyfarth.com

rev. 12/19 AK

i

315056972v.1

# TABLE OF CONTENTS

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ...................................................................i

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF THE CASE ...................................................................2

SUMMARY OF ARGUMENT ...................................................................6

ARGUMENT ............................................................................................10

    I.     Standard of Review ...............................................................10

    II.    The District Court correctly found that the Dulworths' dispute regarding the payment history of the Ally Loan and status of the Reaffirmation Agreement with Ally required Equifax to apply law to the facts, thereby creating a legal—rather than factual—issue that Equifax was neither equipped nor required under the FCRA to resolve....................................................................11

    III.   The District Court correctly found that the evidence presented by the Dulworths neither showed that they suffered pecuniary harm due to Equifax's reporting of the Ally Loan rather than their poor credit, nor did it satisfy the high standard set by this Court..........................18

    IV.   The District Court correctly found that Equifax properly relied on Ally's reporting of the Ally Loan and conducted reinvestigations of Dulworths' disputes, rendering Equifax's procedures were reasonable under § 1681e(b) and § 1681i of the FCRA. ....................................23

    V.    The District Court correctly found that no reasonable jury could find that Equifax willfully violated the

FCRA because a reasonable jury could not find that
Equifax acted recklessly, knowingly or deliberately............27

CONCLUSION ...........................................................................29

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aiello v. Providian Fin. Corp.*,
 239 F.3d 876 (7th Cir. 2001)..............................................................22

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .....................10

*Bagby v. Experian Info. Sols., Inc.*,
 162 F. App'x 600 (7th Cir. 2006)...........................................20, 22, 23

*Batterman v. BR Carroll Glenridge*,
 LLC, 829 F. App'x 478 (11th Cir. 2020) ............................................12

*Boss v. Castro*,
 816 F.3d 910 (7th Cir. 2016)..............................................................10

*Carvalho v. Equifax Info. Servs., LLC*,
 629 F.3d 876 (9th Cir. 2010)...................................................7, 12, 15

*Chaitoff v. Experian Info. Sols.*,
 79 F.4th 800 (7th Cir. 2023) ..................................................... *passim*

*Childress v. Experian Info. Sols., Inc.*,
 790 F.3d 745 (7th Cir. 2015)..............................................................24

*Chuluunbat v. Experian Info. Sols., Inc.*,
 4 F.4th 562 (7th Cir. 2021) ..........................................................11, 12

*Crabill v. Trans Union, L.L.C.*,
 259 F.3d 662 (7th Cir. 2001)..............................................................23

*DeAndrade v. Trans Union LLC*,
 523 F.3d 61 (1st Cir. 2008) ...........................................................7, 12

*Denan v. Trans Union LLC*,
 959 F.3d 290 (7th Cir. 2020)..................................................... *passim*

315056972v.1

*Doe v. Cunningham*,
30 F.3d 879 (7th Cir. 1994) .......................................... 20, 26

*Farmer v. Brennan*,
511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) .................. 27

*George v. Chex Sys., Inc.*,
No. 16-2450-JTM, 2017 WL 119590 (D. Kan. Jan. 12,
2017) ....................................................................... 24

*In re Golladay*,
391 B.R. 417 (C.D. Ill. 2008) ............................................ 14

*Humphrey v. Trans Union*
LLC, 759 F. App'x 484 (7th Cir. 2019) ................................... 6

*L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*,
9 F.3d 561 (7th Cir. 1993) .............................................. 20

*Persinger v. Sw. Credit Sys., L.P.*,
20 F.4th 1184 (7th Cir. 2021) ........................................... 10

*Ruffin-Thompkins v. Experian Info. Solutions, Inc.*,
422 F.3d 603 (7th Cir. 2005) ...................................... *passim*

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ......... 9, 10, 27

*Sarver v. Experian Info. Solutions*,
390 F.3d 969 (7th Cir. 2004) ...................................... *passim*

*In re Turner*,
156 F.3d 713 (7th Cir. 1998) ................................... 12, 13, 14

*Walton v. BMO Harris Bank N.A.*,
*761 Fed. App'x 589* (7th Cir. 2019) ..................................... 23

*Wantz v. Experian Info. Solutions*,
386 F.3d 829 (7th Cir. 2004) ......................................... 8, 21

v

**Statutes**

11 U.S.C. § 524(c) ................................................................... 13

FCRA ........................................................................... *passim*

FCRA § 1681e ........................................................................ 25

FCRA § 1681e(b).......................................................... 1, 6, 23, 24

FCRA § 1681i.............................................................. 1, 6, 23, 28

**Other Authorities**

Consumer Fin. Prot. Bureau, Key Dimensions and Processes
    in the U.S. Credit Reporting System 12 (Dec. 2012),
    http://files.consumerfinance.gov/f/201212_cfpb_credit-
    reporting-white-paper.pdf .................................................. 18

Fed. R. Civ. P. 56 ................................................................. 10

Fed. R. Civ. P. 56(a)............................................................. 10

Lucy Lazarony, *What Happens to Your Credit Score After
    Bankruptcy?* (Mar. 10, 2020),
    http://www.credit.com/credit-scores/3-things-bankruptcy-
    does-to-your-credit-score/.................................................. 18

315056972v.1

## **STATEMENT OF JURISDICTION**

The Jurisdictional Statement of the Appellants is complete and correct.

