**No. 24-2066**

---

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

BRIANNA DULWORTH and CRAIG DULWORTH,

*Plaintiffs – Appellants,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC. and
EQUIFAX INFORMATION SERVICES, LLC,

*Defendants – Appellees.*

---

Appeal From The United Stated District Court
For The Southern District Of Indiana
Case No. 1:22-cv-00469
The Honorable Judge Jane Magnus-Stinson

---

**REPLY BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFFS-APPELLANTS BRIANNA & CRAIG DULWORTH**

---

Michael H. Rapp
Rapp Law Firm, LLC
1600 Genessee, Suite 435
Kansas City, Missouri 64102
E: mr@rapplawfirm.com

David A. Chami, 027585
Consumer Justice Law Firm PLC
8095 N. 85th Way
Scottsdale, AZ 85258
E: dchami@consumerjustice.com
*Attorneys for Appellants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................... iv

**INTRODUCTION** ............................................................................... 1

**ARGUMENT** ...................................................................................... 2

**I.    This Court can reverse the district court's ruling regarding standing because the district court disregarded allegations and evidence showing that Plaintiffs suffered several different kinds of cognizable injuries that are traceable to the CRA Defendants' violations of the FCRA.** ........................... 2

   A.   *A party cannot forfeit or waive the right to make an argument about standing by failing to make that argument in the district court.* ........................ 3

   B.   *Injuries that confer standing in the context of the FCRA* ........................... 6

   C.   *Plaintiffs have alleged and can prove that they suffered a reputational injury akin to defamation because the record shows that both Experian and Equifax published inaccurate reports about Plaintiffs to creditors who were capable of understanding the information in those reports.* .............................. 6

   D.   *Plaintiffs' reputational injuries are traceable to Experian's violations of the FCRA because the evidence shows that Experian published a consumer report about Plaintiffs after they submitted their initial dispute.* ..................... 11

   F.   *Plaintiffs have alleged and can prove facts that would permit a jury to infer that they suffered compensable emotional distress as a result of the CRA Defendants' violations of the FCRA.* .............................................. 17

**II.    Plaintiffs' post-bankruptcy payment history on the Ally Loan was a matter of historical, objectively verifiable fact, and the CRA Defendants could have reported it without making any legal determinations.** ................ 19

**III.    The district court erred by concluding that there were no material questions of fact regarding whether the CRA Defendants followed reasonable procedures because such questions cannot usually be resolved at the summary judgment stage.** ......................................................... 23

   A.   *The reasonableness of CRA procedures is generally a jury question.* ....... 24

B.  *There is record evidence to permit a reasonable jury to find that the CRA Defendants' procedures for their initial reporting were unreasonable because the CRAs ignored information that was inconsistent with Ally's assertions that the Ally Loan had been discharged in bankruptcy.* ...........................................24

C.  *Undisputed facts show that both of the CRA Defendants failed to investigate disputes submitted by Plaintiffs, which is necessarily an unreasonable procedure for the purpose of 15 U.S.C. § 1681i.* ......................27

**IV.    An FCRA defendant can be liable for a willful violation of the statute when it recklessly disregards its statutory duty. Because there is no dispute that both of the CRA Defendants failed to conduct investigations in response to Plaintiffs' disputes, the record here includes facts that would permit a jury to find that the CRA Defendants willfully violated the FCRA.** .............29

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32 & CR 32(c)** ...................................................................................................................31

**CERTIFICATE OF SERVICE** ..........................................................................32

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................3

*Biggs v. Village of Dupo,*
    892 F.2d 1298 (7th Cir. 1990)................................................18

*Bodenstab v. County of Cook,*
    569 F.3d 651 (7th Cir. 2009)..................................................4

*Bonte v. U.S. Bank,*
    624 F.3d 461 (7th Cir. 2010)..................................................4

*Chaitoff v. Experian Info. Sols.,*
    79 F.4th 800 (7th Cir. 2023) ................................................20

*Cortez v. Trans Union, LLC,*
    617 F.3d 688 (3d Cir. 2010)................................................13

*Denius v. Dunlap,*
    330 F.3d 919 (7th Cir. 2003)................................................19

*Ewing v. Med-1 Sols., LLC,*
    24 F.4th 1146 (7th Cir. 2022)................................................7

*Freedom v. Nicholson,*
    536 F.3d 730 (7th Cir. 2008)........................................ 3, 4, 5

*Freeman v. Ocwen Loan Servicing, LLC,*
    113 F.4th 701 (7th Cir. 2024)................................. 7, 8, 9, 10

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ................................................................3

*Hyde v. Hibernia Nat'l Bank in Jefferson Parish,*
    861 F.2d 446 (5th Cir. 1988)................................................25

*In re Resource Tech., Corp.,*
    No. 08 C 2425, 2008 U.S. Dist. LEXIS 91148 (N.D. Ill. Nov. 7, 2008)...............3

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,*
    529 F.3d 371 (7th Cir. 2008)..................................................5

*Kochert v. Greater Lafayette Health Serv., Inc.,*
    463 F.3d 710 (7th Cir. 2006)..................................................3

*Larson v. Ford Credit*,
  No. 06-CV-1811 (JMR/FLN), 2007 U.S. Dist. LEXIS 47181 (D. Minn. June 27, 2007) ..................................................................................................25

*Nekolny v. Painter*,
  653 F.2d 1164 (7th Cir. 1981) ...............................................................17

*Patterson v. Howe*,
  96 F.4th 992 (7th Cir. 2024) .................................................................18

*Pedro v. Equifax, Inc.*,
  868 F.3d 1275 (11th Cir. 2017) ............................................................13