## **STATEMENT OF THE ISSUES**

I.    Whether the District Court correctly found that the Dulworths' dispute regarding the payment history of the Ally Loan and status of the Reaffirmation Agreement with Ally required Equifax to apply law to the facts, thereby creating a legal—rather than factual—issue that Equifax was neither equipped nor required under the FCRA to resolve.

II.   Whether the District Court correctly found that the evidence presented by the Dulworths neither showed that they suffered pecuniary harm due to Equifax's reporting of the Ally Loan rather than their poor credit, nor did it satisfy the high standard set by this Court.

III.  Whether the District Court correctly found that Equifax properly relied on Ally's reporting of the Ally Loan and conducted reinvestigations of Dulworths' disputes, rendering Equifax's procedures were reasonable under § 1681e(b) and § 1681i of the FCRA.

1

IV.   Whether the District Court correctly found that no reasonable jury could find that Equifax willfully violated the FCRA because a reasonable jury could not find that Equifax acted recklessly, knowingly or deliberately.

## STATEMENT OF THE CASE

This case arises out of Plaintiffs-Appellants Brianna Dulworth's and Craig Dulworth's (the "Dulworths") attempts to challenge the legal validity of a written reaffirmation agreement with Ally Financial ("Ally").

On October 12,  2018, the Dulworths filed for a Chapter 7 Bankruptcy and received a discharge on January 15, 2019 (the "Bankruptcy"). *See* Appellees' Brief ("App. Br.") at 5; App. 87-202 (Bankruptcy Petition), App. 213 (Bankruptcy Discharge Order). During the pendency of the Bankruptcy, on December 20, 2018, the Dulworths filed a document indicating an intent to reaffirm an auto loan with Ally (the "Reaffirmation Agreement"). App. 203-212 (Reaffirmation Agreement). Nearly three years later, the Dulworths repeatedly, and unsuccessfully, tried to convince Ally that it was incorrectly informing Equifax that their auto loan was discharged in the Bankruptcy. *See* App. 221 (Brianna Dulworth Deposition) at p. 121:16-25; App. 222 (Brianna

Dulworth Deposition) at p. 122:1-16. Rather than returning to the bankruptcy court to resolve the validity of the Reaffirmation Agreement, which was clearly in dispute, the Dulworths hired counsel and started disputing the Ally Loan with Equifax before filing an FCRA lawsuit.

Equifax received a total of three (3) disputes from the Dulworths; Equifax received identical dispute letters from the Dulworths in September 2021 (the "September 2021 Disputes") and an additional dispute letter from Brianna Dulworth in December 2021 (the "December 2021 Dispute"). App. 352 (Equifax's Response to Interrogatory No. 2); App. 234-246 (Brianna Dulworth's September 2021 Dispute); App. 291-303 (Craig Dulworth's September 2021 Dispute); App. 259-273 (Brianna Dulworth's December 2021 Dispute). The September 2021 Disputes consisted of letters from the Dulworths stating that Equifax was incorrectly reporting the Ally account ("Ally Loan") as included in bankruptcy with no payment history because the account was reaffirmed in bankruptcy. App. 235-236; App. 292-293. The only other document included in the September 2021 Disputes was a copy of the Reaffirmation Agreement. App. 234-246; App. 259-273. Upon receipt of the September 2021 disputes, and after locating Plaintiffs' credit files, Equifax opened a

case for each Plaintiff to track the process of the reinvestigation. App. 353 (Equifax's Response to Interrogatory No. 3).

The Equifax agent who reviewed Plaintiff Brianna Dulworth's September 2021 dispute did not contact Ally via ACDV as required by Equifax's policies and procedures. App. 407 (Pamela Smith Deposition) at p. 33: 7-16. It appears from Equifax's records that the agent misinterpreted Plaintiff Brianna Dulworth's dispute. *Id.* Nevertheless, the agent addressed the Ally account and confirmed that it was reporting as included in bankruptcy. App. 407 (Pamela Smith Deposition) at p. 33:19-25; App 408 (Pamela Smith Deposition) at p. 34:1-6.