*Pennell v. Global Tr. Mgmt.*,
  990 F.3d 1041 (7th Cir. 2021) ..............................................................18

*Persinger v. Southwest Credit Sys.*,
  20 F.4th 1184 (7th Cir. 2021) ..............................................................13

*Pierre v. Midland Credit Mgmt.*,
  29 F.4th 934 (7th Cir. 2022) ................................................................15

*Pinson v. JPMorgan Chase Bank*,
  942 F.3d 1200 (11th Cir. 2019) ............................................................13

*Pucillo v. National Credit Sys.*,
  66 F.4th 634 (7th Cir. 2023) ................................................................19

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ..............................................................................29

*Sarver v. Experian Info. Solutions, Inc.*,
  390 F.3d 969 (7th Cir. 2004)................................................................24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..............................................................................6

*Stevenson v. TRW Inc.*,
  987 F.2d 288 (5th Cir. 1993)................................................................14

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)...........................................................................6

*Tutwiler v. Kijakazi*,
  87 F.4th 853 (7th Cir. 2023) ...................................................................5

*United States v. Balistrieri*,
  981 F.2d 916 (7th Cir. 1992).................................................................17

*Virginia House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019)......................................................................................3, 4
*White v. Experian Info. Sols.*,
  No. SACV05-1070-DOC(MLGx), 2008 U.S. Dist. LEXIS 145130 (C.D. Cal.
  Aug. 19, 2008) ..............................................................................................22

**Statutes**

15 U.S.C. § 1640 ..............................................................................................4
15 U.S.C. § 1681 ..............................................................................................1
15 U.S.C. § 1681a(k) ......................................................................................13
15 U.S.C. § 1681e(b) ................................................................................. 24, 25
*15 U.S.C. § 1681i* .................................................................................... 27, 28

## INTRODUCTION

The undisputed record facts establish that, before, during, and for more than two years after their bankruptcy proceedings ended, Plaintiffs-Appellants Brianna and Craig Dulworth ("Plaintiffs") made timely monthly payments on an automobile loan with Ally Bank ("the Ally Loan"), which they ultimately paid in full, and that Defendant-Appellee Experian Information Solutions, Inc. ("Experian") and Defendant Equifax Information Services, LLC ("Equifax") omitted that payment history from Plaintiffs' consumer reports. There is also no dispute that Experian and Equifax (collectively, "the CRA Defendants") completely each failed at least once to conduct investigations when Plaintiffs disputed that omission. Such conduct violates the duties imposed upon consumer reporting agencies ("CRAs") by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

In their briefs to this Court, the CRA Defendants attempt to focus attention away from these undisputed facts and from the district court's erroneous analysis, which misunderstood the law, disregarded crucial record evidence, and drew inferences that were adverse to Plaintiffs. When the law and the record are correctly understood, the district court's errors are plain, and the CRA Defendants' attempts to redeem those errors fail. Plaintiffs ask this Court to reverse the district court's decision to grant summary judgment to the CRA Defendants and to remand this case for trial. In the alternative, if this Court concludes that Plaintiffs lack standing,

Plaintiff asks this Court to order that this case be remanded to the state court where it originated before Experian removed it to the district court.

## **ARGUMENT**

**I.    This Court can reverse the district court's ruling regarding standing because the district court disregarded allegations and evidence showing that Plaintiffs suffered several different kinds of cognizable injuries that are traceable to the CRA Defendants' violations of the FCRA.**

In their opening brief, Plaintiffs explained how the district court made numerous legal errors in its analysis of standing because it failed to recognize all of the injuries that are cognizable under the FCRA and because it disregarded allegations and evidence that would permit a jury to find that Plaintiffs had suffered such injuries. In response, Experian insists that Plaintiffs have forfeited the right to make any arguments regarding standing; and both Experian and Equifax contend that the district court's analysis of Plaintiffs' injuries was correct. But all of the CRA Defendants' arguments about Plaintiffs' injuries and standing fail because, as a matter of law, no party can ever waive or forfeit the right to make arguments about standing and because Plaintiffs' allegations and evidence identify numerous injuries that give them standing to challenge the CRA Defendants' compliance with the FCRA.

A.     *A party cannot forfeit or waive the right to make an argument about standing by failing to make that argument in the district court.*

This Court has held that "it is well settled that standing is not subject to waiver or forfeiture." *Freedom v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990)); *see also In re Resource Tech., Corp.*, No. 08 C 2425, 2008 U.S. Dist. LEXIS 91148, *10 (N.D. Ill. Nov. 7, 2008) ("A party cannot waive or forfeit an Article III standing argument by failing to make it in the trial court.") (citing *Kochert v. Greater Lafayette Health Serv., Inc.*, 463 F.3d 710, 714 (7th Cir. 2006)). The rule is derived from the foundational principle that "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc.*, 493 U.S. at 230-31 (quoting *Allen v. Wright*, 468 U.S. 737, 750, (1984) (alteration in original)). Because the issue of standing is so fundamental to determining whether a federal court may exercise its limited jurisdiction, "[a]s a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

The district court failed to apply all of the rules governing the analysis of standing. In particular, the district court erred when, as a part of its standing analysis, it concluded that Plaintiffs lacked standing to bring any of their FCRA claims and

that they "have waived any argument in opposition" to the CRA Defendants' arguments that Plaintiffs did not suffer any injuries. *See* Order, App. 21. The district court reached this conclusion by citing this Court's opinion in *Bonte v. U.S. Bank*, 624 F.3d 461 (7th Cir. 2010). *Id*. But the ruling in *Bonte* had nothing to do with standing; it pertained to the question whether the plaintiffs had waived the right to argue that they had adequately alleged facts showing their entitled to rescission under the Truth in Lending Act, 15 U.S.C. § 1640, et seq. *See Bonte*, 624 F.3d at 466. Because standing is such a fundamental issue, it is not subject to the ordinary rules regarding waiver or forfeiture, as the Supreme Court and this Court have held. *See, e.g., Virginia House of Delegates*, 139 S. Ct. at 1951; *Freedom*, 536 F.3d at 737.