The Equifax agent who reviewed Plaintiff Craig Dulworth's September 2021 dispute notified Ally via the ACDV process and requested Ally investigate the account and verify whether the account was reaffirmed in bankruptcy. App. 409 (Pamela Smith Deposition) at p. 39:10-16; App. 382 (ACDV).

In the subsequent December 2021 Dispute, Brianna Dulworth stated that the Ally account continued to report inaccurately and re-submitted the Reaffirmation Agreement that was filed with the bankruptcy court. App. 259-273.

The Equifax agent who reviewed Brianna Dulworth's December 2021 Dispute notified Ally via the ACDV process and requested Ally investigate the account and verify whether the account was reaffirmed in bankruptcy. App. 387 (ACDV). Ally returned its investigation results advising that the account was accurately reporting as included in bankruptcy. *Id.* On December 30, 2021, Equifax informed Brianna Dulworth of the results of its investigation and verified that the account was correctly reporting as included in bankruptcy. App. 413 (Pamela Smith Deposition) at p. 72:14-19.

Equifax, who was was neither a party to the Bankruptcy or the Reaffirmation Agreement, was neither required nor equipped to legally determine in 2021 whether the 2018 Reaffirmation Agreement was ever rescinded, fully complied with, or still in effect. Even if Equifax were to research the Bankruptcy docket, Equifax would not be able to determine what the current account status, payment history, and payment information was. It was therefore necessary for Equifax to contact Ally for updated account information.

Even though the Dulworths attempt to use the FCRA to interject Equifax into the dispute over the validity of the Reaffirmation

Agreement, this Court has previously held that disputes that cannot be resolved without applying law to facts do not trigger a consumer reporting agency's ("CRA") duty to reinvestigate under the FCRA because no amount of reinvestigation by the CRA can uncover the inaccuracy. *Denan v. Trans Union LLC*, 959 F.3d 290, 297 (7th Cir. 2020).

Therefore, the District Court properly dismissed the Dulworths' claims against Equifax with prejudice because the Dulworths alleged a legal, rather than factual, inaccuracy, could not show that any damages were incurred because of Equifax's reporting of the Ally Loan, could not show that Equifax's procedures were unreasonable, and could not show that Equifax acted willfully.

## **SUMMARY OF ARGUMENT**

The Dulworths' FCRA claims against Equifax fail for a number of reasons. First and foremost, the Dulworths' claims fail in the absence of an allegation of factually inaccurate information which is a required element of a claim under §1681e(b) (reasonable procedures) and §1681i (reasonable reinvestigation). *Denan*, 959 F.3d at 296-297. The Dulworths do not argue that the FCRA requires Equifax to adjudicate a consumer's legal dispute regarding a debt. *See* App. Br. *in passim* and *Humphrey v.*

*Trans Union* LLC, 759 F. App'x 484, 488 (7th Cir. 2019) ("[T]he CRAs are not a tribunal sitting to resolve legal disputes."). Instead, the Dulworths incorrectly argue that Equifax did not have to apply law to the facts to resolve their disputes. App. Br. at pp. 25-29.

The District Court correctly held that the Dulworths submitted a legal dispute to Equifax because in order to determine whether the Ally Loan was reporting accurately or not, Equifax would have to make the legal determination of whether the "Reaffirmation Agreement was properly signed by Dulworths and Ally, whether Dulworths complied with the terms of the Reaffirmation Agreement up to that point such that it continued to be effective, or whether the Dulworths had rescinded the Reaffirmation Agreement after it was filed." App. 31. These are questions that a CRA like Equifax is not required to adjudicate under the FCRA. *Denan*, 959 F.3d at 296 ("we join the First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt 'is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA.'" (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) and *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008)). Furthermore, no amount of

additional reinvestigation by Equifax, not even a detailed review of the Bankruptcy docket, would have helped Equifax obtain the payment history and updated account information related to the Ally Loan.

Second, the Dulworths' claim fails because they cannot show that their damages were linked to Equifax's reporting of the Ally Loan. *See Sarver v. Experian Info. Solutions,* 390 F.3d 969, 971 (7th Cir. 2004) (a consumer must show that she "suffered damages as a result of the inaccurate information") *; see also Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004) ("It is the plaintiff's burden to show that she is entitled to damages."). The Dulworths have not provided any evidence to show that Equifax's reporting of the Ally Loan, rather than their poor credit caused by the Bankruptcy, caused any credit denials. *See* App. 74-75 (Denial Dated July 17, 2021); App. 79-80 (Denial Dated July 24, 2021) (citing the Bankruptcy). Additionally, the Dulworths have not provided sufficient evidence to satisfy this Court's high threshold for emotional distress damages. *See Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, *609 (7th Cir. 2005) (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004)) (this Court maintains "a strict

standard for a finding of emotional damage," which is easily manufacturable.)