In its appellate arguments, Experian makes the same mistake as the district court with respect to whether arguments about standing can be waived or forfeited. Experian cites several cases to support its contention that Plaintiffs waived the right to make arguments about standing, but it relies on cases finding waiver or forfeiture with respect to issues other than standing, and it does not cite cases to contradict the rule that no party can waive the right to argue standing issues. Experian's Brief at 17, 21-23. In *Bodenstab v. County of Cook*, 569 F.3d 651, 661 (7th Cir. 2009), the plaintiff alleged that the defendant terminated his employment because he exercised his First Amendment rights, and this Court concluded that the plaintiff had waived an argument regarding whether the defendant had a legitimate, non-discriminatory

reason for its termination decision. In *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384-85 (7th Cir. 2008), this Court held that a plaintiff waived the right to make arguments citing evidence for an alleged fraudulent conveyance involving the defendant by foregoing an opportunity to present that evidence to the district court. Similarly, in *Tutwiler v. Kijakazi*, 87 F.4th 853 (7th Cir. 2023), the plaintiff challenged the decision of an administrative law judge ("ALJ") that she failed to prove that she had physical conditions to qualify her as disabled under the Social Security Act. This Court held that the plaintiff forfeited the right to make appellate arguments about certain of her conditions because she had not cited those conditions to the ALJ. *Id*. at 856-57. Thus, the decision in *Tutweiler* had nothing to do with the forfeiture of standing arguments, and its forfeiture analysis was significantly influenced by considerations about appellate deference to the decisions of ALJs. *See id*.

Because standing issues implicate the limits of the federal judicial power under Article III, any party and the court itself can raise standing issues at any time, regardless of whether those issues have been raised before. *See Freedom*, 536 F.3d at 737. Consequently, because the district court based its decision on its conclusion that Plaintiffs could not prove that they had suffered any injuries that would give rise to Article III standing, Plaintiffs have not waived or forfeited the right to make arguments about any and all of their injuries that provide a basis for standing.

B.    *Injuries that confer standing in the context of the FCRA*

To establish Article III standing, an FCRA plaintiff must allege and prove a concrete injury. The Supreme Court has held that a concrete injury is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quotation marks omitted). An alleged injury is sufficiently concrete if it has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 341). Such traditionally recognized injuries include "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Ramirez*, 141 S. Ct. at 2204; *see also Spokeo*, 578 U.S. at 340-42.

C.    *Plaintiffs have alleged and can prove that they suffered a reputational injury akin to defamation because the record shows that both Experian and Equifax published inaccurate reports about Plaintiffs to creditors who were capable of understanding the information in those reports.*

Experian also argues that, as a matter of law, Plaintiffs cannot prove that they suffered a reputational injury akin to defamation because there is no evidence to show that Experian's inaccurate consumer reports about Plaintiffs were published to one or more parties who could understand the defamatory character of those reports. Experian's Brief at pp. 17-19. But this argument depends upon the facially absurd proposition that a creditor would not understand the significance of Experian's

6

omission of Plaintiffs' positive payment history on the Ally Loan. Because Experian's proposition represents an inference that would be either in Experian's favor or entirely impermissible, it cannot be a basis for affirming the district court's summary judgment decision.

Experian's argument on this point begins with two inapposite decisions from this Court: *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701 (7th Cir. 2024) and *Ewing v. Med-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022). Both of these cases establish the principle that, for the purposes of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), an allegedly defamatory consumer report is published only when it is disseminated to a party who could understand the defamatory character of the report. But neither of these cases support the proposition that Experian seeks to establish here: that an FCRA plaintiff cannot establish a reputational injury unless it presents evidence that a user of a consumer report read and relied upon the inaccurate information in the report. In fact, *Freeman* and *Ewing* actually undermine Experian's argument on this point.

In *Ewing,* the earlier of these decisions, the plaintiffs alleged that debt collectors violated the FDCPA and inflicted reputational injuries by reporting their debts to CRAs without also reporting that each plaintiff disputed the validity of their debt. *Ewing*, 24 F.4th at 1149-50. The debt collectors did not dispute that they omitted information about the plaintiffs' disputes when publishing their reports to

the CRAs, but they argued that the plaintiffs could make a complete showing of

publication only by coming forward with evidence that the CRAs repeated the debt

collectors' omissions in consumer reports that were issued to potential creditors or

other users. *Id*. at 1152-53. This Court flatly rejected this argument, concluding that

"the argument is a red herring. If the [plaintiffs'] harm is analogous to defamation,

then they must demonstrate that the [defendants] disseminated false information

about them to a third party. The [plaintiffs] do not have to make a further showing

that the third party also shared that false information." *Id*. at 1153. This Court also

concluded that publication of consumer credit information to an entity that assesses

creditworthiness constitutes publication to a party that would necessarily understand

the information. It explained:

> To determine whether there has been a publication here, then, we ask
> whether TransUnion understood the defamatory significance of the
> [defendants'] reports. We believe that it did. TransUnion included the
> debts in the [plaintiffs'] credit reports; TransUnion would have included
> the disputes too had the [defendants] communicated them. And the
> [plaintiffs] submitted evidence that TransUnion's assessment of their
> creditworthiness took into account whether a debt was disputed or not.
> That is enough to show that TransUnion understood the significance of
> the reports.

*Id*. at 1154.