Third, the Dulworths' claim fails because they cannot show that Equifax's procedures were unreasonable. This Court has held that CRAs can rely on the information they receive from furnishers, especially when they have no reason to believe that the furnisher is unreliable. *Sarver*, 390 F.3d at 972 ("a mistake does not render the procedures unreasonable"). Once Equifax was placed on notice of a potential inaccuracy in September 2021, it reviewed the disputed information and contacted Ally to verify the information. App. 234-246; App. 291- 303; App. 382. Since the Dulworths submitted a legal dispute, however, no amount of reinvestigation would have allowed Equifax to determine the accuracy of the Ally Loan.

Finally, the Dulworths' claim for a willful violation of the FCRA fails because they cannot show that Equifax acted reckless and in conscious disregard of its duties under the FCRA. S*afeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). The Dulworths have not shown that Equifax committed a "violation under a reasonable reading of the [FCRA's] terms," and that Equifax's erroneous

reading "[runs] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69; *See also Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021) (even a flawed procedure does not automatically mean a violation occurred with actual knowledge or recklessness.)

## ARGUMENT

### I.    Standard of Review

The standard of review on appeal from a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is *de novo*. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Since summary judgment may only be denied when there is a "genuine dispute" as to a "material fact," the Court is not tasked with determining whether there is *any* evidence in the record to support the non-movant, but rather "whether reasonable jurors could find by a preponderance of the evidence that the [nonmovant] is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

315056972v.1

II.   **The District Court correctly found that the Dulworths' dispute regarding the payment history of the Ally Loan and status of the Reaffirmation Agreement with Ally required Equifax to apply law to the facts, thereby creating a <u>legal</u>—rather than factual—issue that Equifax was neither equipped nor required under the FCRA to resolve.**

This Court has unequivocally recognized that a legal inaccuracy is not actionable under the FCRA against a CRA. In *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020), and again in *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 565 (7th Cir. 2021), this Court distinguished "factual inaccuracies," which can support a claim under the FCRA, from "legal inaccuracies," which cannot. Factual inaccuracies, according to this Court, are things like the amount a consumer owes, when a debt was incurred, and the date a consumer made a payment. *Chuluunbat*, 4 F.4th at 568. These "do not require the consumer reporting agencies to make any legal determinations about the facts or legal judgments." *Id.* "Legal inaccuracies," by contrast, present issues that do require such determinations and judgments. *Id.*

In distinguishing between factual and legal inaccuracies, "the central question is whether the alleged inaccuracy turns on applying law to facts or simply examining the facts alone." *Chuluunbat*, 4 F.4th at 567.

11

CRAs are competent to do the latter but not the former; "they do not reach legal conclusions like courts and other tribunals do." *Id.*; *see also DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (contrasting factual inaccuracies, which can be "uncovered by a reasonable reinvestigation," with legal issues that CRAs are "neither qualified nor obligated to resolve under the FCRA"). "Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). Such disputes "require[ ] resolution by a court of law, not a credit reporting agency." *Batterman v. BR Carroll Glenridge*, LLC, 829 F. App'x 478, 481 (11th Cir. 2020).

The Dulworths' claims involve purely legal issues related to the validity of their Reaffirmation Agreement with Ally that are not suitable for resolution by Equifax. A reaffirmation agreement is a contract between a debtor and a creditor. A clear example of the complexity and legal implications of a reaffirmation agreement is provided in *In re Turner*, 156 F.3d 713 (7th Cir. 1998), where the Seventh Circuit held that

11 U.S.C. § 524(c) "imposes a variety of conditions upon reaffirmation" designed to protect the debtor; for example, "the agreement must be filed with the court;" the agreement must contain a "clear and conspicuous statement" advising the debtor about rescinding the agreement within sixty days after filing; the filed copy "must include a declaration by counsel" if an attorney represented the debtor; and if the debtor was not represented by counsel in the negotiation of the agreement, "the court must hold a hearing" to advise the debtor the "legal effect and consequences of both the agreement and any default thereunder." *In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998).

In the present case, the only parties to the Reaffirmation Agreement are Dulworths and Ally, and the record evidence shows that they disagreed as to whether the debt was discharged. *See* App. 88 (the Bankruptcy) ; App. 204 (Reaffirmation Agreement); App. 234 (Brianna Dulworth's September 2021 Dispute); App. 259 (Brianna Dulworth's December 2021 Dispute); App. 291 (Craig Dulworth's September 2021 Dispute); App. 383 (ACDV); App. 388 (ACDV). While Dulworhts claimed that the debt was not discharged,  Ally verified the debt as reporting accurately. App. 383 (ACDV); App. 388 (ACDV).