This Court's decision in Freeman reaches a similar conclusion about what a

party must show to establish that defamatory information was published to a party

who could understand it. There, the plaintiff's claims arose from consumer reports about a mortgage loan. *Freeman*, 113 F.4th at 705. The plaintiff had been delinquent on the loan and then filed bankruptcy proceedings, during which she cured her defaults. *Id.* But the mortgage servicer erroneously reported that the loan was still in default, and the mortgage holder relied upon the servicer's erroneous reports to initiate foreclosure proceedings. *Id*. The plaintiff brought an FCRA claim against the mortgage servicer for inaccurately reporting about the status of the loan; and she brought an FCDPA claim against the mortgage holder for wrongfully attempting to collect the debt by foreclosing on the mortgage. *Id*.

For her FCRA claim, the plaintiff in *Freeman* alleged that the servicer breached the duties established for the furnishers of consumer information under 15 U.S.C. § 1681s-2(b), which requires that a furnisher conduct a reinvestigation when a consumer challenges the accuracy of the furnisher's reporting in a dispute submitted to a CRA. The plaintiff alleged that the servicer breached its duties under § 1681s-2(b) because it did not conduct a reasonable investigation after she submitted a dispute to CRAs. *Freeman*, 113 F.4th. at 706-07. But her complaint failed to identify the CRAs to whom she submitted disputes, and she still did not identify them in response to the servicer's motion to dismiss. *Id*. The district court dismissed the FCRA claim and this Court affirmed, but not because the plaintiff lacked standing. Rather, the district court concluded that the plaintiff had failed to

plead essential facts – the identities of the CRAs to whom she submitted disputes -- thus depriving the furnisher/servicer of fair notice of her claim. *Id*.

In *Freeman*, this Court's consideration of standing arose entirely in the context of the plaintiff's FDCPA claim against the servicer. *Freeman*, 113 F.4th at 708-10. This Court concluded that the plaintiff could not establish Article III standing for her FDCPA claim because she failed to prove that the servicer published the inaccurate information to a third party that sought to assess the plaintiff's creditworthiness. *Id.* The record showed that the servicer published information to a CRA, but plaintiff had no evidence that the CRA used the inaccurate information to assess her creditworthiness. *Id*.

This case is not, as Experian contends, "on all fours with *Freeman*." Experian's Brief at p. 19. In *Freeman*, this Court found that the publication requirement was not satisfied because the plaintiff did not make any showing that the inaccurate information was disseminated to any party who sought to assess the plaintiff's creditworthiness. *Freeman*, 113 F.4th at 708-10. Here, there is no question that the CRA Defendants' inaccurate reports were disseminated to Plaintiffs' potential creditors for the purpose of assessing Plaintiffs' creditworthiness. The CRA Defendants' own evidence establishes that they both issued consumer reports about Plaintiffs to potential creditors, thus establishing the publication requirement for reputational injury in an FCRA claim.

D.  *Plaintiffs' reputational injuries are traceable to Experian's violations of the FCRA because the evidence shows that Experian published a consumer report about Plaintiffs after they submitted their initial dispute.*

Experian argues that, even if Plaintiffs can show that they suffered reputational injuries, they cannot establish standing because those injuries are not traceable to Experian's admitted failure to conduct any investigations in response to Plaintiffs' numerous disputes. According to Experian, Plaintiffs "only claim reputational harm from inquiries that occurred prior to [Plaintiffs'] disputes and thus *prior to* any opportunity for Experian to reinvestigate." Experian's Brief at 20 (emphasis in original). This argument fails because it depends upon a misrepresentation of the record. Contrary to Experian's arguments, there is evidence that Experian had an opportunity to reinvestigate after it published defamatory reports about Plaintiffs.

Mr. Dulworth submitted a dispute to Experian on September 7, 2021. App. 304. Experian concedes that it did not conduct any investigation in response to this dispute – or any other dispute submitted by Plaintiffs. On October 26, 2021, Citibank NA/Best Buy made a "hard inquiry" to Experian regarding Mr. Dulworth. App. 336. This undisputed evidence shows that, after Experian had an opportunity to reinvestigate, Experian issued a consumer report about Mr. Dulworth that omits the payment history on the Ally Loan. Thus, Experian is simply incorrect when it

contends that Plaintiffs' reputational injuries all preceded Experian's failure to conduct any investigations of Plaintiffs' disputes.

E.     *Plaintiffs have alleged and can prove facts that would permit a jury to infer that they suffered pecuniary harm in the form of lost time and money as a result of the CRA Defendants' violations of the FCRA.*

The CRA defendants also argue that Plaintiffs never suffered any injuries to their pecuniary interests and therefore that Plaintiffs cannot rely on such injuries as a basis for standing. Experian's Brief at pp. 21-25; Equifax's Brief at pp. 18-20. More specifically, the CRA Defendants argue that Plaintiffs never identified any adverse credit decisions that could be attributed to the inaccuracies that they allege in the CRA Defendants' reporting. *See id*. In addition, the CRA Defendants also argue that Plaintiffs did not sufficiently allege other forms of pecuniary damages, such as the loss of time and money, and did not provide sufficiently specific evidence of such pecuniary losses. *See id*. These arguments fail because they are contradicted by both the record and the law.