As evidenced in *Turner*, determining whether there is an enforceable contract between a furnisher and a consumer turns on complex questions of bankruptcy law that far "exceed[ ] the competencies of consumer reporting agencies." *Denan*, 959 F.3d at 295. A reaffirmation agreement is invalid unless it "strictly complies" with the requirements set forth in the Bankruptcy Code. *In re Golladay*, 391 B.R. 417, 421 (C.D. Ill. 2008). Evidence of the Reaffirmation Agreement being filed with the bankruptcy court was insufficient because at minimum, Equifax would have had to determine whether the agreement contained a "clear and conspicuous statement" advising Dulworths that they rescind within sixty days after filing, whether the agreement contained the required declaration by counsel, and if not represented by counsel, whether the Dulworths were properly informed of the legal implications of a reaffirmation agreement. *See In Re Turner* 156 F.3d at *718. As the District Court correctly pointed out, even a review of the Bankruptcy "docket would not have reflected whether the Reaffirmation Agreement was properly signed by Dulworths and Ally, whether Dulworths complied with the terms of the Reaffirmation Agreement up to that point such that

it continued to be effective, or whether the Dulworths had rescinded the Reaffirmation Agreement after it was filed." App. 31.

The Dulworths could have gone to the bankruptcy court and obtained an order clearly resolving their dispute with Ally. If they had done so, the enforceability of Dulworths' reaffirmation agreement would have likely become a question of fact Equifax would be able to ascertain. *See Denan*, 959 F.3d at 296. Instead, Dulworths expected Equifax to determine the validity of an ambiguous contract entered into in December 2018, nearly three years later, in September 2021. App. 204 (Reaffirmation Agreement); App. 234 (Brianna Dulworth's September 2021 Dispute); App. 259 (Brianna Dulworth's December 2021 Dispute); App. 291(Craig Dulworth's September 2021 Dispute); App. 383 (ACDV); App. 388 (ACDV). The FCRA, however, imposes no such duties on Equifax. *See Denan*, 959 F.3d at 295 (holding the FCRA does not require CRAs to determine the validity of legal agreements that "[o]nly a court can fully and finally resolve" and rejecting "attempt[s] to graft responsibilities of data furnishers and tribunals onto . . . consumer reporting agenc[ies]"); *Carvalho*, 629 F.3d at 892 ("We agree that

reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts.").

Dulworths primarily rely on *Chaitoff v. Experian Info. Sols.*, 79 F.4th 800 (7th Cir. 2023) to argue that the information they disputed was objectively verifiable by Equifax and therefore a factual, rather than legal, issue. App. Br. at pp. 29-34. The present case is, however, clearly distinguishable from *Chaitoff*. Specifically, the plaintiff in *Chaitoff* disputed the payment history on his Ocwen loan with Experian. *Chaitoff* 79 F.4th at *809. Plaintiff Chaitoff's dispute to Experian included a letter from Ocwen that "stated that [Chaitoff's] trial payments were made on time and were due on the first of May, June, and July 2017." *Id* at *818. During its reinvestigations, Experian received an ACDV response from Ocwen indicating that plaintiff Chaitoff was "six-months delinquent in each of those months." *Id.* This Court, therefore, held that Experian could have cross-referenced the letter and the ACDV response and requested that Ocwen explain the mismatch. *Id.*

The most striking difference between *Chaitoff* and the present case is that plaintiff Chaitoff provided account statements containing payment history of the Ocwen account that Experian could have

16

reviewed; the Dulworths did not provide *any* information or documents regarding their payment history and merely expected Equifax to unilaterally ascertain their payment history with Ally after Ally verified that there is none. *See* App. 234-246; App. 291- 303; App. 259-273; App. 382; App. 387. Another noticeable difference is that the plaintiff in *Chaitoff* entered into a Trial Period Plan in April 2017 and the payment history at dispute was for the months of May, June, and July 2017. *Chaitoff* 79 F.4th at. *809. Dulworths, however, entered into the Reaffirmation Agreement in 2018 and disputed the payment history and status of the Ally Loan with Equifax in September 2023. App. 234-246; App. 291- 303; App. 259-273. The Dulworths cannot explain how Equifax could have objectively verified the status of a two-and-a-half-year-old contract and its implications on the account's status and payment history when the furnisher repeatedly verified the reporting. The Ally Loan was simply not objectively verifiable and unquestionably a legal issue that Dulworths expected Equifax to resolve.