Contrary to the CRA Defendants' assertions, the summary judgment record includes evidence to permit a jury to find that they suffered adverse credit decisions as a result of the omission of Plaintiffs' payment history on the Ally Loan from Plaintiffs' consumer reports. For example, in a credit denial letter that was attached to the CRA Defendants' summary judgment brief, Teachers Credit Union informed Ms. Dulworth that it would not grant her application for an auto loan in the amount

of $42,200.00 because her consumer report showed "insufficient credit file after Bankruptcy." App. 74-75. Instead, it offered a smaller loan amount. *See id.* Teachers Credit Union issued a similar denial letter to Mr. Dulworth, identify both "Bankruptcy" and "insufficient credit file after Bankruptcy" as reasons for its decision. App. 79-80. This evidence would permit a jury to find that the CRA Defendants inaccurate reporting about Plaintiffs' post-bankruptcy payment history on the Ally Loan contributed to the loss of opportunities for more favorable credit. Such a lost opportunity is enough to constitute the kind of pecuniary injury that will support standing. *See* 15 U.S.C. § 1681a(k) (defining "adverse action").

In addition, as Plaintiffs argued in their opening brief, this Court has indicated that a loss of time or money can constitute the kind of pecuniary injury that will warrant the award of actual damages under the FCRA. Plaintiffs' Brief at pp. 25-26 (citing *Persinger v. Southwest Credit Sys.*, 20 F.4th 1184, 1194 (7th Cir. 2021)). Other federal circuit courts have directly held that "the time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA claim." *Pinson v. JPMorgan Chase Bank*, 942 F.3d 1200, 1207 (11th Cir. 2019); *see also Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010) (holding that "[t]ime spent trying to resolve problems with the credit reporting agency may also be taken into account" in determining an FCRA plaintiff's injuries and damages);

*Stevenson v. TRW Inc*., 987 F.2d 288 (5th Cir. 1993) (holding that the assessment of an FCRA plaintiff's damages could account for the fact that a plaintiff "spent a considerable amount of time since he first disputed his credit report trying to resolve his problems with [the defendant CRA]").

Plaintiffs alleged facts showing that they expended time and money to attempt to correct the CRA Defendants' inaccurate reporting. App. 61-63. Plaintiffs also provided specific evidence of the time and effort that they expended in attempting to correct the CRA Defendants' inaccurate reporting. Once they discovered the inaccuracies in their consumer reports, Plaintiffs submitted four disputes to Equifax and four disputes to Experian. *See* App. 291-350. Ms. Dulworth testified that, at her direction, she collaborated with Plaintiffs' counsel to establish the factual basis for these disputes and in the drafting of Plaintiffs' dispute letters. She also testified that she reviewed the letters for accuracy before signing them. App. 220, 221, 225. This evidence establishes a specific foundation upon which a jury could make findings about what Plaintiffs did to submit their disputes to the CRA Defendants and the amount of time and effort required for this submission. This is enough to demonstrate that Plaintiffs expended time and money to dispute the CRA Defendants' inaccurate reporting.

The CRA Defendants fail to identify any case law holding that such allegations and evidence are not enough to support a finding that an FCRA plaintiff

suffered pecuniary injuries and actual damages as a result of a CRA's inaccurate reporting. The cases that the CRA Defendants cite involve unsupported assertions of lost time and money, which would not provide a specific factual basis upon which a jury could make a finding of such losses. But Plaintiffs' allegations and evidence here do not suffer from this defect.

Experian cites this Court's decision in *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934 (7th Cir. 2022), which is an FDCPA case with unique facts that make it inapplicable here. In Pierre, a debt collector contacted the plaintiff seeking payment on a debt for which the limitations period had run. *Id.* at 936-37. The debt collector unequivocally informed the plaintiff that it would not sue to collect the debt or report the debt to any CRAs; but it "offered" her the chance to pay the legally unenforceable debt at a discount. This Court concluded that the plaintiff lacked standing because the debt collector's legally toothless letter did not create any actual or real risk of harm, especially in light of the fact that the plaintiff did not do anything in response to it, except to make phone calls to the debt collector and to a lawyer, seeking legal advice. *Id.* at 939.

This case differs from *Pierre* because Plaintiffs have alleged and can prove that they suffered real consequences from the CRA Defendants' erroneous reporting and refusal to conduct statutorily mandated investigations. It is one thing for a consumer to make a couple of isolated phone calls to a purported creditor or to a

15

lawyer when she faces no immediate or future threat of harm; it is something else entirely for consumers, like Plaintiffs, to take the time and make the effort over a period of months to correct a material omission from CRAs' reporting about their creditworthiness, especially when the CRAs repeatedly ignore the consumers' disputes.

In another one of Experian's cited cases, *Brown v. Cach, LLC*, 94 F.4th 665 (7th Cir. 2024), the plaintiff alleged that the defendant debt collector violated the FDCPA when trying to collect a consumer debt that it had purchased from a bank. As her the only injuries identified in her complaint, the plaintiff alleged that she had interrupted her self-employment to try to remember information review her personal records regarding the debt; but, as evidence that she had actually done either of those things or that doing them had interrupted her self-employment, she offered only a conclusory affidavit. In fact, when the district court asked for supplemental briefing to identify such evidence, the plaintiff "declined to provide additional information" beyond her affidavit. *Id*. at 666-67. This Court held that the plaintiff's failure to offer more than conclusory statements in an affidavit was fatal to her claim. *Id*. at 667. Unlike the plaintiff in *Brown*, Plaintiffs have offered more than a conclusory affidavit, which asserts vaguely defined efforts to remember information or "scour" personal financial records.

F.    *Plaintiffs have alleged and can prove facts that would permit a jury to infer that they suffered compensable emotional distress as a result of the CRA Defendants' violations of the FCRA.*

The CRA Defendants argue that Plaintiffs cannot establish their standing on the basis of any emotional distress injuries because their allegations and evidence of such injuries are conclusory and insufficiently specific. But like their other arguments about Plaintiffs' injuries, their arguments about emotional distress injuries distort both the law and the summary judgment record. When the record here is viewed through the correct legal lens, it is clear that Plaintiffs have enough evidence to create jury questions about emotional distress injuries.