315056972v.1

**III.**    **The District Court correctly found that the evidence presented by the Dulworths neither showed that they suffered pecuniary harm due to Equifax's reporting of the Ally Loan rather than their poor credit, nor did it satisfy the high standard set by this Court.**

The Dulworths have not presented any evidence that Equifax's reporting of the Ally Loan as discharged, rather than their poor credit and recent bankruptcy, caused them credit harm. This Court has held that consumers "must show must show that [they] 'suffered damages as a result of the inaccurate information.'" *Ruffin-Thompkins*, 422 F.3d 603, 608 (7th Cir. 2005) (quoting *Sarver*, 390 F.3d at 971). As the Dulworths recognized during their depositions, the Bankruptcy "negatively affected" their credit and caused credit denials. App. 244 (Brianna Dulworth Deposition) at 132:12-14; App. 231 (Craig Dulworth Deposition) p. 136:4-5 ("[t]he aggravation was due to not being able to get approved.") *See* Lucy Lazarony*, What Happens to Your Credit Score After Bankruptcy?*, CREDIT.COM (Mar. 10, 2020), http://www.credit.com/credit-scores/3-things-bankruptcy-does-to-your-credit-score/ ("After bankruptcy, your credit score can plummet. . . . Bankruptcy will have a devastating impact on your credit health."); Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System 12 (Dec. 2012),

http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf (showing 250 point drop in credit score due to filing bankruptcy).

Tellingly, not one of the eleven credit denials produced by Dulworths referenced the Ally Loan and the only two that were based on reports prepared by Equifax provide "Bankruptcy" and "[i]nsufficient credit after Bankruptcy" as reasons for the denials. App. 74-86 (Credit Denials); App. 74-75 (Denial Dated July 17, 2021); App. 79-80 (Denial Dated July 24, 2021). Dulworths therefore have no evidence of any financial harm caused by Equifax's reporting of the Ally Loan.

Contrary to Dulworths' attempts to create a fact issue as to damages by arguing that the District Court should have searched the record to find evidence of pecuniary harm, the District Court was not required scour the record to find evidence of damages. App. Br. at p. 25 ("several types of damages…were alleged in Plaintiffs' Second Amended Complaint.") Alleging pecuniary harm in a complaint without proof thereof is not evidence of damages and the District Court correctly recognized the same. This Court rejected this strategy in *Ruffin-Thompkins*, where the plaintiff pointed to an interrogatory answer on

appeal to note that "she suffered from hypertension" because her blood pressure was "190 over 2010 to which plaintiff was told she was stroke level." *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, *609 (7th Cir. 2005). This Court held that the plaintiff in *Ruffin-Thompkins* made no mention of her hypertension in response to the defendant's motion for summary judgment and while the interrogatory was included in the record and attached as an exhibit to the dispositive motion, the plaintiff "had the burden to point to this information to show that a genuine issue of fact existed; the district court need not scour the record to find such evidence." *Ruffin-Thompkins* 422 F.3d at *610 (citing *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 567 (7th Cir. 1993))(internal citations omitted). "The appellate stage is too late to specify portions of the record which may create an issue of material fact." *Id.* (*citing Doe v. Cunningham*, 30 F.3d 879, 885 (7th Cir. 1994) (citation omitted)). Therefore even if the District Court record contained other evidence of pecuniary harm to support the allegations of their complaint—which it does not—it would be too late for Dulworths to point to it. *See Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006) (damages are not presumed under the FCRA and consumers

20

"must affirmatively establish that [they] are entitled to damages." (citing *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004)).

Without proof of pecuniary harm, the Dulworths' only other damages are those associated with emotional distress, which also fail. In *Ruffin-Thompkins*, this Court reminded the parties that the law in the Seventh Circuit is unique because this Court "has maintained a strict standard for a finding of emotional damages because they are so easy to manufacture. *Ruffin-Thompkins* , at *609 (*quoting* Sarver, 390 F.3d at 971). This Court requires that "when the injured party's own testimony is the only proof of emotional damages, she must explain the circumstances of her injury in reasonable detail; she cannot rely on mere conclusory statements." *Id.* (internal citations omitted). Tellingly, this Court has recognized that plaintiffs in FCRA cases allude to similar emotional injuries, and therefore, each plaintiff must describe *her* injury with sufficient reasonable detail. *Id. at* *610.

The District Court correctly held that Dulworths' emotional claims are linked to the filing of the Bankruptcy or "their failed efforts to get Ally to change how it was reporting the Ally Loan to the CRAs—and not the action of the CRAs." App. 21; *see also* App. 227 (Brianna Dulworth

Deposition) at p. 242 (emotional distress symptoms such as depression, high blood pressure, stress and anxiety started "a few years ago" since the Dulworths moved in with their son); App. 231 (Craig Dulworth Deposition) at p. 136:4-7 (aggravation was caused by not being able to get credit and "trying to fix the problem by applying for credit.) The deposition testimony referenced by Dulworths to create a fact issue as to damages does nothing more than corroborate the lack of any emotional distress damages caused by Equifax's actions as a closer look at the record reveals that the testimony relates to the impact of the Bankruptcy on the Dulworths' lives. *See Id.*