Emotional distress can constitute the kind of "concrete injury" that is necessary for Article III standing, but it must be proven with certain kinds of evidence. In general, a plaintiff claiming emotional distress must specifically describe the kinds of emotional distress that he or she experienced, and that description must be supported by evidence about the circumstances in which that distress occurred. *United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992) ("in determining whether the evidence of emotional distress is sufficient to support an award of damages, we must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused that distress.") (citing *Nekolny v. Painter*, 653 F.2d 1164, 1172-73 (7th Cir. 1981)). A plaintiff's conclusory account of his or her psychological state is not enough without other evidence. *Balistrieri*,

981 F.2d at 931(discussing *Nekolny* and *Biggs v. Village of Dupo*, 892 F.2d 1298 (7th Cir. 1990)). But a plaintiff can make a sufficient evidentiary showing by describing the circumstance of his or her injury and how it relates to his or her psychological state. *Biggs*, 892 F.2d at 1304. In addition, if emotional distress manifests itself in physical symptoms and/or a diagnosed medical condition. *Patterson v. Howe*, 96 F.4th 992, 999 n.1 (7th Cir. 2024) (citing *Pennell v. Global Tr. Mgmt.*, 990 F.3d 1041, 1044 (7th Cir. 2021)).

Plaintiffs' evidence of their emotional distress is more specific than either of the CRA Defendants will allow. Contrary to the CRA Defendants' assertions, Plaintiffs offer more than conclusory descriptions of vaguely defined psychological states. They offer specific evidence about how they were affected by the CRA Defendants' violations of the FCRA and about the specific circumstances under which they experienced those affects. For example, Ms. Dulworth testified about how the CRA Defendants' repeated failure to conduct investigations caused feelings of frustration and humiliation. App. 226-27. In addition, she testified about how her feelings of frustration and humiliation contributed to exacerbating her high blood pressure and about how she discussed these physical effects with her physician. *Id.* Not only does this evidence meet the legal standard for specificity and concreteness, it also is enough to establish a causal link between Plaintiffs' emotional distress and the CRA Defendants' statutory violations.

In arguing that Plaintiffs showing of their emotional distress is conclusory and insufficiently substantial, the CRA Defendants rely on caselaw where the record was materially different than the record in this case. In these cases, the plaintiffs sought to prove emotional distress entirely by offering conclusory descriptions of emotional responses or psychological states, without grounding those descriptions in evidence about the particular circumstances that gave rise to those feelings. *See, e.g., Pucillo v. National Credit Sys.*, 66 F.4th 634, 638-39 (7th Cir. 2023); *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) ("when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements"). By contrast, Plaintiffs have grounded their descriptions of their feelings in a factual context. This is enough to satisfy the requirements for creating a question of fact about whether Plaintiffs suffered emotional distress injuries.

## II.     Plaintiffs' post-bankruptcy payment history on the Ally Loan was a matter of historical, objectively verifiable fact, and the CRA Defendants could have reported it without making any legal determinations.

The CRA Defendants contend that they could lawfully omit the information about Plaintiffs' post-bankruptcy payment history on the Ally Loan from their reporting because that payment history was not the kind of factual information that is subject to the FCRA's accuracy standards. Experian's Brief at 39-51; Equifax's Brief at 12-17. In their view, it would be impossible to report that payment history

without first drawing a legal conclusion about the validity of the reaffirmation agreement. *See id*. But this contention flies in the face of this Court's prior rulings about what does and does not constitute a matter of objective fact in the context of the FCRA. Most notably, this argument attempts to obscure this Court's recent holding in *Chaitoff v. Experian Info. Sols.,* 79 F.4th 800 (7th Cir. 2023), which confirmed that a CRA breaches the FCRA's accuracy standards if it omits information about a consumer's voluntary loan modification plans, like the one reflected by Plaintiffs' post-bankruptcy payments.

As Plaintiffs have noted, in Chaitoff, the plaintiff and his mortgage lender entered into a voluntary foreclosure avoidance plan, known as a "Trial Period Plan" ("TPP"). *Chaitoff*, 79 F.4th at 808. The plaintiff made timely payments under the plan, but Experian did not report those payments. When the plaintiff sued under the FCRA, Experian argued that both the existence of the TPP and the details of the plaintiff's payment history involved legal questions that a CRA could not be required to resolve. *Id*. at 810-11. Although Experian's argument prevailed in the district court, this Court rejected it, concluding that the existence of the TPP and the plaintiff's payment history under the TPP involved objectively verifiable facts that a CRA could report without making any legal determinations at all. *Id*. at 813-15.

In its briefing here, Experian tries out a variation on the argument that failed in *Chaitoff*. Experian's Brief at 46-48. Although it does not directly deny that

Plaintiffs' payment history is a matter of objectively verifiable fact, it contends that the payment history is not a material fact unless Plaintiffs' and Ally entered into a legally valid reaffirmation agreement. *See id*. Thus, Experian urges that it cannot determine the materiality of the fact of Plaintiffs' payments without first making a legal judgment. *See id*. Along these lines, Experian suggests that, unless it the payments were legally required, Plaintiffs' payment history cannot be the subject of a consumer report because it is more like a periodic charitable contribution than a payment to a creditor. *See id*.   But neither the FCRA nor *Chaitoff* establish a materiality test as a condition for the accurate reporting of factual information. The dispositive question is whether information is objectively verifiable or not; and there can be no doubt that Plaintiffs' post-bankruptcy payment history was an objectively verifiable fact. And *Chaitoff* contradicts Experian's charitable contribution analogy because, the *Chaitoff* Court mandated the reporting of payments made pursuant to a voluntary, trial modification of a mortgage loan agreement, which is akin to the post-bankruptcy payments that Plaintiff made to Ally. In any event, the undisputed fact that Ally characterized the loan as "current" indicates that Plaintiffs' payments were something very different than a periodic charitable contribution.