In *Ruffin-Thompkins*, the plaintiff argued that Experian's actions were "inherently degrading or humiliating" and it is therefore reasonable "to infer that a person would suffer humiliation or distress from that action." *Id.* This Court, however, cited to its decision in *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001) to hold that the violation of the FCRA "is not inherently degrading or humiliating" because this circuit's threshold for damages is high. *Ruffin-Thompkins* 422 F.3d at *610 (citing *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001))(internal quotations omitted); *see also Bagby v. Experian Info.*

*Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006) (plaintiff alleging that she was stressed, had tension headaches, and clashed with her fiancé over credit issues was "at most, self-serving and conclusory statements about [plaintiff's] emotional distress." *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006). The District Court therefore correctly held that Dulworths' failure to establish causation between Equifax's alleged violation of the FCRA and the loss of credit, or some other harm, is fatal to their claims. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001).

IV.  **The District Court correctly found that Equifax properly relied on Ally's reporting of the Ally Loan and conducted reinvestigations of Dulworths' disputes, rendering Equifax's procedures were reasonable under § 1681e(b) and § 1681i of the FCRA.**

The District Court correctly noted that the FCRA is not a strict liability statute and "does not require unfailing accuracy from consumer reporting agencies. App. 24 citing *Walton v. BMO Harris Bank N.A., 761 Fed. App'x 589, 592* (7th Cir. 2019); *Denan* 959 F.3d at 294. This Court has recognized that CRAs may rely on information obtained from a furnisher to assure maximum possible accuracy of their reporting of a consumer's information, especially when the CRA has no reason to

believe that the furnisher is unreliable. *Sarver*, 390 F.3d at 972. The Dulworths insist that Equifax should not have relied on the information furnished by Ally but have not shown why Ally was an unreliable furnisher or why Equifax should not have relied on Ally "given the enormous volume of information [Equifax] processes daily." *Id.*

Dulworths suggest that Equifax should have monitored the Bankruptcy docket. App. Br., at p. 36. Dulworths' attempt to create a fact issue as to Equifax's procedures, however, fails. Not only does the FCRA not require Equifax to monitor bankruptcy dockets, review the proceedings, and interpret their meaning, but Equifax would not have found the payment history and account status for the Ally Loan following the January 2019 discharge of the Bankruptcy on the docket either. *See, e.g., Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (holding that there is no duty under § 1681e(b) to pull and review bankruptcy dismissal where that "would [ ] require a live human being, with at least a little legal training, to review every bankruptcy dismissal and classify it . . . ."); *George v. Chex Sys., Inc.*, No. 16-2450-JTM, 2017 WL 119590, at *3 (D. Kan. Jan. 12, 2017) (granting a motion to dismiss

because "the 'maximum possible accuracy' standard of § 1681e does not require [the CRA] to check PACER prior to preparing a report").

Furthermore, Equifax's pre-dispute post-bankruptcy reporting of the Ally Loan was not caused by unreasonable procedures because Equifax had no notice of the alleged inaccuracy, and the Dulworths have not claimed otherwise. *See Chaitoff* 79 F.4th at 817 ("Furnishers bear responsibility for accurately reporting information to the CRAs in the first instant" and the CRA's procedures are not unreasonable unless the agency had reason to believe the furnisher's information is unreliable or has notice of the alleged inaccuracy.)

Dulworths have also not shown how Equifax's reinvestigations of their disputes were unreasonable. Setting aside the unquestionable fact that the Dulworths' disputes to Equifax involved a legal issue that Equifax was not required to resolve under the FCRA—discussed *Supra*— Equifax could not have possibly determined how the Ally Loan should report. After repeated efforts to dispute the Ally Loan directly with Ally— "[u]p to seven [times]"—the Dulworths disputed the status (included in bankruptcy) and lack of payment history of their Ally Loan with Equifax. App. 221 (Brianna Dulworth Deposition) at p. 121:20-22; App. 234-246

25

(Brianna Dulworth's September 2021 Dispute); App. 291- 303 (Craig Dulworth's September 2021 Dispute); App. 259-273 (Brianna Dulworth's December 2021 Dispute). Equifax, not a party to the Bankruptcy or the Loan between Ally and Dulworths, only possessed a copy of the Reaffirmation Agreement and data reported by Ally. App. 234-246 (Brianna Dulworth's September 2021 Dispute); App. 291- 303 (Craig Dulworth's September 2021 Dispute); App. 259-273 (Brianna Dulworth's December 2021 Dispute). After reviewing the disputes, Equifax addressed each dispute and contacted Ally to verify the payment history and whether the loan was included in the Bankruptcy or not.[1] App. 353 (Equifax's Response to Interrogatory No. 3); App. 382 (ACDV); App. 387 (ACDV). No amount of reinvestigation could have enabled Equifax to obtain the payment history and current status of Dulworths' account with Ally when Ally insisted that the account did not have a payment history and was included in the Bankruptcy while Dulworths claimed