For its part, Equifax argues that, even if Plaintiffs' payment history was a factual matter, Equifax had no way of discovering that fact because Plaintiffs did not include any account statements or other proof of the payment history with their

dispute. Equifax's Brief at p. 17. This argument overlooks (or hopes to distract from) the fact that Equifax regularly receives such information from Ally and, if Equifax lacked this information, it could have asked Ally about the payment history once Plaintiffs had apprised Equifax of its existence. Because the payment history is a matter of objective fact, there was no mystery for Equifax to solve; it simply could have looked. Of course, the problem here is that Equifax never bothered to do so, either before or after Plaintiffs' disputes.

Experian also argues that Plaintiffs' payment history involves legal issues because it somehow implicates the procedures for reporting post-discharge credit information that came into being through the 2008 settlement of *White v. Experian Info. Sols.*, No. SACV05-1070-DOC(MLGx), 2008 U.S. Dist. LEXIS 145130 (C.D. Cal. Aug. 19, 2008) (the "White Settlement"). This argument is a red herring because that settlement has no application here. In the White Settlement, the national CRAs agreed to follow a specific procedure for reporting the status of pre-petition debt to assure that those pre-petition obligations were not reported as delinquent or defaulted after the entry of a bankruptcy discharge. Because the White Settlement creates procedures for removing pre-petition information from consumer reports, it has nothing to do with payments that were made after the petition. The CRA Defendants could have reported factual information about Plaintiffs' post-

bankruptcy payment history without implicating any of the reporting procedures mandated by the White Settlement.

**III.   The district court erred by concluding that there were no material questions of fact regarding whether the CRA Defendants followed reasonable procedures because such questions cannot usually be resolved at the summary judgment stage.**

The CRA Defendants argue that the district court correctly ruled that their procedures for initial reporting and investigation were reasonable as a matter of law, leaving no factual questions for a jury to resolve. According to the CRA Defendants, the evidence showed that they followed their standard procedures in this case and that courts have previously held that those procedures were necessarily reasonable as a matter of law. But these arguments run counter to the well-established principle that, under the FCRA, the reasonableness of a CRA's procedures in any particular case depends upon the unique factual circumstances of that case and, therefore, that reasonableness is almost always a question for the jury. In addition, these arguments fail because they overlook evidence that would permit a jury to conclude that, in the context of their reporting and investigations about Plaintiffs, the CRA Defendants failed to follow reasonable procedures.

//

A.    *The reasonableness of CRA procedures is generally a jury question.*

This Court has long held that, under the FCRA, any questions about the reasonableness of a defendant's consumer reporting procedures must generally be resolved by a jury. *See Crabill v. Trans Union*, 259 F.3d 662, 664 (7th Cir. 2001). The *Crabill* Court established that any question about the reasonableness of challenged procedures "is treated as a factual question even when the underlying facts are undisputed" and that this question "cannot be resolved on summary judgment" except in unusual circumstances. *See id*. If an FCRA plaintiff produces evidence that a CRA followed procedures which resulted in inaccurate reporting or a failure to conduct a required investigation, then a jury must decide whether those procedures were reasonable. *See Sarver v. Experian Info. Solutions, Inc*., 390 F.3d 969, 971 (7th Cir. 2004).

B.    *There is record evidence to permit a reasonable jury to find that the CRA Defendants' procedures for their initial reporting were unreasonable because the CRAs ignored information that was inconsistent with Ally's assertions that the Ally Loan had been discharged in bankruptcy.*

The CRA Defendants argue that, as a matter of law, they cannot be liable for a violation of 15 U.S.C. § 1681e(b) because they followed reasonable procedures in their initial reporting by taking Ally's assertions about the Ally Loan at face value. This argument fails because there is evidence from which a jury could conclude that,

when publishing consumer reports about Plaintiffs, the CRA Defendants knew or should have known that Ally was making inconsistent statements about whether the Ally Loan had been discharged or was currently active. This evidence is enough to raise factual questions about the reasonableness of the CRA Defendants' procedures.

A CRA's duty to follow reasonable procedures in preparing consumer reports arises each and every time it issues such a report. This principle begins with the plain language of § 1681e(b), which provides that "*[w]henever* a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" (emphasis added). Numerous federal courts have also recognized that each and every publication of a consumer report is an independent event that can give rise to a distinct cause of action under the FCRA, even if the information published in any one report is identical to the information published in previous or subsequent reports. *See, e.g., Hyde v. Hibernia Nat'l Bank in Jefferson Parish,* 861 F.2d 446, 450 (5th Cir. 1988); *see also Larson v. Ford Credit*, No. 06-CV-1811 (JMR/FLN), 2007 U.S. Dist. LEXIS 47181, *5 (D. Minn. June 27, 2007) (collecting cases).

The record here includes evidence that would permit a jury to find that the CRA Defendants failed to follow reasonable procedures when publishing consumer reports about Plaintiffs after they submitted their first disputes in September 2021.

Once Plaintiffs informed the CRA Defendants that they had reaffirmed the Ally Loan and had been making monthly payments on it during the period after their bankruptcy case concluded, the CRA Defendants had information to raise doubts about the reliability of Ally's assertions that the loan had been discharged. A jury could find that this fact made it unreasonable for the CRA Defendants to simply follow their usual procedures and to accept Ally's reporting at face value simply because Ally had a history of general reliability.