---

[1] Brianna Dulworth's September 2021 Dispute reinvestigations did not involve transmission of an ACDV to Ally, as required by Equifax's policies and procedures. App. 407 (Pamela Smith Deposition) at p. 33: 7-16. The lack of ACDV was caused by a misinterpretation of the dispute by the agent handling the same; the agent still reviewed the dispute, addressed the Ally Loan and confirmed that it was reporting as included in bankruptcy. App. 407 (Pamela Smith Deposition) at p. 33:19-25; App 408 (Pamela Smith Deposition) at p. 34:1-6. Notably, as the District Court properly pointed out, the Dulworths did not discuss the lack of ACDV in connection with Brianna Dulworth's September 2021 Dispute and can therefore not raise this argument on appeal. App. 11; *Doe v. Cunningham*, 30 F.3d 879, 885 (7th Cir. 1994).

315056972v.1

otherwise—also indicating that the parties to the Reaffirmation Agreement dispute its validity. As the District Court correctly pointed out, the Dulworths did not suggest what else Equifax could have done to obtain the disputed information and even the "docket would not have reflected whether the Reaffirmation Agreement was properly signed by Dulworths and Ally, whether Dulworths complied with the terms of the Reaffirmation Agreement up to that point such that it continued to be effective, or whether the Dulworths had rescinded the Reaffirmation Agreement after it was filed." App. 31; *See Chaitoff* 79 F.4th at *819 ("[t]o be clear, a CRA's reinvestigation does not have to fix the mistake to preclude liability—it need only be reasonable").

## V. The District Court correctly found that no reasonable jury could find that Equifax willfully violated the FCRA because a reasonable jury could not find that Equifax acted recklessly, knowingly or deliberately.

A willful violation is one committed in "reckless disregard of [its] statutory duty." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). "Reckless conduct is that which creates a risk substantially greater than that necessary to render the conduct negligent." *Chaitoff* 79 F.4th at *819 (referring to *Farmer v. Brennan*,

511 U.S. 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (discussing "excessive," "significant," [**31] "substantial," and "intolerable" risks).

The District Court properly referenced this Court's holding in *Chaitoff*, reminding the parties that "[i]n a nation of 330 million people, billions of pieces of credit information are generated each year. Mistakes in compiling and reporting that information are inevitable." App. 35 citing *Chaitoff*, 79 F. 4th at 808. That is why the FCRA is not a strict liability statute and requires instead procedures that are reasonable.

Dulworths misleadingly suggest that Equifax did not reinvestigate their disputes and therefore willfully violated § 1681i. App. Br. at p. 40 ("CRA Defendants' failure to make any response or reinvestigation of several of Plaintiff's disputes.") The record, however, shows that Equifax reinvestigated the Disputes received from Dulworths and determined, based on the information it possessed—or could possess—that the Ally Loan was reporting accurately. App. 353 (Equifax's Response to Interrogatory No. 3); App. 382 (ACDV); App. 387 (ACDV). There is no evidence that Equifax ignored the disputes, was indifferent to the harms Dulworths allege, and failed to address the Ally Loan during its reinvestigations. *See Chaitoff* 79 F.4th at *819 (Experian "followed its

normal procedures by transmitting" the consumer's dispute to the furnisher' "it did not wholly ignore the dispute. Nor is the discrepancy between [the furnisher's] response and the documents [the consumer] provided with his dispute letter so obvious that Experian's failure to pick up on it constitutes a gross deviation from what might the reasonable."). The District Court therefore properly held that no reasonably jury could find that Equifax willfully violated the FCRA.

## CONCLUSION

For all the aforementioned reasons, this Court should affirm the District Court's judgment dismissing Dulworths' Complaint against Equifax with prejudice.

Dated: December 20, 2024                    Respectfully submitted,

/s/ *Eric F. Barton*
Eric F. Barton
*Counsel of Record*
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-1500
Email: ebarton@seyfarth.com

*Counsel for Appellee Equifax*
*Information Services, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word-length limitation of Federal Rules of Appellate Procedure 27(d)(2)(A), because, as calculated by Microsoft Word 365, it contains 5,705 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as modified by Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Dated: December 20, 2024          Respectfully submitted,

/s/ *Eric F. Barton*

*Counsel for Appellee Equifax
Information Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2024, the foregoing document was filed with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 20, 2024                    Respectfully submitted,

/s/ *Eric F. Barton*

*Counsel for Appellee Equifax Information Services, LLC*

31