There is also evidence to permit a jury to infer that the CRA Defendants also received internally inconsistent information from Ally when preparing their reports even before Plaintiffs began to submit their disputes. Undisputed facts show that, when Equifax investigated some (but not all) of Plaintiffs' disputes, it communicated with Ally through the Automated Consumer Dispute Verification ("ACDV") process, in which Ally confirmed its previous reporting about the loan. This confirmation included internally inconsistent information: the assertion that the Ally Loan had been discharged and that there was a balance on the loan, that the balance was not past due, and that the loan was a "current account," meaning that it was not in a delinquent status. App. 382-86. Because the ACDV process involves a request from a CRA for a confirmation of the furnisher's initial reporting, a jury could infer that Ally's ACDV response was identical to pre-investigation reporting to both of the CRA Defendants and that all of Ally's reporting also included this inconsistency

about the status of the Ally Loan. This inference would also permit the jury to find that the CRA Defendants followed unreasonable procedures in taking Ally's assertion of a discharge at face value, in light of the other inconsistent information that Ally communicated.

C.   *Undisputed facts show that both of the CRA Defendants failed to investigate disputes submitted by Plaintiffs, which is necessarily an unreasonable procedure for the purpose of 15 U.S.C. § 1681i.*

The undisputed facts also provide a basis upon which a jury could find that both of the CRA Defendants failed to follow reasonable procedures for conducting investigations of their reporting in response to Plaintiffs' disputes. There is no question that each of the CRA Defendants failed at least once to conduct any investigation at all. Experian admits that it did not investigate any of Plaintiffs' disputes because, pursuant to its "Global Security Policy," it concluded that Plaintiffs' dispute letters were transmitted by a third-party. Equifax does not deny that it failed to conduct an investigation because it misunderstood one of Plaintiffs' disputes. Because the CRA Defendants each failed to conduct at least one statutorily mandated investigation, there is a question about whether they followed reasonable procedures in doing so.

Even though it concedes that it failed to undertake a required investigation, Equifax maintains that, in general, it followed reasonable procedures because it

investigated most of Plaintiffs' disputes. *See* Equifax's Brief at p. 28 (arguing that "[t]here is no evidence that Equifax ignored the disputes, was indifferent to the harms Dulworths allege, and failed to address the Ally loan . . . ."). Of course, nothing in the FCRA provides for a kind of "get-out-of-jail-free" card, which allows a CRA can escape liability for a breach of statutory duty just because it complies with those duties *most* of the time.

Experian offers a similarly ineffectual argument based on the fact that, in other factual contexts, courts have held that its "Global Security Policy" is reasonable. Experian's Brief at pp. 56-57. There is no legal basis for Experian's suggestion that it may lawfully ignore any and all consumer disputes that have "indicia" of third-party bulk mail. *See id*. Just because that policy may have been reasonable in some contexts does not make it reasonable in all contexts, especially not when, as here, the consumers include copies of their driver's licenses to verify their identity and the authenticity of their disputes.[1] A consumer does not forfeit his or her rights to an investigation under § 1681i just because he or she transmits his or her dispute letter through a third party.

---

[1] Contrary to the suggestions in its brief, Experian's reinvestigation procedures are hardly above reproach. The Consumer Financial Protection Bureau ("CFPB") recently sued Experian for numerous deficiencies in its reinvestigation procedures, alleging that, among many other things, Experian's intake procedures for disputes violate the FCRA. The CFPB's complaint is available at https://files.consumerfinance.gov/f/documents/cfpb_experian-information-solutions-complaint_2025-01.pdf.

**IV.**    **An FCRA defendant can be liable for a willful violation of the statute when it recklessly disregards its statutory duty. Because there is no dispute that both of the CRA Defendants failed to conduct investigations in response to Plaintiffs' disputes, the record here includes facts that would permit a jury to find that the CRA Defendants willfully violated the FCRA.**

The CRA Defendants' arguments about willful violations are tied to their arguments about the inherent reasonableness of the procedures that led them to violate their statutory duties. According to the CRA Defendants, Plaintiffs' allegations of willful violations fail as a matter of law because all of their policies and procedures are reasonable as a matter of law. This argument fails because there is evidence here to permit a jury to find that, when they knowingly or deliberately declined to conduct mandatory investigations, the CRA Defendants acted in reckless disregard of their statutory duties. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-58 (2007).

Dated: January 10, 2025          */s/ Michael H. Rapp*
                                 Michael H. Rapp
                                 Rapp Law Firm, LLC
                                 1600 Genessee, Suite 435
                                 Kansas City, Missouri 64102
                                 T: 816-633-3463
                                 E: mr@rapplawfirm.com

                                 David A. Chami, 027585
                                 Consumer Justice Law Firm PLC
                                 8095 N. 85th Way
                                 Scottsdale, AZ 85258

T: (480) 626-2359
F: (480) 613-7733
E: dchami@consumerjustice.com

*Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32 & CR 32(c)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type-Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☑      the brief contains 6971 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), or

    ☐      this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☑      this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman, or

    ☐      this brief has been prepared in a monospaced typeface using [*state name and version of word* processing *program*] with [*state numbers of characters per inch and name of type style*].

Dated:  January 10, 2025                          By:  *<u>/s/ Michael H. Rapp</u>*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users, or that I will accomplish service by U.S. Mail for those participants that are not registered CM/ECF users.

Dated: January 10, 2025          */s/ Michael H. Rapp*
Michael H. Rapp
Rapp Law Firm, LLC
1600 Genessee, Suite 435
Kansas City, Missouri 64102
T: 816-633-3463
E: mr@rapplawfirm.com

David A. Chami, 027585
Consumer Justice Law Firm PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
F: (480) 613-7733
E: dchami@consumerjustice.com

*Attorneys for Appellants*